No. 23-50632

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

GREG ABBOTT, in his capacity as Governor of the State of Texas, and
STATE OF TEXAS,
*Defendants/Appellants*

On appeal from the United States District Court for the Western District of Texas
Case No. 1:23-cv-00853

**UNITED STATES' RESPONSE IN OPPOSITION TO
PETITION FOR REHEARING EN BANC**

JAIME ESPARZA
*United States Attorney*

JAMES E. DINGIVAN
LANDON A. WADE
*Assistant United States Attorneys*
United States Attorney's Office
Western District of Texas
601 N.W. Loop 410, Ste 600
San Antonio, TX 78216

TODD KIM
*Assistant Attorney General*

ANDREW M. BERNIE
MICHAEL T. GRAY
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3147
michael.gray2@usdoj.gov

## CERTIFICATE OF INTERESTED PERSONS

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellee, as a

governmental party, need not furnish a certificate of interested persons.

/s/*Michael T. Gray*
MICHAEL T. GRAY
Attorney, Appellate Section
Environment and Natural Resources
Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3147
michael.gray2@usdoj.gov

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................................i

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ...............................................................................1

STATEMENT .....................................................................................2

    A.    Legal Background ................................................................2

    B.    Factual background ............................................................2

    C.    Procedural History............................................................3

ARGUMENT .....................................................................................5

I.    The panel correctly held that the district court did not clearly err in finding the United States is likely to succeed in demonstrating that the segment of the Rio Grande at issue navigable within the meaning of the RHA. ......................................6

II.    The panel's navigability analysis does not present a question of exceptional public importance.......................................................12

III.    The panel's analysis of the equities does not warrant en banc review........................................................................14

CONCLUSION .................................................................................17

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Byrum v. Landreth*,
566 F.3d 442 (5th Cir. 2009) ........................................................11

*Economy Light & Power Co. v. United States*,
256 U.S. 113 (1921).......................................................6, 11, 13

*Mia. Valley Conservancy Dist. v. Alexander*,
692 F.2d 447 (6th Cir. 1982) ..........................................................6

*Oklahoma v. Texas*,
258 U.S. 574 (1922).......................................................................10

*PPL Montana, LLC v. Montana*,
565 U.S. 576 (2012).......................................................................10

*Puente de Reynosa, S.A. v. City of McAllen*,
357 F.2d 43 (5th Cir. 1966) ............................................................9

*Sackett v. EPA*,
598 U.S. 651 (2023).................................................................13, 14

*The Daniel Ball*,
77 U.S. 557, 10 Wall. 557 (1871)...................................................6

*Tugwell v. Eagle Pass Ferry Co.*,
74 Tex. 480, 9 S.W. 120 (1888) ....................................................9

*United States v. Appalachian Elec. Power Co.*,
311 U.S. 377 (1940)......................................................6, 12, 13

*United States v. Crow, Pope & Land Enter., Inc.*,
340 F. Supp. 25 (N.D. Ga. 1972)....................................................9

*United States v. Weil*,
35 Ct. Cl. 42 (1900) ........................................................................9

*University of Texas v. Camenisch*,
  451 U.S. 390 (1981)......................................................................................11

*Wyandotte Transp. Co. v. United States*,
  389 U.S. 191 (1967).......................................................................................2

## Constitution

U.S. Const. art. I § 8, cl. 3.............................................................................14

## Statutes and Court Rules

Rivers and Harbors Act of 1899
  33 U.S.C. § 403........................................................................................2, 16

  33 U.S.C. § 406.............................................................................................2

  33 U.S.C. § 413.............................................................................................2

9 Stat. 922, art. VII (1848)............................................................................9

Fed. R. App. P. 35(b) .....................................................................................5

Cir. R. 35 I.O.P. ....................................................................................5, 7, 12

## Federal Regulations

33 C.F.R. § 322.3(a)........................................................................................2

# INTRODUCTION

The State of Texas's petition plainly does not justify rehearing en banc. The panel affirmed a preliminary injunction that requires Texas, pending final judgment, to move to the riverbank of the Rio Grande a 1,000-foot-long floating barrier that Texas erected without seeking or receiving the permission of the United States. In declining to find clear error in the district court's findings of fact—in particular, the finding that this reach of the Rio Grande likely is "navigable" under the Rivers and Harbors Act of 1899 (RHA), the finding of likely and irreparable diplomatic and other harms to the United States from Texas's barrier, and the findings that the equitable balance and public interest support preliminary relief—the panel applied settled law to facts in a manner that does not conflict with any decision of this or any other appellate court. Apart from failing to satisfy the standard for rehearing, the case is a poor candidate for immediate further review both because it is interlocutory and because (as both the panel and the dissent observed) Texas proffered no evidence of concrete harm from the preliminary injunction. The Court should deny Texas's petition.

## STATEMENT

### A.    Legal Background

Congress enacted the RHA "to prevent obstructions in the Nation's waterways," and the Supreme Court has "consistently found its coverage to be broad." *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 201 (1967). Section 10 of the RHA prohibits the "creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States." 33 U.S.C. § 403. Section 10 independently prohibits "build[ing] or commenc[ing] the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States … except on plans recommended by the Chief of [the Army Corps of] Engineers and authorized by the Secretary of the Army." *Id.*; *see also* 33 C.F.R. § 322.3(a). Section 12 authorizes the Attorney General to enforce the RHA by, among other things, seeking injunctions in federal district court. 33 U.S.C. § 406; *see also id.* § 413.

### B.    Factual background

In midsummer 2023, Texas built a 1,000-foot-long barrier in the Rio Grande parallel to (and initially transgressing) the international border with Mexico near Eagle Pass, Texas. The barrier consists of interlocking four-foot-diameter buoys anchored by almost 140 tons of concrete blocks on the river bottom. ROA.967-

968. Texas neither sought nor obtained federal permission to build the barrier.

ROA.967. And Texas refused to remove it even after the United States notified

Texas that the barrier violated RHA Section 10. ROA.55-56.

### C.   Procedural History

The United States promptly sued Texas and its Governor and moved for a

preliminary injunction. After allowing Texas limited depositions and conducting

an evidentiary hearing, the district court granted preliminary relief.

The district court found that the United States "presented sufficient evidence

to carry its burden at this stage" to demonstrate that the Rio Grande near Eagle

Pass is a navigable water of the United States under the RHA, based on either of

two independent grounds: historic navigability or capacity for future navigation.

ROA.965, 971-982. Next, the district court concluded that Texas's barrier

obstructs the river's navigable capacity, ROA.983-988, and that the barrier violated

the RHA for the independent reason that it constitutes a "boom" or "other

structure[]." ROA.989.

On the equities, the court found that irreparable harm and the public interest

support an injunction given, among other things, that "[t]he floating barrier has

already placed tremendous strain on the U.S.-Mexico relationship." ROA.1001-

1002. By contrast, "the State of Texas did not present any credible evidence that

the barrier as installed has significantly curtailed illegal immigration across the Rio

3

Grande River." ROA.1004. The court enjoined Texas from building new or placing additional structures in the river pending final judgment. ROA.1005-1006. As to the existing barrier, the court "act[ed] in a measured way" and directed that, by September 15, 2023 (nine days after the order), Texas reposition the current barrier to the Texas-side riverbank in coordination with the Corps. ROA.1006 n.32.

Texas appealed and moved for a stay pending appeal. A motions panel issued an administrative stay of the district court's order and carried the motion for stay pending appeal with the case. Docs. 29-1, 36-2. After expedited briefing and argument, the panel affirmed. The panel held that the district court did not err in concluding that the United States had shown that it was likely to succeed on its RHA claims because the segment of the Rio Grande at issue was historically navigable, and thus navigable under the RHA. Op. 6-15. Next, the panel concluded that the barrier is both an obstruction to the Rio Grande's navigable capacity and an "other structure" placed in the river without a permit. Op. 15-21.

On the equities, the panel concluded that the district court did not abuse its discretion. The panel explained that the United States had established likely irreparable harm in its relationship with Mexico, as well as to federal operations on the river; and that the public interest, as expressed by Congress in the RHA, weighed in the United States' favor. Op. 22-28. The panel therefore dissolved the

4

administrative stay, denied the motion for stay pending appeal, and affirmed.[1] Op. 28.

Judge Willett dissented. He would have held that the 1,000-foot stretch of the Rio Grande where the barrier is located is not a navigable river, and that the United States is not likely to suffer irreparable harm because the district court's order does not fully alleviate the asserted harms. Op. 29-44.

## ARGUMENT

A "petition for rehearing en banc is an extraordinary procedure" warranted only if there is either a conflict between the panel decision and a decision of this Court or the Supreme Court, or the case involves a question of exceptional public importance. Fed. R. App. P. 35(b). Texas's petition establishes neither. First, Texas alleges no direct conflict with any prior opinion of any court, and it concedes that the panel correctly stated the governing legal standard. Second, Texas fails to

---

[1] The preliminary injunction is presently in effect. *Contra* Pet. 15. The administrative stay was effective only until "further order of the Court." Docs. 29-1, 36-2. Texas has not petitioned for en banc rehearing of the panel's denial of Texas's Rule 8 motion for a stay pending appeal, *see* Cir. R. 35 I.O.P., instead making only an unsupported request for a further administrative stay at the end of its petition, without setting forth the reasons for granting a stay pending appeal as required by Rule 8. Regardless, even if this Court were to construe Texas's petition as requesting en banc rehearing of its stay motion, such a petition would "not operate as a stay of the Rule 8 order." *Id.* Texas must comply with the preliminary injunction or be in violation.

identify any question of exceptional public importance implicated by the panel's decision on a preliminary injunction.

## I.    The panel correctly held that the district court did not clearly err in finding the United States is likely to succeed in demonstrating that the segment of the Rio Grande at issue is navigable within the meaning of the RHA.

Texas acknowledges (Pet. 5-6) that the panel stated the correct legal standard for determining navigability under RHA Section 10: a "navigable river" is one that is, has been, or could be used or susceptible of use for interstate or foreign commerce. *See United States v. Appalachian Elec. Power Co.*, 311 U.S. 377 (1940) ("*Appalachian Power*"); *Economy Light & Power Co. v. United States*, 256 U.S. 113 (1921); *The Daniel Ball*, 77 U.S. 557, 10 Wall. 557 (1871); *Mia. Valley Conservancy Dist. v. Alexander*, 692 F.2d 447, 450 (6th Cir. 1982) (summarizing test). Thus, Congress's power to regulate waters turns on its ability to decide whether such waters *could* be used for interstate or foreign commerce. *See*, *e.g.*, *Appalachian Power*, 311 U.S. at 404 ("The power of the United States over its waters which are capable of use . . . arises from the commerce clause."). Whether Congress *presently chooses* to prioritize such use does not affect Congress's power to make that assessment.

Texas alleges that the panel erred in holding that the district court did not commit clear error in applying the correct legal standard to this segment of the Rio Grande. Pet. 6-11. Navigability, as Texas admits, "is ultimately a question of fact."

6

Pet. 6. And "alleged errors . . . in the application of correct precedent to the facts of the case are generally matters for panel rehearing but not for rehearing en banc." Cir. R. 35 I.O.P.

Texas takes issue with several aspects of the panel's analysis of whether the district court clearly erred in finding that the evidence at this preliminary stage of the litigation is likely sufficient to demonstrate an RHA violation. First, Texas faults the panel for failing to identify the "at-issue segment of river." Pet. 9 & n.4. But the panel, in reliance on a Corps study, clearly defined its navigability analysis as "the Rio Grande River between River Mile 275.5 and 610.0," Op. 8, which includes the area where the barrier is placed. Texas provides no support for its suggestion that the navigability analysis must focus *only* on the 1,000 feet of the river where the buoys are placed, rather than a broader segment of the river that includes this area. Nor does Texas provide any basis on which to conclude that the conditions of the 1,000 feet where the barrier is placed are materially different from the broader river segment used in the Corps' and the panel's analysis. If a long segment of a river is navigable, then shorter sub-segments within it are navigable as well. The panel therefore correctly defined the scope of the navigability analysis.

Second, Texas argues that the panel's factual analysis is flawed in several respects, isolating each bit of record evidence and contending that it is insufficient

to establish navigability on its own, while failing to consider the body of evidence in totality. For example, Texas takes issue with the panel's reliance on the Corps' 1975 navigability study, not because it was legally impermissible for the panel to consider that evidence, but because Texas believes that the study's recitation of the evidence of historical navigability is insufficient to establish that the river is navigable under the RHA. Pet. 9. That fact-bound contention does not warrant en banc rehearing, and in any event, it is incorrect.

As the panel noted, the Corps' 1975 study found that "a great deal of interest prevailed during the period between 1829-1882 pertaining to transportation of goods along the Rio Grande." ROA.1103. Although navigation "above Laredo up to Eagle Pass" was "impeded by rocks and ledges at low water stages," accounts from the era nonetheless "reveal sufficient interest and available commerce to accommodate river travel above Laredo." ROA.1103. Historical accounts also indicate that, with improvements to the channel, the river would be navigable by steamboat to points above river mile 610.0 and well upstream of Eagle Pass. ROA.1082, 1095, 1103. Keelboat navigation was successfully completed to more than 800 miles above Eagle Pass. ROA.1095. The panel correctly considered that evidence in addition to the other evidence of historical navigability, as contemplated by *Appalachian Power*. Op. 8-10.

Texas likewise contends that the panel should not have relied on ferry traffic in the area to demonstrate navigability. Pet. 7, 10. But as the panel explained, two reported cases confirm the historical presence of competitive commercial navigation on the river, as they concerned disputes about the ferrying of cotton between Eagle Pass and Piedras Negras. Op. 11-12 (citing *United States v. Weil*, 35 Ct. Cl. 42, 77 (1900) ("At Eagle Pass there were ferryboats in which the cotton was crossed over."); *Tugwell v. Eagle Pass Ferry Co.*, 74 Tex. 480, 9 S.W. 120 (1888) (resolving dispute between rival ferry companies operating between Eagle Pass and Piedras Negras)); ROA.979-980.

Texas discounts those cases, claiming that bank-to-bank commercial traffic is *per se* irrelevant to show navigability. Pet. 7, 10 (citing *United States v. Crow, Pope & Land Enter., Inc.*, 340 F. Supp. 25, 35 (N.D. Ga. 1972)). That is incorrect. *Appalachian Power* expressly acknowledged the existence of ferry traffic as a part of the relevant legal analysis, 311 U.S. at 413, and this Court has done the same, *see Puente de Reynosa, S.A. v. City of McAllen*, 357 F.2d 43, 51 (5th Cir. 1966). As the panel majority noted, the ferry traffic at issue here carries more weight than in those cases because it involved *expressly commercial*, competitive enterprises transporting a commercial good across an international boundary. Op. 11-12.[2] The

---

[2] As the panel noted, such bank-to-bank commercial traffic was explicitly contemplated by the 1848 Treaty of Guadalupe Hidalgo. Op. 12 n. 5 (citing 9 Stat. 922, art. VII (1848)).

district court decision in *Crow*, by contrast, involved strictly intrastate ferry traffic, and thus was not evidence of either interstate or foreign commerce on the river. Still, the panel's analysis here did not rely solely on ferry traffic, noting instead that the cases demonstrating commercial ferry traffic "also support" navigability given the other, significant evidence of historical navigability in the Corps' study and several treaties and statutes. Op. 9-15.

Next, Texas contends that the panel should not have considered four statutes preserving Congress's authority to improve the river's navigability in the area. Pet. 9. Texas incorrectly dismisses those statutes by quoting *Oklahoma v. Texas*, 258 U.S. 574, 585-86 & n.6 (1922). Br. 20. But that case involved State title to riverbeds under the equal-footing doctrine, *see* 258 U.S. at 578, which turns on navigability in the river's natural and ordinary condition at the time of statehood, an analysis that does not include the possibility that reasonable improvements to support navigation could be made, *see PPL Montana, LLC v. Montana*, 565 U.S. 576, 592-93 (2012) (explaining different navigability tests). In *Oklahoma*, unlike here, indications that Congress recognized the potential for future navigation would have considerably less relevance to navigability at the time of statehood under the equal-footing doctrine. Thus, as the panel explained, the statutes at issue here show at least "that Congress considered this stretch of the river historically

'susceptible' to use in commerce and sought to preserve its authority over the river." Op. 13 n.8.

The panel's historical navigability analysis is thus a straightforward application of Supreme Court precedent. *See Economy Light & Power*, 256 U.S. at 117-19. That is hardly a matter for en banc rehearing.

To be sure, Texas disagrees with the panel's affirmance of the district court's factual finding that the United States presented sufficient evidence of navigability to demonstrate a likelihood of success on its RHA claim. But as the panel explained, it expects "the evidence to develop as this case proceeds to the merits." Op. 15. Indeed, a "plaintiff is not required to prove its entitlement to summary judgment in order to establish 'a substantial likelihood of success on the merits' for preliminary injunction purposes." *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009); *accord University of Texas v. Camenisch*, 451 U.S. 390, 393-94 (1981) (declining to equate "likelihood of success" at the preliminary stage with "success" on the merits).

Review of this highly fact-bound question is even less warranted here because the panel's holding is cabined by the interlocutory posture of Texas's appeal. The panel found that the "United States presented sufficient evidence to carry its burden at [the preliminary injunction] stage," reserving judgment on the merits until the district court resolves them. Op. 7, 15. Texas fails to show that en

banc review is warranted over these mere "alleged errors . . . in the application of

correct precedent to the facts of the case," Cir. R. 35 I.O.P., particularly in this

interlocutory posture where further factual development is forthcoming, including

on the alternate ground, not reached by the panel, that this segment of the river is

susceptible to future commercial navigation. Op. 22; Op. 15 n.10; ROA.1006 n.32.

The district court "intends to expedite this matter … so that a final resolution on

the full merits can be had within the shortest time possible." ROA.1006 n.32. If

that judgment is appealed, this Court will have an opportunity to consider

navigability anew on a fully developed record for both historical navigability and

susceptibility to future commercial navigation. Texas has proffered no credible

evidence of irreparable harm in the interim that makes this factual question suitable

for the full Court's review at this interlocutory stage.

## II.    The panel's navigability analysis does not present a question of exceptional public importance.

The panel's analysis of navigability in a preliminary-injunction posture does

not raise any question of exceptional importance. That is so even though Texas

suggests that there may be a Commerce Clause issue lurking somewhere in this

case. Pet. 11-12. According to Texas, "absent a showing of meaningful real-world

commercial navigability," Congress's authority over the river is doubtful. *Id.* But,

as Texas elsewhere agrees, the panel applied the interpretation of the RHA

required by longstanding Supreme Court precedent. *See, e.g.*, *Appalachian Power*,

311 U.S. at 408. And that precedent holds that Congress's preservation of authority over the channels of commerce requires interpreting the RHA to enable Congress to make policy determinations about how to use *potentially* navigable waters. *Id.* ("The power of Congress over commerce is not to be hampered because of the necessity for reasonable improvements to make an interstate waterway available for traffic."); *see also Economy Light & Power*, 256 U.S. at 117 (finding waterway navigable despite undisturbed finding "that there was no evidence of actual navigation within the memory of living men"). That precedent directly controls this case.

Texas obliquely suggests the panel's RHA analysis is cast into doubt by the Supreme Court's recent Clean Water Act decision in *Sackett v. EPA*, 598 U.S. 651, 696 (2023). But the suggestion is inapt, as Texas recognized in the district court that "[n]avigability for the Rivers and Harbors Act is not the same as navigability for purposes of, for example, the Clean Water Act." ROA.302 n.18. Texas also cites Justice Thomas's concurrence in *Sackett*, *see* Pet. 12, but that concurrence accepts the view of *Appalachian Power* taken by the panel, which Texas otherwise does not challenge. 598 U.S. at 696 (Thomas, J., concurring) (noting that "in *Appalachian* [*Power*], the Court continued to apply the concept of navigability to determine the scope of Congress' Commerce Clause authority" and "made clear that the term 'navigable waters' remained tethered to Congress' traditional

channels-of-commerce authority"); *see also id.* at 702 n.7. Indeed, given the international border running through the river and the history of ferrying of commercial goods at this location, there should be no question that regulation in this case is within Congress's power "[t]o regulate Commerce with foreign Nations." U.S. Const. art. I § 8, cl. 3; *see* Op. 11-12.

In sum, Texas's petition amounts to no more than a dispute over the panel's application of settled legal standards. That fact-bound dispute does not present any questions of exceptional importance.

### III.  The panel's analysis of the equities does not warrant en banc review.

Texas contends that the panel erred in finding that the United States is likely to suffer irreparable harm if the barrier remains in place during litigation on the merits. Pet. 13-14. In so contending, Texas does not maintain that any of the district court's factual findings about harm were clear error, or that the panel made a mistake in affirming any particular factual finding. Thus, the factual underpinnings of the district court's and the panel's conclusions that the barrier is causing "tremendous strain" in the U.S.-Mexico relationship, threatening cooperation under treaty obligations, and harming federal operations on the river remain unchallenged. Op. 23-27 & n.20.

Instead, Texas contends that because the district court entered an injunction that does not fully *remedy* the harms that the United States proved, the United

States must not be *suffering* those harms in the first place. Pet. 13 (referencing Judge Willett's suggestion that the injunction does not alleviate harm because it requires shifting the barrier to the riverbank rather than removing it). Texas errs in conflating those analytically distinct issues. Both the district court and the panel correctly found that the barrier is causing significant and ongoing harm to the nation's conduct of foreign relations with Mexico, as well as harm to federal operations on the river, which the panel found to be "particularly concerning." Op. 23-27 & n.20; ROA.1001-1002.

Urging otherwise, the centerpiece of Texas's argument on this point is a supposed "concession" from counsel for the United States at oral argument. Pet. 13. Counsel accurately stated that there was no *record evidence* that moving the barrier to the riverbank would remedy the diplomatic tensions—which is unsurprising since the United States had not requested that particular remedy. The district court imposed that remedy as an intermediate measure in light of the preliminary nature of its ruling. ROA.1006 & n.32. Texas has no legal basis to *fault* the district court for not ordering additional relief against Texas. Regardless, the panel properly took judicial notice that the district court's order had been positively received by Mexico. Op. 26 n.18.

Additionally, the question at argument pertained only to diplomatic tensions, but the injunction requires Texas to move the barrier to the "bank of the Rio

15

Grande" so that it does not "impede or impair in any way navigation" while litigation is pending. ROA.1006 & n.32; Op. 26 n.18. The injunction therefore provides significant relief in removing the obstruction to navigation from the water and addresses the statutory violation of obstructing the river's navigable capacity. 33 U.S.C. § 403. And by prohibiting the barrier from obstructing navigation, the injunction directly addresses the harms to federal operations on the water. Op. 27 n.20. The injunction also prevents Texas from building any more barriers in this segment of the Rio Grande, providing important relief on that front as well; Texas does not address this aspect of the injunction whatsoever.

If the preliminary injunction does not go far enough, perhaps that would have been grounds for a cross-appeal by the United States. But the United States was not required to cross-appeal to prove its harms—it made that showing through testimony from several government officials—and Texas does not explain how vacating the injunction will make the situation better rather than worse. Thus, the injunction provides meaningful interim relief until the district court resolves the case on its merits.

Finally, although Texas previously asserted (without credible evidence) that disastrous consequences would occur if it must remove the barrier while litigation proceeds, the petition fails to identify *any* harm that Texas will suffer if en banc review is denied. Indeed, as Judge Willett's dissent noted: "Texas has not offered

16

concrete evidence that the [buoy] barrier has saved lives or reduced illegal crossings and drug trafficking." Op. 42; *see also id.* at 28 (panel majority finding "[a]ll of the district court's findings of fact" to be "well supported by the record"); ROA.1004 ("Texas did not present any credible evidence that the buoy barrier as installed has significantly curtailed illegal immigration across the Rio Grande River.").

## CONCLUSION

This Court should deny the petition for rehearing en banc.

Respectfully submitted,

/s/*Michael T. Gray*

JAIME ESPARZA
*United States Attorney*

TODD KIM
*Assistant Attorney General*

JAMES E. DINGIVAN
LANDON A. WADE
*Assistant United States Attorneys*
United States Attorney's Office
Western District of Texas
601 N.W. Loop 410, Ste 600
San Antonio, TX 78216

ANDREW M. BERNIE
MICHAEL T. GRAY
*Attorneys*
Environment and Natural Resources
Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3147
michael.gray2@usdoj.gov

December 2023
90-5-1-1-22454

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2023, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/Michael T. Gray*
MICHAEL T. GRAY
*Attorney, Appellate Section*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3147
michael.gray2@usdoj.gov

## CERTIFICATE OF COMPLIANCE WITH
## FEDERAL RULES OF APPELLATE PROCEDURE 32(A) AND 35

I hereby certify that this response complies with the requirements of Fed. R.

App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New

Roman, a proportionally spaced font.

I further certify that this brief complies with the type-volume limitation of

Fed. R. App. P. 35(b)(2)(A) because it contains **3,876 words**, excluding the parts

of the response exempted under Rule 32(a)(7)(B)(iii), according to the count of

Microsoft Word.


*/s/Michael T. Gray*
MICHAEL T. GRAY
*Attorney, Appellate Section*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 532-3147
michael.gray2@usdoj.gov