No. 23-50632

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,

*Defendant-Appellee,*

*v.*

GREG ABBOTT, IN HIS CAPACITY AS GOVERNOR OF THE STATE OF TEXAS; STATE OF TEXAS,

*Plaintiffs-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## EXHIBITS IN SUPPORT OF APPELLANTS' OPPOSED EMERGENCY MOTION TO STAY TRIAL PROCEEDINGS PENDING EN BANC REVIEW AND FOR A TEMPORARY ADMINISTRATIVE STAY

### INDEX OF EXHIBITS[1]

Exhibit

ECF 69, January 19, 2024 Status Conference Hearing Transcript ............... A

ECF 75, Order Regarding Status of the Stay Motion .................................... B

ECF 66, United States' Motion to Set Date to Comply with Injunction ...... C

ECF 67, Status Conference Order............................................................. D

---

[1] In these Exhibits, "ECF ___" refers to the district court docket number.

# Exhibit A: ECF 69, January 19, 2024 Status Conference Hearing Transcript

```
 1              UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF TEXAS
 2                    AUSTIN DIVISION

 3   UNITED STATES OF AMERICA,        )
     Plaintiff,                       )
 4                                    ) Case Number
     vs.                              ) AU:23-CV-00853-DAE
 5                                    )
     GREG ABBOTT, in his capacity as  ) Austin, Texas
 6   Governor of the State of Texas,  )
     and THE STATE OF TEXAS,          )
 7   Defendants.                      ) January 19, 2024
     ****************************************************
 8              TRANSCRIPT OF STATUS CONFERENCE
              BEFORE THE HONORABLE DAVID A. EZRA
 9            SENIOR UNITED STATES DISTRICT JUDGE

10   APPEARANCES:
     FOR THE PLAINTIFF:
11   Kimere J. Kimball
     Mary F. Kruger
12   Landon Allen Wade
     Andrew D. Knudsen (via Telephone)
13   Brian H. Lynk (via Telephone)
     Department of Justice
14   Environment and Natural Resources Division
     P.O. Box 7611
15   Washington, DC 20044
     (202)514-2285; kimere.kimball@usdoj.gov
16

17   FOR THE DEFENDANTS:
     Ryan Daniel Walters
18   Monroe David Bryant, Jr.
     Munera Al-Fuhaid
19   Jacob Edward Przada
     Office of the Texas Attorney General
20   Special Litigation Division
     209 W. 14th Street, 7th Floor
21   Austin, Texas  78701
     (512)936-2714; ryan.walters@oag.texas.gov
22

23

24

25
```

1  COURT REPORTER:
   Angela M. Hailey, CSR, CRR, RPR, RMR
2  Official Court Reporter, U.S.D.C.
   262 West Nueva Street
3  San Antonio, Texas  78207
   Phone(210)244-5048
4  angela_hailey@txwd.uscourts.gov

5  Proceedings reported by stenotype, transcript produced by
   computer-aided transcription.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   (Friday, January 19, 2024, 11:04 a.m.)

 2                           *   *   *

 3             COURT SECURITY OFFICER:  All rise.

 4             THE COURT:  Please be seated.

 5             COURTROOM DEPUTY CLERK:  Austin, 23-CV-00853, United

 6   States of America versus Greg Abbott.

 7             THE COURT:  Can we have appearances please?

 8             MR. WALTERS:  Your Honor, for the defendants, Ryan

 9   Walters from the Attorney General's Office, with my colleagues

10   David Bryant, Munera Al-Fuhaid, Kyle Tebo and Jacob Przada.

11             THE COURT:  Good morning.

12             MR. WALTERS:  Good morning.

13             MS. KIMBALL:  For the United States, I'm Kimere

14   Kimball from the Department of Justice.  With me is Mary Kruger

15   and Landon Wade from the U.S. Attorney's Office, and on the

16   phone are Brian Lynk and Andrew Knudsen from the Department of

17   Justice.

18             THE COURT:  Good morning to all of you.  The reason I

19   called for the status conference is because the landscape in

20   this case has changed.  I could say if I was a comedian, it's

21   ebbed and flowed, as different panels of the Court of Appeals

22   have had their hands on it.  So we find ourselves in the

23   somewhat interesting position of having a -- to start things,

24   of course, we had a hearing, I issued a preliminary injunction,

25   the State appealed that.  Then there was an administrative stay
```

1  issued by the Court of Appeals pending that appeal, then a

2  three-judge panel with two judges in the majority and one

3  dissenting affirmed my decision.  Then recently the Fifth

4  Circuit vacated the panel's decision and took the case en banc.

5  So we don't know what will happen en banc, we have no idea, but

6  I think that we need to keep something in mind.  The only thing

7  that is en banc at the moment is a preliminary injunction

8  order.  It is not a trial on the merits.  There has been no

9  full exploration in this court, and because it hasn't happened

10 in this court it cannot happen at the Court of Appeals level

11 even en banc on the facts.  The only thing that the Court of

12 Appeals en banc can decide is whether the preliminary

13 injunction is or was appropriate, not the merits of the case.

14 Normally, Court of Appeals don't try lawsuits, that's a

15 function of the District Courts and I am concerned not at all

16 with the fact that this matter went en banc.  I can assure you

17 that if you were to talk to any of my colleagues, they will

18 tell you that after the opinion came down from the Court of

19 Appeals affirming my decision, I said, *This is just the*

20 *beginning.  This thing is going en banc, guaranteed, one*

21 *hundred percent guaranteed somebody will take it en banc.*  And

22 that's exactly what happened.  I have been a federal judge for

23 over 35 years, I've been sitting here in the Western District

24 of Texas now 12 years.  I know the landscape, so I knew that

25 this was going to go en banc, particularly with the strenuous

1  dissent written by my friend Judge Willett, who by the way, I

2  have enormous respect for.  Judge Willett is a brilliant legal

3  mind and a fine judge, and I have a lot of respect for Judge

4  Willett, so I don't want anybody to suggest otherwise.  But we

5  need to get to the merits of this case sooner rather than

6  later.  The United States maintains -- by the way, what is the

7  status of the buoy?  I don't have any clear understanding.  Has

8  that been brought to the side of the river or is it still out

9  where it was in the first place or has it been removed?

10         MS. KIMBALL:  It's still where it was in the first

11  place, Your Honor.

12         THE COURT:  It's still there.

13         MR. WALTERS:  That's correct, Your Honor.

14         THE COURT:  That's fine, because I think that my

15  original order was that it was to be brought to the bank of the

16  river, but then that was stayed administratively until the

17  decision.  And then I did not -- between the time the decision

18  was entered and the time that the en banc would have been time

19  for them to vote on en banc, I could have ordered the State of

20  Texas at that point to move it because at that point I was

21  affirmed.  I didn't do that for the very same reason I didn't

22  order the State of Texas to pull it out of the water, because I

23  understood, in my view, that it was going to go en banc.  I

24  felt very sure of that, and I felt very sure that the panel's

25  opinion, the majority, would be vacated and we'd find ourselves

1    where we are today.

2         Now, in his dissent, in the original now vacated

3    opinion, which also vacates his dissent, vacates everything

4    having to do with that, Judge Willett did call attention to the

5    fact that if I was so convinced that this was a navigable

6    waterway, I should have ordered the buoys removed from the

7    water and put on the bank.  Well, I think Judge Willett just

8    simply did not understand my rationale for not doing that.

9    This is an expensive endeavor, moving this buoy around, and I

10   was well aware that because of the nature of this case that it

11   was probably going to be litigated to the nth degree and that

12   likely there would be an en banc review ultimately.  Probably I

13   thought of the preliminary injunction order, regardless of how

14   it went, and for sure any decision on the merits.  And because

15   of that, I did not want the taxpayers of the State of Texas

16   having to pay to move that thing out of the water, and if the

17   Court ultimately directed that it be moved back, then go to

18   that expense.  That's a lot of money we're talking about here.

19   And I thought that, yeah, it would probably have been a little

20   safer if it was by the bank than where it is now, but

21   nonetheless, I understood that -- with all these administrative

22   stays and then the administrative stay being lifted and we're

23   waiting for the en banc, this thing could have been taken in

24   and pulled out of the water twice.  Why do that?  Why do that?

25   Why cost the people of Texas those kinds of funds.  I just did

1   not see the benefit of it, I didn't see the merit in it and

2   that was the reason.  Not because I believe that what I said in

3   my order -- obviously, I wouldn't have written the order if I

4   didn't believe it was correct at the time, but I didn't have

5   all the facts in front of me, and so we are going to do that.

6   We are going to have a trial on the merits and we're going to

7   have it soon, very soon, because there is no need for this to

8   linger on.

9           There's no need for any extensive discovery here.  The

10  parties have -- I'm going to give you a time to take some

11  additional depositions, but the parties have a clear -- this

12  has been going on long enough, the parties have a clear

13  understanding.  We did have something of an evidentiary hearing

14  on the preliminary injunction, but the standard is different.

15  It's likelihood of success on the merits, it is not success on

16  the merits.  There's a difference and a lot of District judges

17  forget about that.  A lot of Circuit judges forget about that.

18  There's a different standard we're dealing with.  And it may be

19  that after hearing all of the evidence, I may change my view

20  and find that this is not a navigable waterway of the United

21  States.  I don't know.  I'm going to keep an absolutely open

22  mind.

23          Now, there are a number of things that were called out

24  in Judge Willett's -- I may not have agreed with it, but it was

25  a very well drafted dissent that I think need to be addressed

1   as well as what was called out in the majority opinion.  Even

2   though they're off the record, they do reflect some questions

3   that were raised and answered, okay, and these judges are

4   potentially going to be on the en banc panel, so I think we

5   better -- not this en banc.  Whatever happens with the

6   preliminary injunction is whatever happens.  I'm talking about

7   a judgment on the merits where people have a chance to bring in

8   their witnesses.

9            Now, for instance, there was allusion to the fact that

10  the Border Patrol regularly navigates that section of the river

11  in their Border Patrol boats on a regular basis, but no

12  evidence was presented to that effect because we were in a

13  preliminary injunction stage.  If the United States contends

14  that the Border Patrol regularly navigates it, I want to hear

15  some evidence to that effect.  If it's not navigable and nobody

16  navigates it, as the state contends, I want to hear evidence to

17  that effect.

18           I used to sit in Del Rio.  I was on the wheel in Del

19  Rio for a year and a half.  I know this section of the river.

20  I've seen boats going up and down it, but that isn't how I

21  decide cases, I'm not a witness.  And that was some time ago,

22  by the way, not recently.  That was eight years ago.  The river

23  could have changed in those years, eight, nine years ago when I

24  was sitting down there.

25           So the Border Patrol contends -- because one of the

1   things that is potentially another lawsuit, not in front of me,

2   thank God, is the Border Patrol's contention that in this very

3   area, the State of Texas is precluding the Border Patrol not

4   only from accessing the river, but accessing their boat ramp.

5   You don't need a boat ramp if you don't have boats to put in

6   the water.  So that's one of the things we need to figure out.

7   Are they really navigating the waterway now, or not?  And of

8   course, there are many other issues that need to be addressed

9   in this trial that were not fully explored in the preliminary

10   injunction hearing.  And so my view is that we need to address

11   these and address them quickly so that there can be some

12   resolution because I don't want us to get tied up with these

13   other cases.  I mean, the United States has threatened to sue

14   Texas yet again over the alleged blocking of Border Patrol

15   agents to get access to the river in that area.  I guess

16   there's a gate there or something, they've got National Guard

17   troops there.  And then there's yet another lawsuit I think

18   between the United States -- isn't there another lawsuit going

19   on now?

20           MS. KRUGER:  There is one, Your Honor, a suit over the

21   wire --

22           THE COURT:  Oh, the wire, the barbed wire.  There's a

23   barbed wire lawsuit.  There's so many of these suits floating

24   around, and I didn't actually intend that to be a pun, but

25   there are so many of these suits around, I don't want this one

1   to get bollixed up in all that, okay.  So we are going to have

2   our trial as early in March as we can, and that will give you a

3   month to get ready, which is more than enough time in this

4   instance.  I don't see the trial lasting more than two to three

5   days.  Can anybody disabuse me here?

6          MR. WALTERS:  Your Honor, I think your estimate as to

7   two to three days is probably right.  I would say that our

8   entire team is facing preliminary injunction hearing in two

9   lawsuits defending SB4, the State's immigration law that is

10  currently scheduled in this court before Judge Pitman for

11  February 13th.

12         THE COURT:  Yes, but how many lawyers do you have?

13         MR. WALTERS:  Well, Special Litigation has a total of

14  12, but we have the SB1 litigation that is ongoing.

15         THE COURT:  That's why I'm giving you until March.

16  You'll be able to take care of it.  I don't have any concern

17  about that.  I've always gotten excellent briefing out of the

18  State of Texas.  Some people are taking the position that this

19  Court never rules-- I've heard this from pundits, I've heard

20  this from pundits, that somehow this Court always rules against

21  the State of Texas.  That's just absolutely fabricated and

22  false.

23         I will give you just one example, but there are many.

24  In the fetal burial case, the Tenth Circuit Court of Appeals

25  had ruled that an identical statute to the one that Texas had

STATUS CONFERENCE                                    11

1   passed was on its face unconstitutional.  I had that case in
2   front of me.  After looking at it carefully, I ruled in
3   opposition to the Tenth Circuit.  People thought I was crazy,
4   but I said that I thought that Texas had the authority to, in
5   fact, pass such a statute and that the statute was
6   constitutional on its face.  Now, I had to issue an injunction
7   order because *Roe vs. Wade* was still in effect, a temporary
8   order, because *Roe vs. Wade* was still in effect, and it wasn't
9   on the constitutionality of the statute, it was the fact that
10  there were no places to bury the remains.  There were 50,000
11  abortions in Texas the year or two years before and there were
12  only two places that would accept fetal remains, and each one
13  of them would only accept less than a hundred, in the entire
14  State of Texas because of the difficulty.  So the Court of
15  Appeals affirmed me on the issue of -- because in the meantime,
16  the United States Supreme Court had come down after I ruled
17  that the Tenth Circuit was wrong and I was right and the
18  statute was constitutional.  So I was affirmed by the Fifth
19  Circuit there, and then the Fifth Circuit did not rule on the
20  last part of it.  They were waiting for the Supreme Court to
21  rule on *Roe vs. Wade*.  And because if they would have ruled *Roe*
22  *vs. Wade* constitutional, they would have affirmed me.  If they
23  ruled that *Roe vs. Wade* was unconstitutional, I mean reversed
24  it, which they did, vacated *Roe vs. Wade*, then they would
25  simply vacate that part of my ruling.  I said on the record the

1  reason I ruled the way I ruled is because I was compelled to by

2  *Roe vs. Wade*, which the panel of the Fifth Circuit understood.

3  Two years that sat there, then the Supreme Court -- two and a

4  half years it sat up there, and the Supreme Court finally ruled

5  that *Roe vs. Wade* -- vacated *Roe vs. Wade* and then that partial

6  part of my case was dismissed, as it should have been.  So I

7  don't rule against the State of Texas or Governor Abbott

8  because I have something against the State of Texas, quite the

9  contrary.  I look at things straight up the road, and I'm going

10  to keep an absolutely open mind when I hear this trial, and I

11  will decide it on whatever the evidence will be at the trial,

12  not at the preliminary injunction hearing.  We're not going to

13  cobble in facts presented at the preliminary injunction

14  hearing.  If you have a witness you need to present, you better

15  present them here.  I don't care whether they were at the

16  preliminary injunction hearing.  This is not a preliminary

17  injunction hearing, this is a trial on the merits.  Okay?

18  Everybody understand that?

19          MS. KIMBALL:  Your Honor, we absolutely agree and

20  agree with the expeditious timing of the trial.  We do want to

21  note, though, we plan to disclose experts and just wanted to

22  make the Court aware of that.

23          THE COURT:  That's why I'm giving you 30 days.  If I

24  had my druthers, I'd have the trial tomorrow, you know, because

25  this is important.  It's important for the people of Texas.

 1   It's important for the people of the United States, and I need

 2   to get this done, but I need to give you time to do your -- so

 3   you disclose your experts, I want those disclosed within five

 4   days, and we're going to have a trial at the end of March.

 5            MR. WALTERS:  Your Honor, could I request a

 6   five-minute recess to talk with our clients?

 7            THE COURT:  Where's your clients?

 8            MR. WALTERS:  Right here, Your Honor, from the

 9   Governor's office.

10            MS. KIMBALL:  To be clear, you just mean the identity

11   or you mean the full report?

12            THE COURT:  No, their identity.  Five minutes?

13            MR. WALTERS:  Yes, Your Honor.

14            THE COURT:  I'll give you a few minutes.  Go talk to

15   them.  I'm not moving.

16            *(11:24 a.m.)*

17                         *   *   *

18            *(11:27 a.m.)*

19            MR. WALTERS:  Your Honor, if I could speak for a

20   moment?

21            THE COURT:  Sure.

22            MR. WALTERS:  Your Honor, our position is that moving

23   to a trial at this stage with all the other proceedings would

24   be a waste of this Court's time and agency resources at the

25   Attorney General's Office, as well as the Texas Military

1  Department and DPS.  We're facing a potential lawsuit from the

2  federal government as you alluded to.  We have cases up and

3  down the federal judiciary involving the concertina wire at the

4  border before Judge Moses that's currently in the Supreme

5  Court, but likely to be coming back down and moving forward in

6  the District Court.  We have the Court immediately took en banc

7  review of this decision, and Judge Willett's dissent had not

8  only factual -- not only based on the factual record, but it

9  was at the PI record the issues of law that we think waiting

10 for the Fifth Circuit en banc's ruling could dispose of this

11 case as a matter of law going forward.  So --

12         THE COURT:  Well, look, Judge Willett's factual

13 findings such as they were had to have been based on the

14 record.  And as far as the law is concerned, there is no law

15 that says -- listen, if anybody has read the Rivers and Harbors

16 Act, I can promise you it's me, multiple, multiple times.

17 There is nothing in the Rivers and Harbors Act that suggests

18 that absent a declaration from Congress, which there hasn't

19 been, decertifying this as being covered by the Rivers and

20 Harbors Act that as a matter of law you could rule that this is

21 not a navigable waterway if, in fact, it is being used and has

22 consistently been used as a navigable waterway.

23         Now, what Judge Willett has ruled could not stand at

24 the Supreme Court.  I mean, if that's what he ruled, and he

25 didn't, by the way.  Judge Willett did not say that the

1   Congress has exempted this part.  All he said is that what the
2   government had presented to date, to date, in that hearing did
3   not show it, but that's at the preliminary injunction stage.
4   So with all deference to your client, the answer is no.  These
5   litigations are never going to end, okay.  There is never going
6   to be a time when you won't be in litigation.  As long as
7   Governor Abbott takes the positions that he's taking and the
8   federal government takes the positions that it's taking, there
9   is never going to end -- this litigation will just continue and
10  because the government has threatened to file yet another
11  lawsuit.  Look, let me tell you something -- you can be seated,
12  counsel.
13          MR. WALTERS:  Thank you.
14          THE COURT:  Let me tell you something, I am not at all
15  unsympathetic to the concerns raised by Governor Abbott.  That
16  may surprise you.  I am not at all unsympathetic to the
17  concerns raised by Governor Abbott about what is happening at
18  the border.  Don't forget, you're not looking at somebody here
19  who has been known throughout his career as some flaming
20  liberal judge.  I was appointed by President Ronald Reagan.  He
21  did not appoint a lot of left wing, off-the-rails judges.  My
22  view of things is that the Court should rule on the narrowest
23  grounds possible, federal judges should not be making law, they
24  should be interpreting the law, and the Constitution should be
25  interpreted in accordance with its original meaning.  That has

1   always been my judicial philosophy.  Now, that does not mean,

2   however, that if I find that the Constitution or federal law is

3   being violated, whether intentionally or unintentionally, I

4   won't enforce that.  That is my duty.  When I was nominated by

5   President Reagan, he called me on the phone.  We talked, before

6   he nominated me.  He used to do that.  And he said to me in no

7   uncertain terms, he said, *"Will you pledge, will you pledge,*

8   *Mr. Ezra, to follow the Constitution of the United States, to*

9   *follow the law and to make an impartial decision regardless of*

10  *which way it falls?"*  And I said, *"Yes, Mr. President, I will."*

11  I have tried my very best to keep that pledge to President

12  Reagan, and it's the same pledge I took when I took my oath of

13  office.  I have nothing against Governor Abbott, now or ever.

14  I am just trying to determine whether a buoy put out in the

15  middle of the Rio Grande River violates the Rivers and Harbors

16  Act, that's it, or some other constitutional provision.  That's

17  all there is to it.  It has nothing to do with Governor Abbott.

18  I'm not here to either -- and I certainly don't criticize

19  Governor Abbott, never have.  I thought that the suggestion and

20  I made that statement that predicating -- and even Judge

21  Willett did not accept this -- predicating the buoy on the

22  theory that there was a war between the United States and

23  illegal immigrants in the sense of a declared war of the United

24  States where somehow the governor or any governor could assume

25  the powers of the presidency and Congress, Congress has to

```
 1    declare war.  Franklin Delano Roosevelt, even though America --
 2    believe me, I grew up very close to Pearl Harbor, even though
 3    Pearl Harbor was bombed, thousands of Americans were killed in
 4    an unmitigated and unjustified sneak attack.  President
 5    Roosevelt couldn't declare war himself, he had to go to
 6    Congress and he made the very famous speech which we've all
 7    seen hundreds of times.  And Congress declared war on imperial
 8    Japan, not President Roosevelt.  So a governor can't declare
 9    war, and Judge Willett didn't suggest that.  Now, that doesn't
10    mean that I somehow have a personal animus toward Governor
11    Abbott, I don't.  I absolutely do not.  And I'm not going to
12    say I'm going to rule for the State of Texas or rule for the
13    government.  I am going to look at this completely fresh.  And
14    so can we have a trial date please?
15              COURTROOM DEPUTY CLERK:  March 19th.
16              THE COURT:  March 19, 2024.
17              COURTROOM DEPUTY CLERK:  Yes, Judge, 9:00 a.m.
18              THE COURT:  9:00 a.m.  Each side is to disclose their
19    experts within five days.  Somebody looks like he's trying to
20    jump up and say something.  It isn't going to change my mind on
21    the trial.  Yes, sir.
22              MR. BRYANT:  Your Honor, I would just point out that
23    there's an amended complaint that was filed and the motions to
24    dismiss --
25              THE COURT:  The motion to dismiss is going to be
```

1  | subsumed by the trial.  I can't decide the motion to dismiss on
2  | the facts that we have.  The facts are highly contested, so the
3  | motion to dismiss which you have filed, which -- by the way, by
4  | filing a motion to dismiss, the State of Texas acknowledged
5  | that I have not lost jurisdiction over this case simply because
6  | there's an appeal in the Fifth Circuit of a preliminary
7  | injunction, and that's a smart move on your part, by the way,
8  | because that's well settled law.
9  |        MR. BRYANT:  And Your Honor, we have not answered or
10 | had a need to answer in this case yet, and so I think that
11 | there are some preliminary things that need to happen before we
12 | can go down the road quite as quickly as the Court --
13 |        THE COURT:  You filed an amended complaint.
14 |        MS. KIMBALL:  We did, Your Honor.
15 |        THE COURT:  How much has changed in your amended
16 | complaint?
17 |        MS. KIMBALL:  We added the Treaty claim.  The Rivers
18 | and Harbors Act claim stayed exactly the same.  We added a
19 | claim that Texas's actions were contrary to the Treaty of
20 | Guadalupe Hidalgo.
21 |        THE COURT:  When is that answer due?
22 |        MS. KIMBALL:  The motion to dismiss is currently fully
23 | briefed and ready for disposition, so it will be due 15 days
24 | after the decision on the motion to dismiss.
25 |        THE COURT:  Well, I'm going to deny the motion to

 1   dismiss without prejudice on the basis that there is no way I

 2   can make a ruling on it on the facts of the matter today.  The

 3   Treaty of Hidalgo was part of the argument that was previously

 4   made.  This is not something new.

 5        MR. WALTERS:  Your Honor, that is a new claim and that

 6   would be a pure question of law.  Our motion to dismiss says

 7   that the Treaty is not self-executing and that the United

 8   States does not have a cause of action to enforce it.  It's not

 9   anything fact based in any way, so we think the Court could

10   rule on that and at least narrow the issues for any trial.  To

11   have that just hanging out there when they've amended their

12   complaint and we haven't had an opportunity to answer, we

13   think --

14        THE COURT:  I know what your answer is.  It'll take

15   you five minutes to answer this complaint.  It's the same

16   complaint except for the Treaty of Hidalgo.

17        MR. WALTERS:  Well, Your Honor, our deadline to answer

18   has not arisen and will not arise until after you rule on our

19   motion to dismiss which has been fully briefed.

20        THE COURT:  Well, all right.  Here is what I will do.

21   I will withdraw my denial of the motion to dismiss.  I will

22   make a -- I don't need any further argument on the Treaty of

23   Hidalgo.  That really has already been briefed.  And have you

24   submitted -- do we have all the papers on that?  We do, don't

25   we?

1           MS. KIMBALL:  Yes, Your Honor, it's fully briefed.

2           THE COURT:  All right.  I'm going to decide that

3    without further oral argument and I'll decide that promptly.

4    And so we will go forward from there.  Okay?  So regardless of

5    how I rule on that, we still have the other issue, so we still

6    need the trial.  Unless I grant the motion on the Treaty of

7    Hidalgo, then that goes up on appeal.  My concern is I don't

8    want this thing bouncing back and forth to the Fifth Circuit on

9    every issue with all kinds of unresolved issues.  That's the

10   concern I have.

11          MR. WALTERS:  Your Honor, I would like to also point

12   out that the other claim involving the Rivers and Harbors Act

13   we do have as a matter of law and I think fact specific in the

14   motion to dismiss that the State is not a proper object of

15   injunctive relief enforcement for the statute, so there are

16   both issues that are pure matters of law that could be disposed

17   of that are briefed in our motion to dismiss.

18          THE COURT:  Okay, well, I will get those decisions out

19   as quickly as possible, probably right around the time we go to

20   trial.  I'll get them out.  Don't worry.  Get ready for trial.

21   Okay?  There will be a trial.

22          COURTROOM DEPUTY CLERK:  Discovery deadline.

23          THE COURT:  So I want disclosure of experts within

24   five days, both sides.  You already know who your experts are,

25   I think, don't you?  No?  Okay.  Well, you had some in the last

1    go-around.  What happened to them?

2          MR. WALTERS:  I don't believe we had experts in the

3    first go-around, we had fact witnesses.

4          THE COURT:  You had some fact witnesses.  I'll try to

5    get to the motion to dismiss sooner rather than later.  And

6    then you'll need to file your answer immediately thereafter, if

7    it's necessary.

8          COURTROOM DEPUTY CLERK:  Discovery is February 16th.

9          THE COURT:  You're giving me the 50-mission stare,

10   counsel.  Yes?

11         MR. BRYANT:  Your Honor, I just want to raise a

12   possibility that the State may choose to assert a counterclaim

13   when it comes time for that answer, so that hadn't been

14   decided, that's just one lawyer's idea, and so I just wanted to

15   make the Court aware of it so that if it does come to pass, it

16   wouldn't be a surprise.

17         THE COURT:  Okay.  I don't know what kind of

18   counterclaim, but if you file one, you file one.  They'll just

19   answer it very quickly and we'll go to trial.  There are very

20   few mysteries in this case, okay, very few.  We know what this

21   case is about and we've got this thing kind of floating around

22   out there.  I don't think the governor has made any effort to

23   put any more in the water.  Has he?

24         MR. WALTERS:  No, Your Honor.

25         THE COURT:  And people are walking around this thing,

1    to be honest with you, as I understand it.  I mean, they're not

2    climbing over the top, right?

3            MR. WALTERS:  That's right, Your Honor.  There have

4    been no attempts to climb over the buoy.  The buoy's purpose is

5    to channel people to other -- to the ports of entry, Your

6    Honor.

7            THE COURT:  Well, they're not going to channel people

8    to many ports of entry.  How big is the buoy?  I can't remember

9    exactly, but it's not that large.

10           MR. BRYANT:  A thousand feet approximately.

11           MS. KIMBALL:  A thousand feet.

12           THE COURT:  It's only 1000 feet.  How long is the Rio

13   Grande in that area, about ten miles?  If you start at the damn

14   and you work your way down?

15           MR. WALTERS:  I would say, Your Honor, it's a sort of

16   force multiplier.  We have the concertina wire which has

17   obviously been the subject of litigation and we have troops

18   along the border, so the combination of those things --

19           THE COURT:  Well, Governor Abbott has maintained that

20   the reason he needs to close that gate is because the

21   concertina wire hasn't been effective, they've been cutting

22   through the concertina wire.

23           MR. WALTERS:  Well, Your Honor, yes, the concertina

24   wire is not effective if the Border Patrol cuts through it in

25   ways--

 1          THE COURT:  No, I'm not talking about the Border

 2   Patrol.  I'm talking about the cartels and the people who bring

 3   the people across.

 4          MR. WALTERS:  No, Your Honor.

 5          THE COURT:  Are you telling me that there's no problem

 6   now with illegal immigration?

 7          MR. WALTERS:  No.

 8          THE COURT:  That the buoy and the concertina wire has

 9   stopped people from coming across the border in the Del Rio

10   sector of Eagle Pass area?  I don't think Governor Abbott made

11   that statement recently in his press conference.

12          MR. WALTERS:  Well, I don't think that the test of

13   whether something is effective completely eliminates the

14   problem.

15          THE COURT:  According to Governor Abbott, it not only

16   doesn't eliminate it, there's been an unprecedented huge number

17   of people flowing through every day.

18          MR. WALTERS:  Yes, Your Honor, but --

19          THE COURT:  I don't disagree with him.  I think he's

20   right, there has been.

21          MR. WALTERS:  But that's not inconsistent with

22   concertina wire --

23          THE COURT:  It's inconsistent with the thought that

24   somehow the buoy is going to solve the problem.  I don't think

25   Governor Abbott ever thought one buoy sitting there was going

1    to solve the problem, maybe a whole bunch of buoys, but one

2    buoy was going to solve the problem.

3            Look, let's not forget something here, Governor Abbott

4    was a State Supreme Court justice.  People forget that.  He

5    wasn't always a politician.  Well, kind of a politician, I

6    guess, you get elected to the Supreme Court, but this is not a

7    stupid man here we're dealing with.  He's very bright, and he

8    made statements recently which were highly publicized about the

9    concern about the huge number of people that continue to come

10   across the border illegally in this very area, this very

11   general area, and there's no question that they do.  The

12   government doesn't suggest that, that's not what they're

13   arguing.  They're not arguing that people aren't coming across.

14   Anybody who would make that argument is living in fantasy land.

15   People are coming across, and a buoy or barbed wire -- heck,

16   you know the fence they put up, now let's be clear here, part

17   of the fence was put up by the Obama administration.  Then part

18   of it was put up under the Trump administration.  They cut

19   through the fence.  They cut right through the fence.  You know

20   that, right?

21           MR. WALTERS:  Your Honor, fences, if they are not

22   maintained -- it's part of a --

23           THE COURT:  No, no, this has nothing to do with

24   maintaining the fence.

25           MR. WALTERS:  They have to be guarded, Your Honor.

1    There's surveillance of the fences so that Texas National Guard

2    can go or Border Patrol because they also put up concertina

3    wire, so they don't think it's ineffective.  In fact, they've

4    asked Texans to help them set up concertina wire along the

5    border.

6           THE COURT:  I don't disagree with that.  I'm just

7    saying that no one element is going to solve the problem.  You

8    have dedicated people in Mexico, criminals who make a huge

9    amount of money trafficking human beings into the United

10   States, and if you don't think that they know how to get over

11   concertina wire or cut through these fences, which they do,

12   they cut through the fences.  There was a big thing on 60

13   Minutes.  Was it 60 Minutes or Sunday Morning where they had

14   somebody go out there and they just pushed the fence open

15   because somebody had cut through it.  And then they were

16   showing where the fence had been rewelded.  You have to have a

17   whole host of different measures in order to keep people out

18   and that includes if you believe in barriers.  I'm not taking a

19   position on them, but you certainly need electronic

20   surveillance.  You need surveillance, you need drones, you need

21   helicopters, you need the full gambit of things, but that's not

22   before me.  I am not the governor of the State of Texas and I

23   wouldn't ever dream of running, believe me.

24          I am a federal judge.  What is in front of me is

25   whether the waterway is navigable, whether the Treaty somehow

 1  bars what Texas is doing, which I have some concern that it

 2  doesn't because Texas -- well, Texas at one point there was

 3  some allegation that this thing was over on the Mexican side of

 4  the river.  That's a no go, can't do that.  But if it's on the

 5  United States side of the river, that may be a serious problem,

 6  but whether the Treaty bars it is another story.  I don't know

 7  about that.  I'm not convinced at this point as a matter of law

 8  that it does, but I have to look at that carefully.  I may

 9  change my view, but there are many other issues here, so we'll

10  get them all resolved.

11          I am not trying to put -- I used to play baseball, I

12  said that before, I'm not trying to put the State of Texas in a

13  squeeze play, okay.  I know what a squeeze play is, I'm not

14  trying to do that.

15          *(Interruption, phone ringing.)*

16          THE COURT:  Who are you, sir?

17          MR. BRYANT:  My name is David Bryant.

18          THE COURT:  No, I know who you are.  I'm talking about

19  the gentleman behind you.

20          MR. BRYANT:  Mr. Sullivan.

21          THE COURT:  Mr. Sullivan, I know it wasn't you.  That

22  was Governor Abbott on the phone, he was sabotaging me.  I

23  don't think so.  Actually, Governor Abbott is quite a nice guy.

24  I've had a chance to meet him before.  And not that it's

25  neither here nor there, but Senator Cornyn is a good friend of

1    mine, he and I went to the same law school and I've known

2    Senator Cornyn for a long time.  And before I came to sit in

3    the Western District of Texas, I went to Senator Cornyn first

4    and asked whether he had any objection at all to my coming.  He

5    said, *"Absolutely not."*  If he had said yes, I would not be

6    here.  And he and I have remained good friends.  So I don't

7    know Governor Abbott that well, I just got a chance to meet him

8    once and he was a very delightful guy when I met him.  So I

9    have nothing against Governor Abbott, and nothing in my order

10   should ever be construed as any personal attack on him,

11   absolutely not.  He's doing what he thinks is right for the

12   people of Texas and that's his job.  My job is not to do what's

13   right for the people of Texas or the people of the United

14   States, it's to do what's right for the law and for the

15   Constitution, and hopefully that's right for the people,

16   hopefully.  So please don't think that I'm trying to work

17   against Texas here.  The United States is in the same squeeze

18   box that you are.  Okay?

19          And I'm not trying to somehow cut off the Court of

20   Appeals with their en banc ruling.  I had made this decision to

21   do this, to move it forward before they went en banc.  I knew

22   they were going to go en banc in this case.  Anybody who has

23   any understanding of what is going on in the Fifth Circuit

24   there would know that with Judge Willett filing such a strong

25   dissent, there was a likelihood that there would be people on

1    the Fifth Circuit who would say, *Let's take another look at*
2    *this, maybe Judge Willett is right.*  Is that a surprise?  It
3    wasn't a surprise to me.  I'm sure it wasn't even a surprise to
4    the United States.  They argued against it, but unsuccessfully.
5    Okay.

6              MR. WALTERS:  Your Honor, if I could just one request
7    procedurally.

8              THE COURT:  Sure.

9              MR. WALTERS:  We would propose that the plaintiff
10   disclose their experts and witnesses first to give us an
11   opportunity to then respond.

12             THE COURT:  That's why I told them within five days.

13             MR. WALTERS:  So it's just for the plaintiff, Your
14   Honor?

15             THE COURT:  Yes, of course.  Yes?

16             MS. KIMBALL:  Are there further deadlines that the
17   Court is setting?

18             THE COURT:  Yes, we're going to give you those now.

19             COURTROOM DEPUTY CLERK:  Discovery, February 16th.

20             MS. KIMBALL:  Is that fact discovery closing or all
21   discovery?

22             THE COURT:  These experts need to write their reports,
23   which I think they need to understand they've got a deadline
24   here, so I think general fact discovery, February 16th.  I know
25   it sounds like, gee wiz, that's only like a month away, little

1    less than a month away, but you have to remember that a lot of

2    this has already been done.  This has already been done, so

3    this is round two, so to speak, not round one.  And then for

4    your expert discovery for depositions for the experts, I would

5    say the end of February.

6            MS. KIMBALL:  So, Your Honor, that's the close of

7    expert discovery?

8            THE COURT:  Yes, the reports have to be written and

9    turned in and expert discovery has to be completed by the end

10   of February.

11           COURTROOM DEPUTY CLERK:  February 29th.

12           THE COURT:  So those expert reports should be in a

13   week ahead of that.

14           COURTROOM DEPUTY CLERK:  February 22nd.

15           THE COURT:  I'll give you until February 29th to turn

16   in -- when is the trial?

17           COURTROOM DEPUTY CLERK:  March 19th.

18           THE COURT:  What is March 5th?

19           COURTROOM DEPUTY CLERK:  March 5th is a Tuesday.

20           THE COURT:  I'll give you until March 5th to turn in

21   your proposed findings of fact and conclusions of law.

22           COURTROOM DEPUTY CLERK:  Pretrial submissions will be

23   March 11th, and objections to pretrial submissions will be

24   March 13th.

25           THE COURT:  I'm going to try to get my ruling on the

 1   Hidalgo issue.  And what was the other issue?  There was one

 2   other issue.

 3        MR. WALTERS:  The other purely legal question in there

 4   is whether there's a cause of action against the State of Texas

 5   under the Rivers and Harbors Act, Your Honor.

 6        THE COURT:  Okay.  I think the Supreme Court has

 7   already kind of addressed that, but all right.  I think there's

 8   some Supreme Court law on that issue.  Anything else?

 9        COURTROOM DEPUTY CLERK:  I set it for the four days.

10        THE COURT:  And we've set it for four days, trial for

11   four days.  If it takes a little longer, it takes a little

12   longer.  I spend 99 percent of my time here now.  Judge Yeakel

13   retired on us, so it's just Judge Pitman and me, so I'll be

14   here.  Anything else?

15        MR. WALTERS:  I think we've said our peace, Your

16   Honor.

17        THE COURT:  You said your peace?  No, you haven't.

18   You're going to have plenty of opportunity to say it.  Look, I

19   have a great deal of respect for the United States Attorney's

20   Office and Department of Justice, but I should have it be known

21   that I have a great deal of respect for the State Attorney

22   General's Office.  They have presented some very fine

23   presentations and won cases in my court on more than one

24   occasion over the last 12 years, so I have no -- I think I'm

25   very fortunate in this case to have good lawyers on both sides.

1  This is not one of those cases where I'm going, *Oh, my God.*  So

2  thank you very much and you'll be hearing from me soon on those

3  motions and then you can file your answer.  And I'd like your

4  answer to be filed very quickly and any counterclaim very

5  quickly.  Okay?  Don't sit on it if you're going to file one.

6  Anything else?  No?  No?

7          MS. KIMBALL:  No, Your Honor.  Thank you.

8          COURT SECURITY OFFICER:  All rise.

9          *(12:00 p.m.)*

10                          *   *   *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    *   *   *   *   *

 2   UNITED STATES DISTRICT COURT

 3   WESTERN DISTRICT OF TEXAS

 4

 5        I certify that the foregoing is a correct transcript from

 6   the record of proceedings in the above-entitled matter.  I

 7   further certify that the transcript fees and format comply with

 8   those prescribed by the Court and the Judicial Conference of

 9   the United States.

10

11   Date signed:  January 21, 2024

12

13   /s/ Angela M. Hailey

14   Angela M. Hailey, CSR, CRR, RPR, RMR
     Official Court Reporter
15   262 West Nueva Street
     San Antonio, Texas  78207
16   (210)244-5048

17

18

19

20

21

22

23

24

25
```

**Exhibit B: ECF 75, Order Regarding Status of the Stay Motion**

**FILED**

January 23, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ ps

DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

UNITED STATES OF AMERICA        §        No. 1:23-CV-00853-DAE
                                §
    Plaintiff                   §
                                §
vs.                             §
                                §
ABBOTT ET AL.                   §
    Defendants                  §

**<u>ORDER</u>**

The matter before the Court is the status of this case.  The Court has received

Defendants' Opposed Motion to Stay Proceedings (dkt no. 71) in which the State of

Texas has imposed a deadline upon the Court of 11:59pm January 23, 2024, under

the threat that if this Court did not rule on the motion by that time, it would seek

relief from the En Banc Fifth Circuit Court of Appeals. The Court notes that the

motion was not filed until 11:56pm CST on January 22, 2024, and therefore the

Court was not aware of the motion until the morning of January 23, 2024. The State

of Texas acknowledges that the United States opposes the motion, with the United

States advising this Court of its intent to respond to the motion late in the afternoon

of January 23, 2024. Because this Court feels it is imperative to give both sides of

any dispute an opportunity to be heard, it will be impossible for this Court to file a meaningful order in response to Texas' imposed deadline. Naturally the State of Texas can take whatever action it desires. However, this Court intends to expedite its ruling and is going to make every effort to file a reasoned order addressing defendants' motion by Wednesday, January 24, 2024. Should the State of Texas' concern be the United States request to disclose experts January 24, 2024, this Court will extend that deadline until Friday, January 26, 2024.

    **IT IS SO ORDERED.**

    **DATED:** Austin, Texas, January 23, 2024.

 

_____
David Alan Ezra
Senior United States District Judge

Exhibit C: ECF 66, United States' Motion to Set Date to Comply with Injunction

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No. 1:23-cv-00853-DAE |
| GREG ABBOTT, in his capacity as GOVERNOR OF THE STATE OF TEXAS, and THE STATE OF TEXAS, | |
| *Defendants*. | |

**PLAINTIFF UNITED STATES' MOTION TO SET NEW DEADLINE FOR
COMPLIANCE WITH PARAGRAPH 2 OF PRELIMINARY INJUNCTION**

JAIME ESPARZA
UNITED STATES ATTORNEY

LANDON A. WADE
  Assistant United States Attorney
  Texas Bar No. 24098560
United States Attorney's Office
Western District of Texas
903 San Jacinto Blvd., Suite 334
Austin, TX 78701
(512) 370-1255 (tel)
(512) 916-5854 (fax)

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division

BRIAN H. LYNK
  Senior Trial Counsel
  DC Bar No. 459525
KIMERE J. KIMBALL
  Trial Attorney
  CA Bar No. 260660
ANDREW D. KNUDSEN
  Trial Attorney
  DC Bar No. 1019697
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
(202) 514-6187 (Lynk)
(202) 514-8865 (fax)
Brian.lynk@usdoj.gov
Kimere.kimball@usdo.gov
Andrew.knudsen@usdoj.gov

Dated:  January 17, 2024

*Counsel for the United States of America*

Plaintiff the United States brings this motion seeking judicial relief to effectuate

Defendants' compliance with the Preliminary Injunction ("PI Order") that the Court issued on

September 6, 2023 (ECF 50).  *See Shillitani v. United States*, <u>384 U.S. 364</u> (1966) ("There can

be no question that courts have inherent power to enforce compliance with their lawful orders

[.]").  Specifically, the United States requests that the Court issue an order setting a new deadline

of 14 calendar days from the date of the order for Defendants to comply with Paragraph 2 of the

PI Order, and setting an earlier date for Defendants to inform the United States regarding their

compliance plans in order to effectuate the coordination with the U.S. Army Corps of Engineers

that the PI Order requires.  Defendants have stated through counsel that they oppose the motion.

The grounds supporting this motion are set forth below:

1.  On September 6, 2023, this Court granted the United States' Motion for Preliminary

Injunction (ECF 5), finding that it has established a likelihood of success on the merits of the two

independent Rivers and Harbors Act ("RHA") violations pled in its original Complaint,[1] and that

irreparable harm and the public interest favor preliminary injunctive relief.  ECF 50.

2.  Paragraph 2 of the PI Order states as follows:

> Defendants shall, by September 15, 2023, reposition, at Defendants' expense, and
> in coordination with the United States Army Corps of Engineers, all buoys,
> anchors, and other related materials composing the floating barrier placed by
> Texas in the Rio Grande in the vicinity of Eagle Pass, Texas to the bank of the
> Rio Grande on the Texas side of the river.

3.  Texas appealed the PI Order to the Fifth Circuit Court of Appeals, which initially

entered an administrative stay of the PI Order.  On December 1, 2023, the Fifth Circuit affirmed

---

[1] On October 23, 2023, the United States filed a First Amended Complaint pleading the same
alleged RHA violations and adding a second count alleging that Texas' action is preempted by a
treaty between the United States and Mexico.  ECF 60.  Texas moved to dismiss (ECF 62), and
that motion now is fully briefed.  *See* ECF 63 (United States' opposition filed Dec. 20, 2023);
ECF 64 (Texas's reply filed Jan. 10, 2024).

the PI Order, lifted the administrative stay, and denied Texas's motion for a stay pending appeal.

*United States v. Abbott*, 87 F.4th 616 (5th Cir. 2023). Texas petitioned for *en banc* rehearing.

On December 15, 2023, the United States filed its opposition.

    4. Following the Fifth Circuit panel's decision, on December 4, 2023, the United States

requested through counsel that Defendants, to aid their coordination with the Corps as

required by Paragraph 2 of the PI Order, inform the United States as soon as possible regarding

the following:

    (a) Defendants' anticipated timeframe to comply with Paragraph 2; and

    (b) Defendants' plan for compliance, including the location where it intends to move

the barrier, how it intends to move the barrier, and the anticipated dates when the work would

take place. The United States requested that Defendants include supporting drawings and maps.

*See* Attachment 1 (email correspondence dated Dec. 4-5, 2023) at 2.

    5. On December 5, 2023, Defendants responded that they considered the United States'

requests "premature," based on the Defendants' position as stated in their rehearing petition:

> Because the panel did not issue its mandate forthwith but rather will do so on
> January 23, 2024, Appellants do not interpret the panel's opinion to require any
> immediate action pending this Court's decision on the current petition. To the
> extent the Court disagrees, Appellants request immediate reinstatement of the
> administrative stay of the district court's preliminary injunction to prevent harm
> to the State pending this Court's further review.

Rehearing Petition at 15 (citing *BST Holdings v. OSHA*, No. 21-69845, 2021 WL 5166656, at *1

(5th Cir. Nov. 6, 2021) (per curiam)). Attachment 1 at 1.

    6. Defendants' view is incorrect, as the United States made clear in its opposition to the

rehearing petition. *See* Doc. 111 in *Abbott* (United States' Resp. in Opp. to Pet. for R'hg) at 5

n.1. The Fifth Circuit's administrative stay was effective only until "further order of the Court."

The merits panel expressly dissolved the administrative stay and denied Texas's motion for a

stay pending appeal. *Abbott*, 87 F.4th at 620, 635. This Court's preliminary injunction is thus in effect.

7.   Texas's most recent filing in this Court asserts that the injunction is not in effect because Texas petitioned for rehearing before the Fifth Circuit issued its mandate, and the Fifth Circuit has not yet ruled on the petition. ECF 65 at 1 n.1. This is incorrect. Issuance of the mandate is irrelevant because, as noted above, the Fifth Circuit's December 1 order denied a stay pending appeal *and* expressly dissolved the earlier-imposed administrative stay of this Court's injunction. That order makes clear that the injunction is in effect. Indeed, that an injunction order remains effective during the pendency of an appeal, absent an order to the contrary, is the very premise underlying Federal Rule of Appellate Procedure 8, which Texas invoked in the stay motion rejected by the Fifth Circuit. *See* Fed. R. App. P. 8(a). Moreover, under the Fifth Circuit's rules, Texas's filing of the *en banc* rehearing petition "does not operate as a stay of" the appellate court's order denying Texas' motion for a stay pending appeal. Cir. R. 35 I.O.P. Thus, that additional filing has no effect on the injunction's status. *See also* PI Order ¶ 3 (absent modification by this Court or an appellate court, the PI remains in effect until this Court's final judgment).

8.   To minimize any further delay in implementing Paragraph 2 of the PI Order, for clarity regarding by when Defendants must comply with that Paragraph, and to assure "coordination" between Defendants and the Corps as the Court previously ordered, the United States requests that this Court issue an order:

(a)  Requiring Defendants, within two business days of issuance of the order, to inform the United States of Defendants' plans for compliance, including the location where they

intend to move the barrier, how they intend to move the barrier, and the anticipated dates when the work would take place, with supporting drawings and maps;

      (b) setting a deadline of 14 calendar days following issuance of the order for Defendants to fully comply with Paragraph 2 of the PI Order.

    9.   The United States reserves the right to request a status conference or seek other appropriate relief if Defendants fail to coordinate appropriately with the Corps.[2]

    For the foregoing reasons, the United States requests that the Court grant this motion and enter the attached proposed order setting forth the relief described in Paragraph 8 above.

                         Respectfully submitted,

Dated:  January 17, 2024

JAIME ESPARZA
UNITED STATES ATTORNEY

  */s/ Landon A. Wade*
LANDON A. WADE
  Assistant United States Attorney
  Texas Bar No. 24098560
United States Attorney's Office
Western District of Texas
903 San Jacinto Blvd., Suite 334
Austin, TX 78701
(512) 370-1255 (tel)
(512) 916-5854 (fax)
Landon.wade@usdoj.gov

TODD KIM
ASSISTANT ATTORNEY GENERAL
Environment & Natural Resources Division

  */s/ Brian H. Lynk*
BRIAN H. LYNK
  Senior Trial Counsel
  DC Bar No. 459525
KIMERE J. KIMBALL
  Trial Attorney
  CA Bar No. 260660
ANDREW D. KNUDSEN
  Trial Attorney
  DC Bar No. 1019697
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611

---

[2] Texas has commenced litigation challenging the United States' authority to move or cut the concertina wire Texas placed on the riverbank in the vicinity of Eagle Pass, including on the riverbank above the buoy barrier. *Texas v. Dep't of Homeland Sec.*, No. 23-cv-00055-AM. By seeking to enforce this Court's order regarding removal of the buoy barrier to the riverbank, the United States does not concede that Texas can impede U.S. Border Patrol's access to the border in order to carry out its duties with respect to migrants within U.S. territory on either side of the concertina wire or the buoy barrier.

Washington, DC 20044
(202) 514-6187 (Lynk)
(202) 514-8865 (fax)
Brian.lynk@usdoj.gov
Kimere.kimball@usdoj.gov
Andrew.knudsen@usdoj.gov

*Counsel for the United States of America*

## CERTIFICATE OF CONFERENCE

I certify that I conferred via email with counsel for Defendants regarding the relief requested in this motion.  Counsel for Defendants stated that they oppose the motion.

<span style="text-align:right;">/s/  Brian Lynk</span>
<span style="text-align:right;">Brian Lynk</span>

## CERTIFICATE OF SERVICE

I certify that on January 17, 2024, a copy of this filing was served on counsel of record through the Court's electronic filing system.

<span style="text-align:right;">/s/  Brian Lynk</span>
<span style="text-align:right;">Brian Lynk</span>

**Lynk, Brian (ENRD)**

| | |
|---|---|
| **From:** | Ryan Walters <Ryan.Walters@oag.texas.gov> |
| **Sent:** | Tuesday, December 5, 2023 3:47 PM |
| **To:** | Lynk, Brian (ENRD); Munera Al-Fuhaid; David Bryant; Ethan Szumanski; Sharon Murray; Amber Ahmed; Logan Harrell; Ari Cuenin; Patrick Sweeten; Tamera Martinez; Jacob Przada |
| **Cc:** | Kimball, Kimere (ENRD); Dingivan, James (USATXW); Wade, Landon (USATXW); Knudsen, Andrew (ENRD); Ryan Walters |
| **Subject:** | [EXTERNAL] RE: United States v. Abbott (W.D. Tex. No. 23-cv-853) -- Fifth Circuit has dissolved admin stay |
| **Attachments:** | US v. Abbott - PFREB.pdf |

| | |
|---|---|
| **Categories:** | #1107999 : 90-5-1-1-22454 : ENV_DEFENSE |

Brian:

Thank you for your email yesterday morning regarding the preliminary injunction that is the subject of this appeal.  We have since filed a petition for rehearing en banc (attached) that states our position on the issue your email raised:

> Because the panel did not issue its mandate forthwith but rather will do so on January 23, 2024, Appellants do not interpret the panel's opinion to require any immediate action pending this Court's decision on the current petition.  To the extent the Court disagrees, Appellants request immediate reinstatement of the administrative stay of the district court's preliminary injunction to prevent harm to the State pending this Court's further review.

Pet. 15 (citing *BST Holdings v. OSHA*, No. 21-69845, 2021 WL 5166656, at *1 (5th Cir. Nov. 6, 2021) (per curiam)).

As you know, the Fifth Circuit has already called for a response to our petition by December 15, 2023, in which Appellee will be free to dispute our interpretation or oppose our request.  In light of the position stated in our petition, however, we believe that the logistical demands in your email are premature at this time.

Ryan



**Ryan D. Walters**
Chief
Special Litigation Division
Office of the Texas Attorney General
P.O. Box 12548 (MC 009)
Austin, TX 78711-2548
Phone: (512) 936-2714
Fax: (512) 457-4410
Ryan.Walters@oag.texas.gov

**From:** Lynk, Brian (ENRD) <Brian.Lynk@usdoj.gov>
**Sent:** Monday, December 4, 2023 11:46 AM
**To:** Ryan Walters <Ryan.Walters@oag.texas.gov>; Munera Al-Fuhaid <Munera.Al-Fuhaid@oag.texas.gov>; David Bryant <David.Bryant@oag.texas.gov>; Ethan Szumanski <Ethan.Szumanski@oag.texas.gov>; Sharon Murray <Sharon.Murray@oag.texas.gov>; Amber Ahmed <Amber.Ahmed@oag.texas.gov>; Logan Harrell <Logan.Harrell@oag.texas.gov>; Ari Cuenin <Ari.Cuenin@oag.texas.gov>; Patrick Sweeten <patrick.sweeten@gov.texas.gov>; Tamera Martinez <Tamera.Martinez@oag.texas.gov>
**Cc:** Kimball, Kimere (ENRD) <Kimere.Kimball@usdoj.gov>; Dingivan, James (USATXW) <James.Dingivan@usdoj.gov>; Wade, Landon (USATXW) <Landon.Wade@usdoj.gov>; Knudsen, Andrew (ENRD) <Andrew.Knudsen@usdoj.gov>
**Subject:** RE: United States v. Abbott (W.D. Tex. No. 23-cv-853) -- Fifth Circuit has dissolved admin stay

Good afternoon counsel,

We are in receipt of the 5th Circuit's opinion Friday (attached) affirming Judge Ezra's September 6, 2023 preliminary injunction order (also attached), and dissolving the administrative stay that the 5th Circuit previously had issued, such that the preliminary injunction is in effect. 5th Circuit slip. op. at 2, 28. Paragraph 2 of the preliminary injunction states as follows:

> Defendants shall, by September 15, 2023, reposition, at Defendants' expense, and in coordination with the United States Army Corps of Engineers, all buoys, anchors, and other related materials composing the floating barrier placed by Texas in the Rio Grande in the vicinity of Eagle Pass, Texas to the bank of the Rio Grande on the Texas side of the river.

To aid in Texas's coordination with USACE on this matter pursuant to Paragraph 2, please inform us as soon as possible regarding the following:

    (1) Texas's anticipated timeframe to comply with Paragraph 2 of the preliminary injunction;
    (2) Texas's plan for compliance, including the location where it intends to move the barrier, how it intends to move the barrier, and the anticipated dates when the work would take place. Please
       include supporting drawings and maps.

Please note that USDOJ should be copied on any direct communication to USACE relating to this matter.

Best regards,

Brian H. Lynk
Senior Trial Counsel
Environmental Defense Section
Environment & Natural Resources Division
U.S. Department of Justice
202.514.6187
brian.lynk@usdoj.gov

---

**From:** Ryan Walters <Ryan.Walters@oag.texas.gov>
**Sent:** Thursday, September 28, 2023 1:31 PM
**To:** Lynk, Brian (ENRD) <Brian.Lynk@usdoj.gov>; Munera Al-Fuhaid <Munera.Al-Fuhaid@oag.texas.gov>; David Bryant <David.Bryant@oag.texas.gov>; Ethan Szumanski <Ethan.Szumanski@oag.texas.gov>; Sharon Murray <Sharon.Murray@oag.texas.gov>; Amber Ahmed <Amber.Ahmed@oag.texas.gov>; Logan Harrell <Logan.Harrell@oag.texas.gov>; Ari Cuenin <Ari.Cuenin@oag.texas.gov>; Patrick Sweeten <patrick.sweeten@gov.texas.gov>; Tamera Martinez <Tamera.Martinez@oag.texas.gov>
**Cc:** Kimball, Kimere (ENRD) <Kimere.Kimball@usdoj.gov>; Dingivan, James (USATXW) <JDingivan@usa.doj.gov>; Wade, Landon (USATXW) <LWade1@usa.doj.gov>; Knudsen, Andrew (ENRD) <Andrew.Knudsen@usdoj.gov>; Ryan Walters

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Case No. 1:23-cv-00853-DAE |
| GREG ABBOTT, in his capacity as GOVERNOR OF THE STATE OF TEXAS, and THE STATE OF TEXAS, | |
| *Defendants*. | |

## [PROPOSED] ORDER

Having duly considered Plaintiff the United States' Motion to Set New Deadline for Compliance with Paragraph 2 of Preliminary Injunction, and Defendants' response thereto, the Court hereby **GRANTS** this motion.  Accordingly, **IT IS HEREBY ORDERED** that:

(1) Within two business days from today's date, Defendants shall inform the United States of Defendants' plans for compliance with Paragraph 2 of the Court's Preliminary Injunction Order of September 6, 2023 (ECF 50), including the location where they intend to move the barrier, how they intend to move the barrier, and the anticipated dates when the work would take place, with supporting drawings and maps; and

(2) Defendants shall fully comply with Paragraph 2 of the Preliminary Injunction Order, by no later than January 31, 2024, or such later date that is 14 calendar days following today's date.

**IT IS SO ORDERED.**

SIGNED on this the _____ day of _____, 2024.

_____

Hon. David Alan Ezra
Senior United States District Judge

EXHIBIT D: ECF 67, STATUS CONFERENCE ORDER

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**FILED**

January 18, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ ps
DEPUTY

UNITED STATES OF AMERICA

    vs.                              NO:  1:23-CV-00853-DAE

ABBOTT ET AL.

<u>ORDER SETTING STATUS CONFERENCE</u>

It is hereby ORDERED that the above entitled and numbered case is set for a STATUS CONFERENCE before Judge David A. Ezra in Courtroom 2, on the Fourth Floor of the United States Federal Courthouse, 501 W. 5th St., Austin, TX, on **Friday, January 19, 2024 at 11:00am.** **<u>All local counsel is ordered to appear in person. Counsel out of state is encouraged to attend in person. However, may appear via telephone.</u>** **Out of state counsel is to provide ONE direct number to Courtroom Deputy Priscilla Springs via email (priscilla_springs@txwd.uscourts.gov) by the end of the business day.**

It is further ORDERED that the Clerk of Court shall send a copy of this order to counsel for all parties.

IT IS SO ORDERED.

DATED: Austin, Texas. January 18, 2024.

DAVID A. EZRA
SENIOR U.S. DISTRICT JUDGE