No. 23-50632

# In the United States Court of Appeals for the Fifth Circuit

---

United States of America,

*Plaintiff-Appellee*,

*v.*

Greg Abbott, in his capacity as Governor of the State of Texas; State of Texas,

*Defendants-Appellants*.

---

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

---

## APPELLANTS' REPLY IN SUPPORT OF THE OPPOSED EMERGENCY MOTION TO STAY TRIAL PROCEEDINGS PENDING EN BANC REVIEW AND FOR A TEMPORARY ADMINISTRATIVE STAY

---

| | |
|---|---|
| Ken Paxton<br>Attorney General | Aaron L. Nielson<br>Solicitor General<br>Aaron.Nielson@oag.texas.gov |
| Brent Webster<br>First Assistant Attorney General | Lanora C. Pettit<br>Principal Deputy Solicitor General |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1700<br>Fax: (512) 474-2697 | Coy Allen Westbrook<br>Assistant Attorney General<br><br>Counsel for Defendants-Appellants |

On January 17, 2024, this Court agreed to decide en banc significant legal questions about Texas's authority to place buoys in the Rio Grande. On January 19, the district court *sua sponte* ordered an expedited trial. As part of that order, the district court directed that disclosure of experts would begin by January 24. Yet the district court has not even resolved Texas's motion to dismiss, let alone conducted any merits discovery or afforded a meaningful opportunity for Texas to retain experts. Rather than violating a court order, Texas sought emergency relief.

The district court and the United States have now responded to Texas's motion. Their responses underscore why Texas is entitled to relief: The district court's abrupt decision to hold an expedited trial threatens this Court's jurisdiction and undermines Texas's ability to defend itself in a case that this Court has determined is of "exceptional importance." Fed. R. App. P. 35.

## Argument

### I. Texas's Efforts To Secure Emergency Relief Were Prompted By The District Court's Sudden Rush To Trial.

The district court accuses Texas of "squeez[ing]" it, Exh. A at 1 n.1, and complains that Texas sought emergency relief. Texas, however, did what any responsible litigant would do when confronted with such an extraordinary order.

As Texas's motion explains, the district court had not held a hearing in this case since August 22, 2023. Yet on Friday, January 19, two days after this Court granted en banc rehearing, the district court determined to hold a trial "as early in March as we can." To that end, the district court orally set an expedited trial schedule and

1

ordered disclosure of experts within five days, *i.e.*, by Wednesday, January 24. The district court, however, had not resolved (or apparently even read) Texas's motion to dismiss; Texas had not filed an answer; and no merits discovery had begun. Nor were case-management deadlines set. Texas accordingly had not selected experts for trial, let alone retained them.

On January 22, just one day after receiving the transcript of the district court hearing (which Texas needed to prepare its motion asking to stay the district court's oral order), Texas filed a stay motion and asked the district court to resolve that motion by 11:59 p.m. on January 23. Given the January 24 deadline, only that schedule would allow Texas to seek emergency relief from this Court.

The United States responded to Texas's motion on January 23. The district court afterwards issued an order saying that it "would make every effort" to address Texas's motion "by Wednesday January 24, 2024," and apparently extended the deadline to disclose experts to Friday, January 26. Texas waited until the close of business on January 24 before filing its emergency motion in this Court. Texas did so because it anticipated that the United States would be asked to respond to the State's motion, and Texas wanted to give this Court sufficient time to consider the motion.

The district court faults Texas for seeking emergency relief in this Court. But the district court's order—requiring the parties in a case that had lain dormant for half a year and for which no answer had been filed—to suddenly designate experts within five days created the emergency.

## II. The District Court Provides No Meaningful Justification For Its Actions.

The district court also ruled that Texas is not entitled to a stay. That is incorrect.

*First*, the district court suggests that en banc proceedings "will not determine any case-dispositive issues." Exh. A at 3-6, 16. This Court, however, does not grant en banc review unless important questions of law are at issue. Indeed, en banc determination could obviate the need for a trial at all by adopting any number of legal conclusions that would doom the United States' statutory claim. At a minimum, the en banc determination will clarify the standard. The district court's preliminary-injunction order mistakes, among other things, the framework for assessing navigability and thus asks the wrong factual questions.

The district court now emphasizes that en banc proceedings will not address the United States' claim under the Treaty of Guadalupe Hidalgo. Yet as the transcript makes clear, the district court was apparently unaware that such a claim even existed when it ordered expedited discovery and trial. And as Texas explained, that claim independently fails as a matter of law for additional reasons that do not require any factual development. If the district court dismisses the United States's treaty claim—as it should, because the treaty is not self-executing and furnishes no cause of action—then it would be appropriate to dismiss this entire case.

*Second*, the district court stresses the importance of developing the facts and observes that ordinarily it is a good practice to resolve factual disputes quickly. Exh. A at 4; *cf.* Exh. B. Yet the Court only grants en banc review in "exceptional" cases. Fed. R. App. P. 35. Until the en banc Court determines the appropriate legal

3

standard, no one knows which facts are relevant. For example, the parties vigorously disagree about the legal relevance of certain alleged facts. The vacated panel decision relied on the (assumed) fact that the Rio Grande was historically crossed at certain points via ferry to suggest the river is navigable. Texas, however, explained in its en banc petition that the correct legal question under the Rivers and Harbors Appropriation Act of 1899 is not whether the relevant portion of a river *impedes* commerce by forcing crossings, but whether that portion of the river can be used *for* commerce by allowing shipping down the river. As the en banc Court necessarily concluded by agreeing to rehear this matter, trial will serve no purpose until such foundational legal questions are resolved.

Regardless, there is no reason for the "unique rush" to develop those facts here. *See, e.g.*, *In re Landry*, 83 F.4th 300, 305 (5th Cir. 2023). Defendants need time to prepare an adequate defense—especially a sovereign dutybound to represent and protect millions of its citizens. Rather than appropriately acknowledging Texas's right to defend itself, the district court observes that abbreviated discovery is appropriate for a merits trial because discovery for the preliminary-injunction hearing was also abbreviated. *See* Exh. A at 10. But that is backwards; if the facts were not adequately developed in the preliminary-injunction posture, then the parties require *more* time to prepare for the merits trial. The United States (at 12-14, 16-18) makes the same mistake. It endeavors to say both that these en banc proceedings could have no effect on proceedings below because the facts might totally change and become "more robust" at trial, and also that a rush to judgment here is appropriate

4

because "little discovery is necessary to prepare this case for trial." This argument fails on its own terms.[1]

The district court's schedule, moreover, is beyond unrealistic. The United States has now disclosed five experts. Exh. C. Because the district court has ordered that expert reports be filed by February 22, and for all expert discovery to close February 29, all rebuttal expert reports would have to be written *and* all depositions of these five experts would have to occur—*all in one week*. And that is just for the United States' experts; Texas would also have to prepare for and defend the depositions of its *own* experts—using whatever time they can find between preparing rebuttal reports—during that *same* week. Far from being anything like "common practice," Exh. A at 6, Texas is aware of no case—much less complex litigation between sovereigns—where a defendant has been required to prepare at least five rebuttal expert reports, take at least five expert depositions, and defend numerous expert depositions, all in the space of seven days. *Cf. In re Landry*, 83 F.4th at 305 & n.5. And that is true even where parties are informed well in advance of discovery deadlines and trial dates; not, as here, where the district court ordered expedited discovery after effectively sitting on the case for months. There is no reason to truncate discovery in such a rushed and dramatic way if the goal is "to develop a full record of fact and law." Exh. A at 14.

---

[1] The district court observes that the United States does not object to expedited trial. The United States, however, plainly wants to avoid en banc review. *See Dep't of Comm. v. New York*, 139 S. Ct. 2552, 2575 (2019) (courts are "not required to exhibit a naiveté from which ordinary citizens are free").

*Third*, the district court now retreats from its own words. The district court stated during the oral hearing that it would rule on Texas's motion to dismiss "probably right around the time we go to trial" and that Texas would "need to file [its] answer immediately thereafter." Now, the district court says it will rule on Texas's motion to dismiss by the "end of January." Exh. A at 7. That the district court's orders are at times a moving target underscores the need for this Court to exercise its supervisory authority.

## III. The United States' Arguments Are Equally Flawed.

### A. The Court Has Authority To Grant Texas Relief.

The United States' primary argument is that the Court has no jurisdiction to grant relief because Texas has not filed a notice of appeal from the district court's shifting orders. The United States, however, does not point to any case—from any court—where a district court has proceeded to resolve questions after the *en banc Court* determined to rehear a case. Nor does the United States meaningfully dispute that this Court has supervisory authority over the district court and that—absent action by this Court—the district court's orders almost certainly will deprive this Court of jurisdiction to resolve the legal questions that the en banc Court decided to rehear just two days before the district court created this emergency. The Court has authority to prevent the district court from mooting out the en banc Court's review

of the order that Texas has already appealed and that the full Court has already decided to address.[2]

In its response here, the United States simply ignores cases like *Foster v. Gilliam*, 515 U.S. 1301 (1995) (Rehnquist, C.J., in chambers) and *SEC v. Citigroup Global Markets, Inc.*, 673 F.3d 158 (2d Cir. 2012)—which recognize an appellate court's power to stay trial court proceedings below. Whether under this Court's supervisory authority, Rule 8, or the All Writs Act, this Court can prevent the district court from undermining the Court's order setting this matter for en banc review. The United States argues (at 8) that mandamus would be inappropriate because Texas has not provided an adequate "excuse" for its failure to style its emergency filing as a mandamus petition. Yet the United States admits that Texas asked the Court, if necessary, to construe its motion as one for a supervisory writ of mandamus or prohibition, and the United States effectively concedes that what the district court did here was unprecedented. As this Court explained in *Landry*, the Court has power to prevent a district court from rushing to judgment where, as here, a sovereign's interests are attacked. And the United States' repeated suggestion (*e.g.*, at 8, 19) that there is no need for Texas's haste because trial is still weeks away ignores the district court's command that Texas must disclose its experts *today*.

Against all of this, the United States argues (at 16) that the Court should close its eyes to the district court's unprecedented decision because Texas will be able to

---

[2] Texas does not need to file a new notice of appeal. Texas has not done so out of an abundance of caution to prevent duplicative filings and the need to create new dockets. Texas, however, will do so if the Court deems it necessary.

7

obtain appellate review later. But this Court can also protect its own jurisdiction. As Judge Wilkinson explained, the problem "should be apparent." *In re Murphy-Brown, LLC*, 907 F.3d 788, 794 (4th Cir. 2018). When a district court's decision is under active review by an appellate court (and *a fortiori* an en banc appellate court), the district court should allow that superior court's "responsibilities to run their due course." *Id.* Any other rule "would invite district courts to track cases on the appellate court's docket, and when a reversal seemed possible or imminent, to pull the rug out from under the appellate court and the parties," thus "set[ing] up an endless game of cat and mouse." *Id.*

### B. The United States Would Suffer No Prejudice.

The United States also invokes prejudice. The district court's injunction, however, has been stayed since September and the United States does not suggest that the buoys have injured anyone. Nor could it. Furthermore, the United States does not explain its recent desire to rush to trial now after it failed to do *anything* for over a month after the panel opinion purported to vacate the administrative stay. Indeed, even after this Court took this case en banc, the United States did not seek a trial. Instead, the district court ordered one, at which point the United States— reading the room—agreed and claimed for the first time that document discovery could occur within weeks (rather than months or years, as it told Chief Judge Moses).[3]

---

[3] The United States also suggests (at 18) that discovery will be negligible because trial will "primarily [involve] expert testimony related to the navigability of the Rio Grande." This concession demonstrates why the district court's decision to rush expert designations (as well as expert reports, expert depositions, and expert rebuttal

None of the United States' arguments move the line. The United States argues that its treaty claim should be resolved promptly—even though the United States did not think enough of that claim to include it in its original complaint or preliminary-injunction motion. The United States never asked the district court to resolve that claim. And even putting all of that aside, the United States does not dispute that it would be highly wasteful to resolve that claim while the standard for the United States' primary claim is before the en banc Court.

Although suggesting that the issue is irrelevant to its order, the district court endeavored to make up for this lack of any prejudice by pointing to a *news article*, not evidence offered by any party. It observed that people have died while attempting to illegally cross the Rio Grande and insinuates that Texas's buoys are somehow to blame. Exh. A at 15-16 & n.3. This claim is false. As explained in Texas's motion (at 11-12), the buoys have been in place for more than 7 months, and no one has been injured or killed. Nor, despite debunked accusations by the media and the United States, have other Operation Lone Star initiatives caused anyone's death. Instead, it is the United States—not Texas—that is putting both law enforcement officers and migrants at risk. *See, e.g.*, *Texas v. DHS*, No. 23-cv-55, 2023 WL 8285223, at *14 (W.D. Tex. Nov. 29, 2023). The district court says nothing in response.

---

reports) is extraordinarily prejudicial to Texas. The United States, moreover, is wrong that document discovery will be minimal. As the vacated panel decision shows, one of the key issues here concerns *historical* navigability. Texas is thus entitled to *all* the United States' historical records touching on that issue going back more than 100 years. The United States cannot escape its discovery obligations simply by ignoring them.

## Conclusion

The Court should grant Texas's motion.

Respectfully submitted.

| | |
|---|---|
| Ken Paxton<br>Attorney General | /s/ Aaron L. Nielson<br>Aaron L. Nielson<br>Solicitor General<br>Aaron.Nielson@oag.texas.gov |
| Brent Webster<br>First Assistant Attorney General | Lanora C. Pettit<br>Principal Deputy Solicitor General |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1700<br>Fax: (512) 474-2697 | Coy Allen Westbrook<br>Assistant Attorney General<br><br>Counsel for Defendants-Appellants |

## Certificate of Service

On January 26, 2024, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Aaron L. Nielson
Aaron L. Nielson

## Certificate of Compliance

This reply complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2584 words, excluding the parts of the motion exempted by rule; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Aaron L. Nielson
Aaron L. Nielson