

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

Lanora C. Pettit  
Principal Deputy Solicitor General

Lanora.Pettit@oag.texas.gov  
(512) 463-2127

May 24, 2024

**VIA CM/ECF**

Mr. Lyle W. Cayce, Clerk  
U.S. Court of Appeals for The Fifth Circuit

    Re:    *United States v. Abbott*, No. 23-50632

Dear Mr. Cayce:

    In responding to this Court's May 16 notice, the federal government largely repeats its assertion in prior briefing, ECF 78 at 37; ECF 195 at 42, that the political-question doctrine applies only to the political branches of "the federal government, and not to the State." U.S. Letter Br. at 1; *id.* at 2. Insisting that the doctrine "is not a federalism principle," *id.* at 4, the federal government goes so far to say that no case holds "that a federal constitutional question presents a political question that is reserved to a state governor," *id.* at 5. Although none of the cherrypicked cases cited in the federal government's letter discuss the Constitution's reservation of political questions to the States, such cases exist and control here.

    As the State has explained, *Rucho v. Common Cause*, 588 U.S. 684 (2019), and *Moyer v. Peabody*, 212 U.S. 78 (1909), most certainly *do* hold that the Constitution commits non-justiciable political questions to state actors. To be sure, the state actors in *Rucho* were the state legislature (that passed the law) and governor (who signed it), rather than just a governor alone. But the federal government offers no reason why that distinction matters, especially given that Texas law indisputably empowers the Governor with commander-and-chief authority. Regardless, *Moyer* involved a governor acting alone. Rather than addressing such relevant authorities, the federal government instead relies on cases like *Torres v. Tex. DPS*, 597 U.S. 580, 584 (2022), and *Franklin v. Massachusetts*, 505 U.S. 788, 800 (1992). But the former deals with sovereign immunity; and the latter with whether the President constitutes an "agency" within the meaning of the Administrative Procedure Act. Neither is responsive to the Court's questions.

Indeed, just yesterday, the Supreme Court reaffirmed that the political-question doctrine looks to the nature of the *question* being asked. In *Alexander v. South Carolina Conference of NAACP*, No. 22-807, slip op. (May 23, 2024), Justice Alito reiterated that: (1) the Constitution reserves certain political questions to state actors, Slip Op. at 1-2 (describing how the Elections Clause commits redistricting decisions to States); (2) States may raise non-justiciability as part of a defense to a plaintiff's claims, *id.* at 4, 16, 21 (describing South Carolina's assertion of a non-justiciable partisan-gerrymandering defense); and (3) a court adjudicating such a defense must entertain it without wading into non-justiciable political questions, subject only to good-faith review, *id.* at 5-6, 16, 32-33 (finding district court erred by discrediting a "good faith" presumption justifying the State's conduct).

So too here. The Self-Defense Clause recognizes that States may take defensive measures "without the Consent of Congress." U.S. Const. art. I, § 10, cl. 3. The federal government seems to acknowledge (at 3) that language presents a "political question" for which there are no manageable judicial standards. The district court was therefore obligated to credit Governor Abbott's assessment of the threats facing Texas and the buoy barrier's capacity to address them, *Moyer*, 212 U.S. at 84, subject only a requirement of good faith, *see Sterling v. Constantin*, 287 U.S. 378, 403 (1932).[1]

The federal government admits (at 9) that it is asking for a rule that treats state governments worse than their federal counterparts, even though they exercise the same self-defense power—flatly contrary to Supreme Court precedent. In *Sterling*, the Supreme Court equated federal and state executive self-defense powers, including by adopting the treatment of actions by the President in *Martin v. Mott*, 25 U.S. (12 Wheat.) 19 (1827), to assess actions by the Governor of Texas. *See* 287 U.S. at 399. This Court must follow that precedent, which the Supreme Court has not questioned, much less overruled. *See, e.g.*, *Agostini v. Felton*, 521 U.S. 203, 237 (1997). And even if it were an open question, the Constitution speaks for itself.

The federal government cannot avoid that conclusion by engaging (at 3-4, 7) in

---

[1] The federal government suggests (at 2) that Texas has never raised the Self-Defense Clause as a defense. Given the federal government's own argument that the Self-Defense Clause may be ignored precisely *because* Texas asserted it as a defense, ECF 78 at 50; ECF 195-1 at 55; Oral Arg. 33:10, "it is safe to say"—and then some—that the federal government "w[as] on notice" of the issue, *Alexander*, Slip Op. at 21-22. Regardless, as Judge Smith correctly explained at oral argument, political questions implicate Article III jurisdictional limits that courts may not ignore. In all events, Texas has filed an Amended Answer to remove any hypothetical doubt.

the very second-guessing that the political-question doctrine prohibits. Euphemistic references (at 3) to an "influx of irregular migration" aside, the federal government pointedly *does not* accuse the Governor of acting in bad faith. Nor could they do so with a straight face, given that federal courts have squarely found that the federal government's current policies have been "akin to posting a flashing 'Come In, We're Open' sign," *Florida v. United States*, 660 F. Supp. 3d 1239, 1253 (N.D. Fla. 2023); *e.g.*, *Texas v. DHS*, 2023 WL 8285223, at *3, 14 (W.D. Tex. Nov. 29, 2023)—not to mention the government's own admissions that cartel members are crossing the border for reasons other than "migration." Tex. Letter at 2-3. The result is that Texas communities are being ravaged by transnational criminal cartels that operate like paramilitary organizations. *E.g.*, ECF 83 at 26-28; ECF 154 at 15-17, 56-59; Appellant's Br. 3-6, 37 n.4, *United States v. Texas*, No. 24-50149 (5th Cir. Mar. 13, 2024). And the suggestion (at 6) that barriers are not appropriate defensive measures against such actors would surely surprise founding era scholars of international law. *See* R. Natelson & A. Hyman, *The Constitution, Invasion, Immigration, and the War Powers of States*, 13 British J. Am. Leg. Studies 1, 8 n.44 (2024).[2]

Finally, the most "radical" assertion in this case, U.S. Letter Br. at 1, is the federal government's implicit threat (at 9) that if Texas does not accede to its demands to remove a passive, 1,000-foot buoy array from a non-navigable river, *it* might instigate "a trial of physical strength between [itself] and Texas." That irresponsible suggestion is unbefitting the government of "an indestructible Union, composed of indestructible States." *Keller v. United States*, 213 U.S. 138, 149 (1909).

                          Respectfully submitted,

                          /s/ Lanora C. Pettit
                          Lanora C. Pettit
                          *Counsel for Defendants-Appellants*

cc: All counsel of record (via CM/ECF)

---

[2] For similar reasons, the Court should disregard the suggestion (at 6) that "Congress, in the INA, thus has *already*" second-guessed Governor Abbott's declaration. Congress cannot overcome a constitutional right by statute, and it has not even attempted to do so in the Rivers and Harbos Act (or even the INA for that matter). Nor could past Congresses have predicted "present circumstances," including that the President would disregard clear congressional commands. *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 (1986).