

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

LANORA C. PETTIT  
Principal Deputy Solicitor General

(512) 463-2127  
Lanora.Pettit@oag.texas.gov

June 24, 2024

**VIA CM/ECF**

Mr. Lyle W. Cayce, Clerk  
U.S. Court of Appeals for the Fifth Circuit

    Re:    No. 23-50632; *United States v. Abbott*

Dear Mr. Cayce:

    During the en banc oral argument in this case, a member of the Court asked me about the United States's decision to file this suit in the Austin Division of the Western District of Texas, where "cases are assigned not randomly" but are instead "selected by the judge" who hears the case. I explained that I was "not familiar with how the Western District assigns its cases." Oral Arg. 8:12–9:05.

    The next day, a widely read legal blog discussed this line of questioning and described how cases in Austin are assigned under the Western District's publicly available case-management order. *See* Attachment A; *cf.* Amended Order Assigning the Business of the Court (W.D. Tex. May 31, 2024), https://tinyurl.com/WDTexCMO.

    Counsel has learned that the district judge in this case then contacted the legal blog, which has published the exchange about the circumstances behind how this case was assigned. *See* Attachment B.

                                             Respectfully submitted.

                                             /s/ Lanora C. Pettit

                                             Lanora C. Pettit  
                                             Principal Deputy Solicitor General

cc: all counsel of record (via e-mail)

# Attachment A

NewsRoom

5/16/24 Volokh Conspiracy (Blog) (No Page)
2024 WLNR 7005128

Volokh Conspiracy, The (Blog)
Copyright (c) 2024 The Volokh Conspiracy

May 16, 2024

Austin Judges Shop For Cases With "Mutual Consent"

Josh Blackman

May 16, 2024

Yesterday, the Fifth Circuit heard oral argument in the so-called Buoys Case. Texas placed these floating structures in a portion of the Rio Grande river. The closest federal court to the buoys was the Del Rio Division of the Western District of Texas. But the United States filed suit more than two-hundred miles away in Austin. Why? I'm sure defenders would argue that the suit was brought in the state capital, the seat of government. But this decision has consequences. At the time, the Del Rio Division had one judge, an appointee of President George W. Bush. (A recent Biden nominee was confirmed to that division, after some controversy.) But in the Austin Division, DOJ had a much more favorable bench.

This issue came up during the en banc oral arguments. I've transcribed the audio here, but the recording quality is dreadful. (I hope the Fifth Circuit can fix their tech.) Around the 8 minute mark, Judge Ho observed that the "events of this case took place in Del Rio, not Austin." Lanora Pettit, the Texas Deputy SG, acknowledged that the events took place in Eagle's Pass, which is "down river" from Del Rio. Ho continued that this was the United State's choice, and the federal government was the "master of the complaint."

Ho said, and Pettit agreed, that the choice of venue was "not relevant" to resolving the case. She is exactly right. Texas is often in the driver's seat of forum shopping, but here Texas was on the receiving end. This is how things work in the real world. Ignore whatever you read on Twitter.

Judge Ho also pointed out that the cases in Austin are not randomly assigned. This point is not well known nationally, but is well-known to members of the bar. Consider the current assignment order for the Western District of Texas, Austin Division. Judge Robert Pitman receives 50% of the civil docket, and has "Oversight and management of the remaining fifty percent (50%) of the civil" docket. In other words, Judge Pitman personally can decide half of the civil cases, and can decide who receives the other half of the civil cases. And how are those other cases assigned? Not randomly. Rather, three senior judges who sit in Austin are assigned cases by "mutual consent."

Senior U.S. District Judge James R. Nowlin: Any civil case, criminal case, court related matter, or administrative duty assigned or transferred to him by another judge bymutual consent.

Senior U.S. District Judge Sam Sparks: Any civil case, criminal case, court related matter, or administrative duty assigned or transferred to him by another judge bymutual consent.

Senior U.S. District Judge David A. Ezra: Any civil case, criminal case, court related matter, or administrative duty assigned or transferred to him by another judge by mutual consent.

None of these assignments are random. These senior judges can pick and choose which cases they receive. Judge shopping is often used to deride plaintiffs who chose their judge. But that term also applies to judges who choose their plaintiffs.

It is well known in Texas that Judge Ezra fancies the high-profile cases, and consistently receives them. By my count, in the past year, he has presided over the buoys case, the S.B. 4 case, and the porn age verification case. All three of these cases have already been on, or will soon be, on the Supreme Court's docket. Most federal district court judges can go their entire careers without having a single case make it to the Supreme Court. But Ezra has three in a year. Is this a coincidence? No. Ezra could only have received these cases by his "mutual consent." Judge Pitman offered these cases to him, and he accepted them.

Mind you that Judge Ezra is actually a visiting judge from the District of Hawaii, or what Attorney General Sessions called a "judge sitting on an island in the Pacific." To the extent that Ezra was approved to sit in the Western District of Texas, it was to help with some dockets that are backlogged, such as immigration cases or criminal sentencing. He was not sent to Austin to sit as a Council of Revision for the Texas legislature.

Do you think that Judge Ezra would support the Judicial Conference's ill-fated randomization policy? Absolutely not. With randomization he would be stuck with the mine-run of boring civil cases, instead of these high profile matters. It would be a fun thought experiment to randomize assignments within a division. Let's see if that could get buy-in from the Western District of Texas.

The views expressed in any and all content distributed by Newstex and its re-distributors (collectively, the "Newstex Authoritative Content") are solely those of the respective author(s) and not necessarily the views of Newstex or its re-distributors. Stories from such authors are provided "AS IS," with no warranties, and confer no rights. The material and information provided in Newstex Authoritative Content are for general information only and should not, in any respect, be relied on as professional advice. Newstex Authoritative Content is not "read and approved" before it is posted. Accordingly, neither Newstex nor its re-distributors make any claims, promises or guarantees about the accuracy, completeness, or adequacy of the information contained therein or linked to from such content, nor do they take responsibility for any aspect of such content. The Newstex Authoritative Content shall be construed as author-based content and commentary. Accordingly, no warranties or other guarantees are offered as to the quality of the opinions, commentary or anything else appearing in such Newstex Authoritative Content. Newstex and its re-distributors expressly reserve the right to delete stories at its and their sole discretion.

---- Index References ----

News Subject: (Government Litigation (1GO18); Judicial Cases & Rulings (1JU36); Legal (1LE33); Liability (1LI55))

Region: (Americas (1AM92); North America (1NO39); Texas (1TE14); U.S. Southwest Region (1SO89); USA (1US73))

Language: EN

Other Indexing: (Austin Judges)

Word Count: 955

End of Document

NewsRoom

WESTLAW  © 2024 Thomson Reuters. No claim to original U.S. Government Works.  3

# Attachment B

6/24/24 Volokh Conspiracy (Blog) (No Page)
2024 WLNR 9971313

Volokh Conspiracy, The (Blog)
Copyright (c) 2024 The Volokh Conspiracy

June 24, 2024

A Reply From Judge David Ezra

Josh Blackman

Jun 24, 2024

Last month, I wrote a post titled "Austin Judges Shop For Cases With "Mutual Consent." I discussed at some length Judge David Ezra of the U.S. District Court for the District of Hawaii, who hears cases in the U.S. District Court for the Western District of Texas by "mutual consent."

I wrote:

It is well known in Texas that Judge Ezra fancies the high-profile cases, and consistently receives them. By my count, in the past year, he has presided over the buoys case, the S.B. 4 case, and the porn age verification case. All three of these cases have already been on, or will soon be, on the Supreme Court's docket. Most federal district court judges can go their entire careers without having a single case make it to the Supreme Court. But Ezra has three in a year. Is this a coincidence? No. Ezra could only have received these cases by his "mutual consent." Judge Pitman offered these cases to him, and he accepted them.

Mind you that Judge Ezra is actually a visiting judge from the District of Hawaii, or what Attorney General Sessions called a "judge sitting on an island in the Pacific." To the extent that Ezra was approved to sit in the Western District of Texas, it was to help with some dockets that are backlogged, such as immigration cases or criminal sentencing.

I received an email out of the blue from Judge Ezra. He wrote:

First, while technically correct that there are three Senior Judges in Austin, in practice Judge Sparks is currently on inactive Senior Status and Judge Nowlin has a very reduced case load. So in reality the bulk of the Austin docket is currently being handled by Judge Pitman and myself. You were correct that Judge Pitman controls the Austin docket, however, when he is unavailable or recused those cases are assigned to me in most instances. That was how the Buoy case and SB 4 case came to my docket. I did not seek out those cases. Judge Pitman will tell you that I have never asked for any particular case be assigned to my docket and the same is true for my San Antonio docket.

As for my sitting in the Western District I was not brought on board in 2013 to take any particular case or class of cases, including immigration cases. The border federal courts were and remain inundated and it was determined that I could be of most help working on civil cases, many of which are long and complex. This is particularly true in the Austin Division. This frees up

Judge Pitman to work not only on civil cases but the time sensitive criminal docket. The situation in Austin became acute when the other active Judge in Austin Lee Yeakel retired into private practice last year.

Finally, I can assure you that anyone who actually knows Judge Pitman or any of the other judges in the Western District who are in a position to assign me cases will tell you I don't look for "big" cases. Judge Pitman assigns me cases in blocks and I don't even know the names of the cases until they are transferred to my docket. I also don't run away from a case because it may be difficult. By the way, since you mentioned that Chief Judge Moses was appointed by President Bush you must also know that I was appointed by President Reagan, not that either of those facts are in any way important to how we rule.

I asked Judge Ezra if I could quote his reply on the blog, and he replied:

&#x2026;. [G]enerally when a federal judge corresponds privately with a law professor it is understood to be private. That is so they may have an open and full conversation without the judge feeling constrained by the concern his or her comments will be made public. That said, in this case I really have no concern about you quoting from my email.  Everything I said there is absolutely true and does not intrude in anyway I can see into politics.

I do have a response to Judge Ezra, based on some remarks he gave at a recent meeting of the Federal Bar Association in Austin, but that will have to wait for another time. The Supreme Court's docket still detains me. But in the interest of completeness I wanted to share the Judge's remarks.

The post A Reply From Judge David Ezra appeared first on Reason.com.

The views expressed in any and all content distributed by Newstex and its re-distributors (collectively, the "Newstex Authoritative Content") are solely those of the respective author(s) and not necessarily the views of Newstex or its re-distributors. Stories from such authors are provided "AS IS," with no warranties, and confer no rights. The material and information provided in Newstex Authoritative Content are for general information only and should not, in any respect, be relied on as professional advice. Newstex Authoritative Content is not "read and approved" before it is posted. Accordingly, neither Newstex nor its re-distributors make any claims, promises or guarantees about the accuracy, completeness, or adequacy of the information contained therein or linked to from such content, nor do they take responsibility for any aspect of such content. The Newstex Authoritative Content shall be construed as author-based content and commentary. Accordingly, no warranties or other guarantees are offered as to the quality of the opinions, commentary or anything else appearing in such Newstex Authoritative Content. Newstex and its re-distributors expressly reserve the right to delete stories at its and their sole discretion.

---- Index References ----

Company: FEDERAL BAR ASSOCIATION, THE

News Subject: (Corruption, Bribery & Embezzlement (1EM51); Crime (1CR87); Criminal Law (1CR79); Fraud (1FR30); Government Litigation (1GO18); Judicial Cases & Rulings (1JU36); Legal (1LE33); Social Issues (1SO05))

Region: (Americas (1AM92); Hawaii (1HA58); North America (1NO39); Texas (1TE14); U.S. Southwest Region (1SO89); U.S. West Region (1WE46); USA (1US73))

Language: EN

Other Indexing: (U.S. District Court; Supreme Court; Federal Bar Association) (David Ezra)

Word Count: 951

---

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.