

# KEN PAXTON

### ATTORNEY GENERAL OF TEXAS

Lanora C. Pettit
Principal Deputy Solicitor General

(512) 463-2127
Lanora.Pettit@oag.texas.gov

August 7, 2024

**Via CM/ECF**

Mr. Lyle W. Cayce, Clerk
U.S. Court of Appeals for the Fifth Circuit

    **Re:**     *United States v. Abbott*, No. 23-50632

Dear Mr. Cayce:

    As indicated yesterday, I am filing a copy of the hearing transcript for the status conference on August 6, 2024, that I referenced in my previous letter to the en banc Court. Yesterday afternoon, the district court ordered that the August 6th status conference be "continued in person" today. During this morning's hearing, the district court verbally instructed me to file a copy of today's transcript as well. Accordingly, the district court's order and second transcript are also attached.

              Respectfully submitted.

              /s/ Lanora C. Pettit

              Lanora C. Pettit
              Principal Deputy Solicitor General

cc: all counsel of record (via CM/ECF)

ATTACHMENT 1:
TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE DAVID A. EZRA
AUGUST 6, 2024

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | AU:23-CV-00853-DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | AUSTIN, TEXAS |
| | ) | |
| GREG ABBOTT, ET AL., | ) | |
| | ) | |
| Defendants. | ) | AUGUST 6, 2024 |

```
*************************************************
          TRANSCRIPT OF STATUS CONFERENCE
       BEFORE THE HONORABLE DAVID A. EZRA
*************************************************
```

FOR THE PLAINTIFF:   BRIAN H. LYNK
                     U.S. DEPARTMENT OF JUSTICE
                     ENVIRONMENTAL DEFENSE SECTION
                     P.O. BOX 23986
                     WASHINGTON, D.C. 20026-3986

                     ANDREW D. KNUDSEN
                     BRYAN JAMES HARRISON
                     KIMERE J KIMBALL
                     U.S. DEPARTMENT OF JUSTICE
                     ENVIRONMENT & NATURAL RESOURCES
                     P.O. BOX 7611
                     WASHINGTON, D.C. 20044

                     LANDON ALLEN WADE
                     UNITED STATES ATTORNEY'S OFFICE
                     903 SAN JACINTO BOULEVARD, SUITE 334
                     AUSTIN, TEXAS 78701

                     MARY F. KRUGER
                     UNITED STATES ATTORNEYS OFFICE
                     CHIEF, CIVIL DIVISION
                     601 NW LOOP 410, SUITE 600
                     SAN ANTONIO, TEXAS 78216

```
 1   FOR THE DEFENDANTS:   MUNERA AL-FUHAID
                           MONROE DAVID BRYANT, JR.
 2                         JOHNATHAN STONE
                           KYLE STEPHEN TEBO
 3                         OFFICE OF THE ATTORNEY GENERAL
                           PO BOX 12548
 4                         AUSTIN, TX 78711-2548

 5                         RYAN DANIEL WALTERS
                           OFFICE OF THE TEXAS ATTORNEY GENERAL
 6                         SPECIAL LITIGATION DIVISION
                           209 WEST 14TH STREET, 7TH FLOOR
 7                         AUSTIN, TEXAS 78701

 8                         JAMES P. SULLIVAN
                           OFFICE OF THE GOVERNOR
 9                         P.O. BOX 12428
                           AUSTIN, TEXAS 78711-2428
10
     COURT REPORTER:       ARLINDA RODRIGUEZ, CSR
11                         501 WEST 5TH STREET, SUITE 4152
                           AUSTIN, TEXAS 78701
12                         (512) 391-8791

13

14

15

16

17

18

19

20

21

22

23

24   Proceedings recorded by computerized stenography, transcript

25   produced by computer.
```

```
09:10:45   1        (Open court)
09:10:45   2            THE CLERK:  AU:23-CV-853, United States of
09:10:49   3   America v. Greg Abbott, et al.
09:10:53   4            THE COURT:  All right.  Good morning to all of
09:10:55   5   you.  Can we have appearances, please.
09:11:00   6            MR. LYNK:  Good morning, Your Honor.  For the
09:11:01   7   United States, Brian Lynk from the Department of Justice.
09:11:05   8   With me are Andrew Knudsen, Kimere Kimball,
09:11:09   9   Bryan Harrison, as well as Mary Kruger and Landon Wade of
09:11:15  10   the U.S. Attorney's Office.
09:11:18  11            MS. AL-FUHAID:  Good morning, Your Honor.
09:11:19  12            THE COURT:  Good morning.
09:11:19  13            MS. AL-FUHAID:  Munera Al-Fuhaid on behalf of
09:11:19  14   Defendants Governor Greg Abbott and the State of Texas.
09:11:23  15   And with me are my colleagues from the Texas Attorney
09:11:25  16   General's Office, David Bryant, Johnathan Stone,
09:11:29  17   Zach Berg, Kyle Tebo, Ryan Walters.
09:11:42  18            THE COURT:  And my buddy back there in the
09:11:42  19   courtroom, good to see you.  You want to make your
09:11:42  20   appearance?
09:11:42  21            MR. SULLIVAN:  Sure.  James P. Sullivan,
09:11:45  22   General Counsel for the Governor of Texas, Greg Abbott.
09:11:47  23            THE COURT:  Good.  Good to see you.
09:11:49  24            MR. SULLIVAN:  Thanks, Judge.
09:11:49  25            THE COURT:  Okay.  Well, we've had an eventful,
```

| | | |
|---|---|---|
| 09:11:55 | 1 | if not entirely clear opinion or a bunch of opinions, out |
| 09:12:01 | 2 | of the Fifth Circuit.  And one of the things we need to |
| 09:12:09 | 3 | do today is decide how we're going to go forward. |
| 09:12:11 | 4 | I think the first thing we have to keep in mind |
| 09:12:15 | 5 | is that the *en banc* ruling was a ruling on a preliminary |
| 09:12:19 | 6 | injunction, not the merits.  We haven't had the trial in |
| 09:12:21 | 7 | this case yet, so there is room for additional evidence. |
| 09:12:25 | 8 | Now, to the extent that the *en banc* ruling laid |
| 09:12:29 | 9 | out legal principles, those legal principles of course |
| 09:12:32 | 10 | are binding.  But the problem is -- and several judges |
| 09:12:41 | 11 | who have read the opinions, and some law professors I |
| 09:12:45 | 12 | think have also weighed in -- we have a nine-nine split. |
| 09:12:56 | 13 | So you have the majority, which is nine judges, |
| 09:13:06 | 14 | for the -- for most of it, but then you have seven |
| 09:13:13 | 15 | judges -- seven or eight judges; I'm not sure -- who |
| 09:13:18 | 16 | Judge Richman, who did not agree with the majority.  She |
| 09:13:23 | 17 | concurred in the judgment, but she did not agree with the |
| 09:13:26 | 18 | majority on the test for navigability.  She took a |
| 09:13:32 | 19 | dispute with that.  And Judge Ho didn't say anything |
| 09:13:35 | 20 | about it at all.  So you actually have, if you look at |
| 09:13:41 | 21 | that issue, what could be said to be a nine-nine split. |
| 09:13:48 | 22 | I'm not sure about that.  I'm not taking that |
| 09:13:51 | 23 | position, okay?  I don't know.  But it's something that |
| 09:14:01 | 24 | the parties are going to have to address. |
| 09:14:04 | 25 | Typically, if you have -- for instance, I'll |

09:14:08   1   give you an example.  I was on a panel.  I sit regularly

09:14:12   2   with the Ninth Circuit Court of Appeals, and have for

09:14:15   3   over 35 years.  And I was on a panel that made a very

09:14:20   4   important ruling involving the State of Oregon, and that

09:14:35   5   was appealed to the Supreme Court.  Justice Kagan had to

09:14:46   6   recuse herself because she had been Solicitor -- I guess

09:14:49   7   she had been -- I'm not sure.  I think she was Solicitor

09:14:52   8   General, right? at the time.  So she had to recuse

09:14:56   9   herself, and the Supreme Court split four-four.  The end

09:14:59  10   result was our ruling, the Ninth Circuit ruling, was

09:15:03  11   affirmed.

09:15:07  12          Now, we have done some research of our own on

09:15:16  13   this, and I think what we have to do is there's going to

09:15:20  14   have to be some parsing of these opinions and looking at

09:15:24  15   them carefully.  But the point is that it isn't as clear

09:15:28  16   cut as one would seem, and I think both parties need to

09:15:32  17   understand that.  I think we need to look at it very

09:15:36  18   carefully.

09:15:36  19          And I think Governor Abbott, who is himself an

09:15:42  20   attorney and a former State Supreme Court Justice, a very

09:15:46  21   bright man, he's made, obviously, a statement in support

09:15:51  22   of the decision, but he's been very -- otherwise, very

09:15:55  23   reserved, I thought, which leads me to believe that he

09:16:00  24   understands that this isn't quite as clear-cut as one

09:16:03  25   might think.

| | | |
|---|---|---|
| 09:16:04 | 1 | I don't know. I could be wrong here. But it |
| 09:16:11 | 2 | doesn't matter, quite frankly, because this case, I |
| 09:16:15 | 3 | predict -- and I'm a good predictor. I've had four |
| 09:16:23 | 4 | cases -- three or four cases that I said -- that I've |
| 09:16:25 | 5 | decided that I said would go to the Supreme Court, and |
| 09:16:28 | 6 | all four of them did. |
| 09:16:34 | 7 | I did okay at the Supreme Court except in |
| 09:16:41 | 8 | bump stock. I got -- I didn't do well in bump stock, but |
| 09:16:45 | 9 | I still think I was right on bump stock. The others the |
| 09:16:52 | 10 | Fifth Circuit was reversed. I was reversed, and then |
| 09:16:55 | 11 | they were reversed by the Supreme Court. The most recent |
| 09:16:59 | 12 | one was the 1983 case involving Castle Hills. And had |
| 09:17:06 | 13 | good dissent from, actually. Judge Oldham wrote a strong |
| 09:17:10 | 14 | dissent from the panel opinion. And think I -- Judge |
| 09:17:14 | 15 | Oldham and I were right, and the Supreme Court thought so |
| 09:17:16 | 16 | also. |
| 09:17:16 | 17 | But this case will end up, I think, in the |
| 09:17:19 | 18 | Supreme Court. So you have to take the long view. And |
| 09:17:24 | 19 | for sure SB 4 will end up at the Supreme Court. So we |
| 09:17:29 | 20 | have to take the long view in this case and remember |
| 09:17:35 | 21 | that, whatever we do, we have to do with a light of |
| 09:17:40 | 22 | trying to create the very best record we can, both sides, |
| 09:17:45 | 23 | because it isn't going to end here. |
| 09:17:50 | 24 | Whatever I do, we don't know whether we have a |
| 09:17:53 | 25 | jury yet. You know, that's still up there. And who |

| | | |
|---|---|---|
| 09:18:01 | 1 | knows?  I don't know why the State of Texas would |
| 09:18:08 | 2 | actually want a jury in this case, but all right.  Unless |
| 09:18:13 | 3 | it was just a way to delay the case.  I don't know.  I'm |
| 09:18:16 | 4 | not sure.  I would hope not.  But a lot of people have |
| 09:18:26 | 5 | been shaking their heads on that one. |
| 09:18:28 | 6 | You know, I haven't ruled entirely against the |
| 09:18:30 | 7 | State of Texas in this case.  I dismissed a cause of |
| 09:18:33 | 8 | action brought by the -- by the United States Government |
| 09:18:41 | 9 | in this case.  It wasn't mentioned, I don't think, in the |
| 09:18:44 | 10 | en banc, but it did happen. |
| 09:18:45 | 11 | So here we are.  Do we have any additional |
| 09:18:55 | 12 | discovery that needs yet to be done before we go to |
| 09:18:58 | 13 | trial? |
| 09:18:58 | 14 | MS. AL-FUHAID:  No, Your Honor. |
| 09:18:59 | 15 | THE COURT:  You don't? |
| 09:19:01 | 16 | MS. AL-FUHAID:  Not from our perspective. |
| 09:19:04 | 17 | MR. LYNK:  Your Honor, we're not requesting |
| 09:19:05 | 18 | that at this time.  Now, we are of course looking, as you |
| 09:19:10 | 19 | mentioned, at the opinion carefully.  We're also looking |
| 09:19:13 | 20 | at -- we'll be making our evaluation as to whether to |
| 09:19:17 | 21 | seek further appeal from the opinion.  I think as part of |
| 09:19:20 | 22 | that, of course, we're going to reevaluate the evidence |
| 09:19:23 | 23 | that we have in light of the discussions in the opinion. |
| 09:19:27 | 24 | And so I can't rule that out entirely. |
| 09:19:29 | 25 | THE COURT:  Yeah.  I want to make it very clear |

| | |
|---|---|
| 09:19:31 | 1 |
| 09:19:36 | 2 |
| 09:19:42 | 3 |
| 09:19:47 | 4 |
| 09:19:51 | 5 |
| 09:19:55 | 6 |
| 09:19:58 | 7 |
| 09:19:58 | 8 |
| 09:20:01 | 9 |
| 09:20:05 | 10 |
| 09:20:08 | 11 |
| 09:20:08 | 12 |
| 09:20:10 | 13 |
| 09:20:12 | 14 |
| 09:20:14 | 15 |
| 09:20:16 | 16 |
| 09:20:19 | 17 |
| 09:20:22 | 18 |
| 09:20:26 | 19 |
| 09:20:29 | 20 |
| 09:20:31 | 21 |
| 09:20:31 | 22 |
| 09:20:33 | 23 |
| 09:20:36 | 24 |
| 09:20:41 | 25 |

1 that I am personally not saying there is a definitive

2 split here.  What I'm saying is that has -- that is the

3 chatter, okay?  There are law professors and judges who

4 have said that Judge Willett's opinion is not

5 precedential.  Now, I'm not saying that.  I want to make

6 that very, very clear.

7          MR. LYNK:  Yes.

8          THE COURT:  I don't want to read a newspaper

9 article saying Judge Ezra said Judge Willett's opinion is

10 not precedential.  I didn't say that, and I'm not saying

11 it.

12          MR. LYNK:  Understood, Your Honor.  But just on

13 your question of discovery, I think -- again, we're not

14 asking for it today, but I think we'd like the

15 opportunity to give you a firmer answer once we evaluate.

16          THE COURT:  Okay.  Let me explain to you, now,

17 the parties had requested a 60-day continuance.  And you

18 might be wondering why there was a joint motion filed.

19 Or I guess the State had agreed to it or something?

20          MS. AL-FUHAID:  We did not oppose the request,

21 Your Honor.

22          THE COURT:  You didn't oppose the request.

23 Okay.  Well, that's agreeing to it.

24          So why -- I don't know what -- is that --

25 that's kind of a --

| | | |
|---|---|---|
| 09:20:43 | 1 | Anyway, so the State didn't oppose the request. |
| 09:20:48 | 2 | The government made it. Why -- why 90 days instead of 60 |
| 09:20:52 | 3 | days? The reason is you have to prepare for trial. I |
| 09:20:59 | 4 | used to be a trial lawyer in my time. I don't know how |
| 09:21:03 | 5 | long it will take the panel that is selected -- I don't |
| 09:21:09 | 6 | even know who the panel is in this case. Do we know? |
| 09:21:12 | 7 | MS. AL-FUHAID: We're not aware, Your Honor. |
| 09:21:14 | 8 | THE COURT: Yeah. I don't think we even know |
| 09:21:16 | 9 | who the panel is. I don't know how long it's going to |
| 09:21:22 | 10 | take them. I mean, I'm still waiting even to this day |
| 09:21:25 | 11 | for a panel ruling on the SB 4 case. And I'm not chiding |
| 09:21:28 | 12 | the Fifth Circuit for that; it's a difficult issue. But |
| 09:21:31 | 13 | they haven't come down with an opinion in that, and that |
| 09:21:33 | 14 | was argued quite some time ago. |
| 09:21:36 | 15 | So sometimes it takes a while to get these |
| 09:21:39 | 16 | rulings out. And I know that because, as I said, I sit |
| 09:21:42 | 17 | on the Ninth Circuit. In fact, I'm about to go off to |
| 09:21:46 | 18 | Portland to sit on the Ninth Circuit again. We have some |
| 09:21:49 | 19 | important cases we're going to be deciding. So I'm |
| 09:21:52 | 20 | not -- I'm not critical at all. But we don't know. |
| 09:21:56 | 21 | And my concern was that, once you get a ruling, |
| 09:22:01 | 22 | you need to prepare for trial. And sometimes you prepare |
| 09:22:04 | 23 | differently if you're going to try the case to a jury |
| 09:22:11 | 24 | versus a judge. And I don't want to put you in the same |
| 09:22:15 | 25 | kind of squeeze play the State likes to put me in. |

| | | |
|---|---|---|
| 09:22:21 | 1 | By the way, I think that's a bad practice.  If |
| 09:22:24 | 2 | I were you, I would not continue -- I would talk to |
| 09:22:26 | 3 | whoever is in charge of that and not do these letters to |
| 09:22:30 | 4 | the judge saying, if you don't rule by tomorrow at 5:00, |
| 09:22:33 | 5 | I'm doing this.  It kind of sounds like a threat, and |
| 09:22:37 | 6 | federal judges don't do threats well.  I think it's not a |
| 09:22:45 | 7 | good idea to do that. |
| 09:22:46 | 8 | I have never in my entire 35, almost 36 years, |
| 09:22:50 | 9 | on the bench had it done to me, except by the State of |
| 09:22:53 | 10 | Texas twice now.  So I think -- and I've handled big |
| 09:22:59 | 11 | cases.  So I think it's a better practice not to do that. |
| 09:23:04 | 12 | Now, does it prejudice me against the State?  Absolutely |
| 09:23:08 | 13 | not.  I mean, I made my ruling for the State in this case |
| 09:23:14 | 14 | after they did it the first time.  But I just think it's |
| 09:23:18 | 15 | not a good practice, and it doesn't look good.  It |
| 09:23:22 | 16 | doesn't look good to me, and I don't even think it looks |
| 09:23:25 | 17 | good to the Fifth Circuit. |
| 09:23:31 | 18 | It would be me like putting an order out |
| 09:23:33 | 19 | saying, you know, if the Fifth Circuit doesn't do |
| 09:23:36 | 20 | something by X number hours, I'm going to do this, this, |
| 09:23:40 | 21 | or this.  And I think a Fifth Circuit Judge would look at |
| 09:23:44 | 22 | that and say, Who does this guy think he is?  So I think |
| 09:23:46 | 23 | it's not a good practice, and I would really kind of |
| 09:23:48 | 24 | avoid it. |
| 09:23:49 | 25 | If you intend to file a motion or a writ of |

| | | |
|---|---|---|
| 09:23:53 | 1 | mandamus and you want to let the judge know, I would just |
| 09:24:02 | 2 | say, We are contemplating filing a writ of mandamus in |
| 09:24:08 | 3 | this matter, period.  And if you're going to file it, |
| 09:24:11 | 4 | file it five minutes after you send me the notice.  Or |
| 09:24:14 | 5 | file it two days after.  But don't say, if you don't do |
| 09:24:17 | 6 | it by X hour, I'm going to drop the ball on you.  I think |
| 09:24:22 | 7 | it just doesn't play well. |
| 09:24:27 | 8 | But that's an aside, all right?  That's just a |
| 09:24:30 | 9 | little bit of advice from somebody who's been a lawyer |
| 09:24:36 | 10 | for 52 years. |
| 09:24:39 | 11 | So I wanted to be sure that both sides had a |
| 09:24:44 | 12 | full and ample opportunity to be prepared for whatever |
| 09:24:49 | 13 | kind of trial we get.  We may get a ruling.  I don't know |
| 09:24:55 | 14 | if they're going to have -- do they have oral argument on |
| 09:24:57 | 15 | this mandamus? |
| 09:24:58 | 16 | MS. AL-FUHAID:  Right now no oral argument has |
| 09:25:00 | 17 | been scheduled, but I believe they could if they chose to |
| 09:25:02 | 18 | have an argument. |
| 09:25:03 | 19 | THE COURT:  Sure.  Did they have oral argument |
| 09:25:06 | 20 | the last mandamus, the one that they denied?  The State |
| 09:25:07 | 21 | of Texas filed a mandamus the last time, and it was |
| 09:25:10 | 22 | denied. |
| 09:25:11 | 23 | MS. AL-FUHAID:  They did not. |
| 09:25:12 | 24 | THE COURT:  They did not have -- I think they |
| 09:25:14 | 25 | did, didn't they? |

| | | |
|---|---|---|
| 09:25:16 | 1 | MR. SULLIVAN:  They had an emergency oral |
| 09:25:18 | 2 | argument remotely the day after from the U.S. Supreme |
| 09:25:23 | 3 | Court. |
| 09:25:23 | 4 | MS. AL-FUHAID:  I'm sorry, Your Honor.  I stand |
| 09:25:24 | 5 | corrected. |
| 09:25:29 | 6 | THE COURT:  That's okay.  Listen, this has been |
| 09:25:31 | 7 | crazy.  This has been crazy. |
| 09:25:33 | 8 | So the only reason I mentioned the chatter |
| 09:25:35 | 9 | about the nine-nine split is because I want you to be |
| 09:25:39 | 10 | ready for that.  I want you to argue it and be able to |
| 09:25:41 | 11 | prepare it.  If you sail along thinking, oh, well, we |
| 09:25:46 | 12 | won, maybe you didn't win as much as you thought you won |
| 09:25:49 | 13 | or maybe you did.  I don't know.  And I don't want the |
| 09:25:55 | 14 | State -- the Federal Government to be oblivious about |
| 09:26:01 | 15 | this either.  I mean, this is an important issue.  We |
| 09:26:04 | 16 | need to look at it. |
| 09:26:05 | 17 | There's an interesting water -- it's a water |
| 09:26:07 | 18 | case where the Supreme Court made it -- wrote a decision. |
| 09:26:13 | 19 | The case is -- my good law clerk Sam Krevlin found it -- |
| 09:26:20 | 20 | *Rapanos v. United States*.  It's not that old, really, in |
| 09:26:22 | 21 | Supreme Court terms.  It's a 2006 decision at 547 U.S. |
| 09:26:28 | 22 | 715, where there was this kind of a plurality.  And one |
| 09:26:35 | 23 | of the justices agreed with the judgment but didn't go |
| 09:26:38 | 24 | along with all of the reasoning. |
| 09:26:42 | 25 | So you had kind of this four-four -- I mean, |

| | | |
|---|---|---|
| 09:26:46 | 1 | you had four-four and then somebody else over here doing |
| 09:26:50 | 2 | something different.  And two circuits did not follow the |
| 09:26:56 | 3 | four opinion, the, quote/unquote, majority opinion, |
| 09:27:01 | 4 | didn't follow it.  And -- because they deemed it |
| 09:27:05 | 5 | non-precedential.  And there's another case called *June* |
| 09:27:10 | 6 | *Medical Services v. Russo* which you might want to look |
| 09:27:14 | 7 | at.  That's another one. |
| 09:27:15 | 8 |          So there are these cases out there, and we need |
| 09:27:21 | 9 | to -- we need to look at it and I need to make a |
| 09:27:23 | 10 | decision.  I mean, I might ultimately decide that, under |
| 09:27:31 | 11 | the circumstance of this case, that Judge Willett's |
| 09:27:34 | 12 | opinion controls.  I might very well decide that, or I |
| 09:27:43 | 13 | may be convinced otherwise. |
| 09:27:44 | 14 |          But let's just say there are law professors and |
| 09:27:47 | 15 | other judges out there who feel that isn't the case.  And |
| 09:27:51 | 16 | I have not -- and I promise you this is true.  I have not |
| 09:27:54 | 17 | made a decision one way or the other.  I want to hear |
| 09:27:59 | 18 | from you.  I want to hear from the lawyers.  I want to |
| 09:28:01 | 19 | look at it much more carefully. |
| 09:28:05 | 20 |      THE COURT:  You want to introduce yourself, |
| 09:28:11 | 21 | because the record doesn't know who you are. |
| 09:28:11 | 22 |      MR. STONE:  Yes, Your Honor.  I'm |
| 09:28:12 | 23 | Johnathan Stone.  I just wanted to get a little follow-up |
| 09:28:15 | 24 | on that and get a little clarity.  Are you wanting us -- |
| 09:28:18 | 25 | are you going to enter a briefing schedule related to |

```
09:28:20   1  this issue of what is the law of the case, and do you
09:28:22   2  want us to get with the plaintiff's counsel in this case
09:28:25   3  and see if we're in agreement on what is the law of the
09:28:28   4  case going forward?  Or, if we disagree, do you want that
09:28:30   5  briefed as well?
09:28:31   6          THE COURT:  Yeah.  I think that would be --
09:28:32   7  that's one of the reasons we're here, is to try to figure
09:28:35   8  all this out.  I mean, the United States might agree with
09:28:38   9  you or they may disagree.  I mean, they're going to have
09:28:43  10  to look at it very carefully.  I mean, this is a tricky
09:28:47  11  one, and, ultimately, this may be a decision made by the
09:28:55  12  Supreme Court in this case.
09:28:55  13          But this case is not going to go to the Supreme
09:28:58  14  Court, I don't think, on this record.  I think it will go
09:29:01  15  after trial.  They've been a little bit hesitant to take
09:29:06  16  things up on partial records recently.  But I don't know.
09:29:09  17  You know a lot more.  You live in Washington.  I don't.
09:29:17  18  Although my cases seem to get there a lot.
09:29:20  19          I'm really happy, by the way, and this has
09:29:24  20  nothing to do with this case.
09:29:24  21      (Discussion off the record)
09:30:12  22          THE COURT:  All right.  What kind of a briefing
09:30:15  23  schedule, since we're going to allegedly go to trial --
09:30:20  24  by the way, 90 days would have been the day after the
09:30:24  25  election, but I moved it one more day past.  Because I
```

09:30:29  1  didn't want anybody, no matter what their view was, to be

09:30:32  2  so depressed or so happy that they couldn't focus,

09:30:37  3  depending upon what happens in the presidential election,

09:30:41  4  assuming we even know by then, right?  Sometimes you

09:30:48  5  don't.

09:30:48  6         I would certainly like to make a decision on

09:30:51  7  this prior to trial.  I don't think we want to go to

09:30:54  8  trial not knowing whether it's, as Judge -- the

09:31:00  9  majority -- the dissents plus Judge Richman feel that the

09:31:07 10  definition by Judge Willett was too narrow and that it's

09:31:14 11  you can use "across the river" or whether the majority,

09:31:21 12  which says you can't go "across the river."

09:31:23 13         I know what you do in a lake.  What do you do

09:31:26 14  with a lake?  You know, there's a lot of lakes that are

09:31:30 15  navigable waters in the United States.  What do you do

09:31:32 16  with a lake if you can't go across?  Let's say the lake

09:31:36 17  is long and you go across, what do you?  It's a problem.

09:31:47 18         Yes, ma'am?

09:31:47 19         MS. AL-FUHAID:  Your Honor, may I make a

09:31:48 20  suggestion?  The United States had requested a 60-day

09:31:51 21  stay of proceedings, and we agree with that request.

09:31:55 22  Would Your Honor be amenable to 60 days from now as

09:32:00 23  submitting briefing on this issue, and then that would

09:32:02 24  give them a chance to determine how they want --

09:32:05 25         THE COURT:  Yeah.  Hopefully by then we will

09:32:07  1  have heard on the mandamus petition as to whether we'll

09:32:09  2  have -- whether we have a jury or not doesn't matter on

09:32:13  3  this issue.

09:32:14  4         MS. AL-FUHAID:  If that is agreeable to them.

09:32:16  5         MR. LYNK:  Your Honor, I think a 60-day

09:32:18  6  interval to brief you on this question makes sense as

09:32:21  7  well.

09:32:21  8         THE COURT:  Yeah.  That's much longer than we

09:32:23  9  would normally do.  You know ...

09:32:29  10         MR. LYNK:  Your Honor, and the reason --

09:32:31  11         THE COURT:  Yeah.  No.  I'll tell you what.

09:32:33  12  I'm going to give you 45 days so I've 15 days to look at

09:32:37  13  it before we get to the 60-day point, okay?  Because I

09:32:40  14  really need to -- I need to do a lot of work on this

09:32:44  15  myself.

09:32:44  16         MS. AL-FUHAID:  And would this be simultaneous

09:32:46  17  briefing, Your Honor?

09:32:47  18         THE COURT:  Yes.  We know what the issue is.

09:32:49  19  We're not going to go back and forth like a ping-pong

09:32:52  20  tournament.

09:32:53  21         MR. LYNK:  Understood, Your Honor.

09:32:55  22         THE COURT:  Friday, September 20th.

09:32:58  23         MR. LYNK:  Do you -- are you proposing a page

09:32:59  24  limit for each side's brief on this?

09:33:02  25         THE COURT:  Generally, 35 pages.

| | | |
|---|---|---|
| 09:33:05 | 1 | MS. AL-FUHAID:  Thank you, Your Honor. |
| 09:33:06 | 2 | THE COURT:  That should be enough. |
| 09:33:16 | 3 | MR. LYNK:  And, just to be clear, you just want |
| 09:33:17 | 4 | a single filing from each side? |
| 09:33:19 | 5 | THE COURT:  Yes. |
| 09:33:19 | 6 | MR. LYNK:  Should we reply to each other? |
| 09:33:20 | 7 | THE COURT:  No. |
| 09:33:22 | 8 | MR. LYNK:  Okay.  Thank you.  No. |
| 09:33:23 | 9 | THE COURT:  No.  No.  Say everything you need |
| 09:33:25 | 10 | to say right then and there.  Yeah.  She was just asking |
| 09:33:52 | 11 | me about the pretrial deadlines and so forth, which |
| 09:33:54 | 12 | obviously have to be continued.  So you'll get that in |
| 09:33:57 | 13 | the order. |
| 09:33:58 | 14 | MS. AL-FUHAID:  Thank you, Your Honor. |
| 09:33:59 | 15 | THE COURT:  All right.  Anything else? |
| 09:34:07 | 16 | MR. LYNK:  Nothing that the United States can |
| 09:34:12 | 17 | think of, Your Honor. |
| 09:34:13 | 18 | MS. AL-FUHAID:  Nothing from Texas at the |
| 09:34:14 | 19 | moment, Your Honor.  Thank you. |
| 09:34:15 | 20 | THE COURT:  Let me again make myself very |
| 09:34:18 | 21 | clear, because for some reason I've been misquoted and |
| 09:34:25 | 22 | people have jumped to conclusions.  I have not reached |
| 09:34:29 | 23 | any decision as to what or even if there is an issue with |
| 09:34:34 | 24 | respect to Judge Willett's majority opinion.  I'm not |
| 09:34:40 | 25 | suggesting here that it isn't precedential, all right?  I |

| | | |
|---|---|---|
| 09:34:46 | 1 | don't know. |
| 09:34:46 | 2 | I'm saying that there have been voices who have |
| 09:34:51 | 3 | said that because of the split, and I don't know.  As I |
| 09:35:01 | 4 | look at it, I think that it's something that we need to |
| 09:35:04 | 5 | work out and I need to make a ruling on.  And then that |
| 09:35:10 | 6 | becomes an appealable ruling one way or the other. |
| 09:35:16 | 7 | Unless the parties fully agree, and I may not even agree |
| 09:35:17 | 8 | with the parties. |
| 09:35:27 | 9 | I will tell you that the -- I had a bankruptcy |
| 09:35:30 | 10 | appeal that went to the Supreme Court where I disagreed |
| 09:35:32 | 11 | with the parties, and the -- and the Fifth Circuit agreed |
| 09:35:35 | 12 | with the parties and the Fifth Circuit was reversed |
| 09:35:38 | 13 | nine-zero.  So I'm glad I didn't agree with the parties. |
| 09:35:42 | 14 | So I think we need to be very careful here.  I |
| 09:35:50 | 15 | am not taking a position on this at this time.  I'm just |
| 09:35:55 | 16 | saying that I needed to raise it because it's there. |
| 09:36:04 | 17 | And, I mean, the one -- the one opinion we don't need to |
| 09:36:10 | 18 | worry about is Judge Ho's, because he was off by himself |
| 09:36:13 | 19 | and nobody followed anything he did.  And I'm not saying |
| 09:36:18 | 20 | that in a derogatory way, but it just -- he didn't |
| 09:36:22 | 21 | address this issue at all.  So we have to look at the |
| 09:36:27 | 22 | other -- we have to look at the other opinions. |
| 09:36:32 | 23 | Yes, sir? |
| 09:36:32 | 24 | MR. LYNK:  Your Honor, I did having something. |
| 09:36:35 | 25 | I think you mentioned you'll be issuing an order that |

| | | |
|---|---|---|
| 09:36:37 | 1 | makes clear the pretrial deadlines are continued. |
| 09:36:39 | 2 | THE COURT:  Right. |
| 09:36:40 | 3 | MR. LYNK:  There was some filings yesterday. |
| 09:36:42 | 4 | Can we assume that, for the moment, those matters are |
| 09:36:45 | 5 | stayed? |
| 09:36:45 | 6 | THE COURT:  I haven't seen those filings.  I |
| 09:36:47 | 7 | just got here. |
| 09:36:48 | 8 | MR. LYNK:  Okay. |
| 09:36:49 | 9 | THE COURT:  What are those filings? |
| 09:36:51 | 10 | MS. AL-FUHAID:  There was a motion related -- |
| 09:36:52 | 11 | THE COURT:  You didn't send me another filing |
| 09:36:54 | 12 | giving me 48 hours, did you, or 24 hours or 10 hours? |
| 09:36:58 | 13 | MS. AL-FUHAID:  No, Your Honor. |
| 09:36:59 | 14 | THE COURT:  I'm wasting my time sitting here. |
| 09:37:01 | 15 | MS. AL-FUHAID:  No, Your Honor.  Texas had some |
| 09:37:05 | 16 | lingering pretrial motions that it intended to file, and |
| 09:37:09 | 17 | we filed them yesterday.  We were unsure as to whether |
| 09:37:13 | 18 | this conference -- |
| 09:37:13 | 19 | THE COURT:  What are those motions?  Can you |
| 09:37:15 | 20 | give me -- |
| 09:37:16 | 21 | MS. AL-FUHAID:  There's a motion to preclude |
| 09:37:18 | 22 | one of the US's experts being presented in their case in |
| 09:37:22 | 23 | chief as opposed to a rebuttal expert.  And was there ... |
| 09:37:28 | 24 | MR. BRYANT:  Your Honor, the others are our |
| 09:37:29 | 25 | response to motions in limine filed by -- |

| | | |
|---|---|---|
| 09:37:31 | 1 | THE COURT:  Oh.  The motions in limine ones I'm |
| 09:37:33 | 2 | not so worried about.  I'm going to -- I think it's been |
| 09:37:41 | 3 | referred to the magistrate.  It automatically gets |
| 09:37:44 | 4 | referred. |
| 09:37:45 | 5 | MS. AL-FUHAID:  Oh, okay.  Thank you, |
| 09:37:47 | 6 | Your Honor. |
| 09:37:48 | 7 | THE COURT:  And then the magistrate will make |
| 09:37:51 | 8 | a -- Judge Howell will make a preliminary ruling on it, |
| 09:37:54 | 9 | and then it can be appealed to me.  As long it doesn't |
| 09:38:00 | 10 | have to do with the merits. |
| 09:38:02 | 11 | MS. AL-FUHAID:  Well, Your Honor, what we were |
| 09:38:03 | 12 | unsure about, the reason we wanted to get those pretrial |
| 09:38:06 | 13 | filings, we were unsure as to whether Your Honor was |
| 09:38:08 | 14 | going to grant the United States's request for a stay at |
| 09:38:11 | 15 | this conference. |
| 09:38:12 | 16 | THE COURT:  Oh, you mean -- |
| 09:38:13 | 17 | MS. AL-FUHAID:  We got those in before -- |
| 09:38:14 | 18 | THE COURT:  No, I don't want to -- I put the |
| 09:38:17 | 19 | trial date off.  I don't want to stay that.  I mean, |
| 09:38:22 | 20 | there's no reason I can't rule on an expert designation. |
| 09:38:32 | 21 | I don't see that as, in any way, shape, or form, having |
| 09:38:34 | 22 | any bearing. |
| 09:38:36 | 23 | I mean, look.  The truth of the matter is, if |
| 09:38:41 | 24 | the opinion had gone a different way, we'd be in trial |
| 09:38:44 | 25 | today, right? |

```
09:38:48  1           MR. LYNK:  Correct.  Your Honor, there were --
09:38:52  2   there was at least one ruling as to which we had been
09:38:56  3   preparing to file a notice of objections to the
09:38:59  4   magistrate judge ruling.
09:39:00  5           THE COURT:  Okay.
09:39:01  6           MR. LYNK:  Is that something that we should
09:39:02  7   proceed with on a normal schedule?
09:39:05  8           THE COURT:  Yes.  Yes.  Don't give me a
09:39:07  9   vacation.  I'm not entitled to it.
09:39:09 10           MR. LYNK:  Understood.  On August 2nd, on
09:39:12 11   Friday, obviously, there were a number of things that
09:39:14 12   originally were due and we understood those were
09:39:16 13   suspended as of late last week in the circumstances.  How
09:39:20 14   are you going to --
09:39:21 15           THE COURT:  What were those?
09:39:22 16           MR. LYNK:  Generally, the response to the July
09:39:24 17   26th pretrial filing: objections to witnesses, objections
09:39:27 18   to exhibits, things like that.
09:39:29 19           THE CLERK:  They didn't file those.  You had
09:39:31 20   said to wait until today.
09:39:32 21           THE COURT:  Oh, yes.  Okay.  Those I think
09:39:37 22   probably should wait.  And the reason for that is we're
09:39:40 23   still waiting to figure out whether we have a jury or we
09:39:42 24   don't have a jury.  And you may decide to go with certain
09:39:45 25   witnesses if you have a jury.  I may even allow, because
```

| | | |
|---|---|---|
| 09:39:53 | 1 | if -- if it stays the way it is, if the Fifth Circuit |
| 09:39:58 | 2 | rules that there is no jury in this case, because it's |
| 09:40:02 | 3 | equitable, then I won't reopen. |
| 09:40:09 | 4 | But if we -- if they change the landscape and |
| 09:40:14 | 5 | say, well, you're going to have a jury now out of the |
| 09:40:18 | 6 | blue, then I may allow the parties to add additional |
| 09:40:24 | 7 | witnesses.  And that may impact our trial date.  So we'll |
| 09:40:26 | 8 | have to see where we are, okay? |
| 09:40:28 | 9 | MR. LYNK:  And then, Your Honor, one other |
| 09:40:30 | 10 | motion I would bring to your attention, there was a |
| 09:40:33 | 11 | motion filed by Texas earlier to preclude some of the |
| 09:40:36 | 12 | injunctive relief that is sought in the case. |
| 09:40:38 | 13 | Now, that is a motion that we were preparing to |
| 09:40:41 | 14 | include our response to it in Friday's submissions, and |
| 09:40:45 | 15 | then obviously we didn't make submissions on Friday under |
| 09:40:48 | 16 | the circumstances. |
| 09:40:48 | 17 | THE COURT:  Right. |
| 09:40:49 | 18 | MR. LYNK:  How should we handle now the timing |
| 09:40:52 | 19 | of our opposition to that? |
| 09:40:54 | 20 | THE COURT:  I don't remember that motion. |
| 09:40:56 | 21 | MR. LYNK:  This is a motion -- |
| 09:40:58 | 22 | THE CLERK:  It's an opposed motion to exclude |
| 09:41:01 | 23 | relief requested by the plaintiff, filed by the State of |
| 09:41:03 | 24 | Texas on July 3rd. |
| 09:41:06 | 25 | MR. LYNK:  So this is a motion that argues that |

| | | |
|---|---|---|
| 09:41:08 | 1 | a number of the injunctive relief requests in our |
| 09:41:11 | 2 | complaint are not, in Texas's view, proper under the |
| 09:41:14 | 3 | statute.  So they seek to exclude those. |
| 09:41:15 | 4 | THE COURT:  Oh, okay.  All right.  I'm familiar |
| 09:41:17 | 5 | with that. |
| 09:41:18 | 6 | MR. LYNK:  So that one I just wanted to clarify |
| 09:41:19 | 7 | when we would need to make our -- our opposition to that |
| 09:41:23 | 8 | and submit that on file. |
| 09:41:24 | 9 | THE COURT:  Are you ready to file it? |
| 09:41:26 | 10 | MR. LYNK:  This afternoon, no, but certainly by |
| 09:41:29 | 11 | the end of the week or sooner, if needed. |
| 09:41:31 | 12 | THE COURT:  File it. |
| 09:41:32 | 13 | MR. LYNK:  Okay. |
| 09:41:32 | 14 | THE COURT:  By the end of the week -- next |
| 09:41:34 | 15 | week.  File it by Monday. |
| 09:41:37 | 16 | MR. LYNK:  Thank you, Your Honor. |
| 09:41:38 | 17 | THE COURT:  And then you can reply, okay? |
| 09:41:42 | 18 | MS. AL-FUHAID:  Is there a particular date by |
| 09:41:44 | 19 | which you would want our reply or just in accordance with |
| 09:41:47 | 20 | the rule? |
| 09:41:47 | 21 | THE COURT:  The normal course of events. |
| 09:41:50 | 22 | MS. AL-FUHAID:  Okay.  Thank you. |
| 09:41:52 | 23 | MR. BRYANT:  Your Honor, David Bryant. |
| 09:41:54 | 24 | THE COURT:  I was waiting, because now we |
| 09:41:56 | 25 | have -- no.  You haven't said anything officially. |

| | | |
|---|---|---|
| 09:42:00 | 1 | you're just giving him the information.  But we have |
| 09:42:03 | 2 | three, at least.  You need to say something.  You need to |
| 09:42:06 | 3 | earn your money.  Yes? |
| 09:42:08 | 4 | MR. BRYANT:  Your Honor, the defendants would |
| 09:42:11 | 5 | suggest that it may be appropriate to wait on resolving |
| 09:42:21 | 6 | some of these motions.  I have no problem with going |
| 09:42:23 | 7 | ahead and briefing them, but wait on resolving them until |
| 09:42:26 | 8 | we know whether, among other things, the United States is |
| 09:42:29 | 9 | going to continue with the case, whether they're |
| 09:42:32 | 10 | appealing, until we get closer to trial and we know -- |
| 09:42:35 | 11 | THE COURT:  I mean, if the United States ends |
| 09:42:37 | 12 | up taking the position -- I've never -- I personally have |
| 09:42:41 | 13 | never seen it -- had it happen in any case I've been |
| 09:42:45 | 14 | involved in, but I have seen it happen in other cases |
| 09:42:47 | 15 | where some of my colleagues had -- and not involving the |
| 09:42:51 | 16 | United States, by the way.  It was involving other |
| 09:42:54 | 17 | parties.  But they got a negative ruling out of the -- |
| 09:42:58 | 18 | interim ruling out of the Ninth Circuit, and they decided |
| 09:43:03 | 19 | they were going to allow the judge to just enter judgment |
| 09:43:08 | 20 | against them, because they could not effectively |
| 09:43:11 | 21 | prosecute their defense, and then immediately appealed on |
| 09:43:18 | 22 | the legal issues that had been decided. |
| 09:43:21 | 23 | Now, if the United States takes that position, |
| 09:43:25 | 24 | obviously, they would have to come to the conclusion that |
| 09:43:28 | 25 | Judge Willett's decision was not precedential and argue |

| | | |
|---|---|---|
| 09:43:32 | 1 | that to me.  And I would then have to make the ruling |
| 09:43:35 | 2 | that they were right, which I may not. |
| 09:43:41 | 3 | MR. BRYANT:  So, Your Honor, the defendants |
| 09:43:42 | 4 | would suggest that, although we can go ahead and brief |
| 09:43:44 | 5 | everything, that the Court wait until after the 60-day |
| 09:43:47 | 6 | period to make the Court's rulings, which the Court may |
| 09:43:50 | 7 | wish to do anyway. |
| 09:43:51 | 8 | THE COURT:  Yeah. |
| 09:43:52 | 9 | MR. BRYANT:  So that we can have a better |
| 09:43:54 | 10 | picture as to what the procedural posture of the case |
| 09:43:57 | 11 | will be going into a trial or otherwise, maybe on appeal |
| 09:44:03 | 12 | rather -- |
| 09:44:04 | 13 | THE COURT:  Well, I'm not going to make that |
| 09:44:06 | 14 | decision today.  I'll look at the -- I'll look at the |
| 09:44:09 | 15 | filings, and then I'll decide whether it's appropriate to |
| 09:44:11 | 16 | wait or to make a ruling.  I don't like to have |
| 09:44:14 | 17 | unresolved motions hanging around.  That's a -- it's a |
| 09:44:21 | 18 | bad look, you know.  But I'll do what I can.  I |
| 09:44:29 | 19 | understand your concern, I do. |
| 09:44:34 | 20 | All right.  Anything else? |
| 09:44:40 | 21 | MR. LYNK:  Nothing else from the government, |
| 09:44:41 | 22 | Your Honor.  Thank you. |
| 09:44:45 | 23 | MR. WALTERS:  Your Honor?  Ryan Walters. |
| 09:44:46 | 24 | THE COURT:  Okay.  There you go. |
| 09:44:46 | 25 | MR. WALTERS:  I'm taking your advice, |

| | | |
|---|---|---|
| 09:44:48 | 1 | Your Honor. |
| 09:44:52 | 2 | THE COURT:  Thank you. |
| 09:44:52 | 3 | MR. WALTERS:  We would just suggest that if the |
| 09:44:54 | 4 | Court is considering reopening discovery -- so we don't |
| 09:44:57 | 5 | know that yet, whether the Department of Justice wants |
| 09:44:59 | 6 | that -- when the Fifth Circuit rules on our right to a |
| 09:45:06 | 7 | jury trial -- |
| 09:45:07 | 8 | THE COURT:  I can assure you that that will not |
| 09:45:09 | 9 | happen if they deny the request for a jury trial, only |
| 09:45:15 | 10 | because then that -- that means that the tenor of the |
| 09:45:18 | 11 | case has been the same since its inception. |
| 09:45:22 | 12 | MR. WALTERS:  Right.  What we're saying -- |
| 09:45:22 | 13 | THE COURT:  But if they -- if they say the |
| 09:45:25 | 14 | State gets a jury trial or gets a partial jury trial on |
| 09:45:30 | 15 | some issues and not on others, then I would consider it. |
| 09:45:34 | 16 | I'm not saying I would grant it, but I would certainly |
| 09:45:37 | 17 | consider it. |
| 09:45:39 | 18 | MR. WALTERS:  But, Your Honor, I guess our |
| 09:45:40 | 19 | position is that, if the Fifth Circuit were to find that |
| 09:45:43 | 20 | we are entitled to a jury trial, the court would have to |
| 09:45:46 | 21 | resolve these motions again because the standard would be |
| 09:45:51 | 22 | different.  So we would suggest not wasting the Court's |
| 09:45:54 | 23 | time in resolving these motions before we get a ruling |
| 09:45:57 | 24 | from the Fifth Circuit on -- |
| 09:45:58 | 25 | THE COURT:  I don't know that the legal |

09:45:59  1  standard would be different.

09:46:01  2          MR. WALTERS:  Well, the standard for

09:46:03  3  considering, like, experts, whether they're going to be

09:46:06  4  excluded or not, would be different.

09:46:07  5          THE COURT:  Oh, I see what you're saying, in a

09:46:10  6  practical sense.  Yeah.  I would agree with you there.  I

09:46:13  7  think that's right.  I told you I will take a look at it.

09:46:15  8  I haven't made up my mind on that yet.  I'll take a very

09:46:18  9  good look at it, okay.

09:46:20  10         MR. WALTERS:  Thank you, Your Honor.

09:46:21  11         THE COURT:  I mean, you're the folks that filed

09:46:23  12  the motion to exclude them.

09:46:27  13         MR. WALTERS:  Your Honor, if -- if we -- if we

09:46:31  14  could stay all proceedings, then we would withdraw the

09:46:34  15  pending motions.

09:46:35  16         THE COURT:  Well, I'm not going to stay

09:46:36  17  everything.  There are other things that are going on

09:46:39  18  here we just talked about, but I certainly would stay

09:46:42  19  that.  I mean, I wouldn't have to stay it.  All I'd have

09:46:45  20  to do is tell you that I would give you leave to refile,

09:46:50  21  okay?  I will -- if you withdraw it, you will get leave

09:46:54  22  to refile.  And that means that you're safe.  You're not

09:46:58  23  going to be time-barred.

09:47:04  24         MR. SULLIVAN:  Your Honor, you know, this being

09:47:05  25  I think the second-largest geographic district in the

```
09:47:08  1  federal judiciary after the District of Alaska, as busy
09:47:10  2  as you are, as busy as Judge Howell is, we would suggest
09:47:13  3  that instead of looking at something twice, that could
09:47:15  4  just be looked at once.
09:47:16  5            THE COURT:  I agree with you.
09:47:19  6            MR. SULLIVAN:  And so whatever kind of stay
09:47:21  7  comes in Your Honor's order, again, we would respectfully
09:47:25  8  suggest that if it has to do with discovery, so the
09:47:27  9  motions in limine, the expert motions, because all of
09:47:29  10 that could be overtaken by events in a practical sense,
09:47:33  11 if not in a legal standard sense, we would respectfully
09:47:36  12 request clarity so that the parties can pull down any of
09:47:40  13 those kind of discovery motions and fights so that
09:47:41  14 they're not pending on your sheet with Chief Judge Moses
09:47:46  15 or anything like that.
09:47:47  16           THE COURT:  Chief Judge Moses is very happy
09:47:49  17 with me at the moment.  She's in the same boat I am.
09:47:52  18 Remember, she had the barbed wire case.
09:47:56  19           MR. SULLIVAN:  I remember it well, sir.  We've
09:47:58  20 had lovely times in Del Rio together as well with our --
09:48:00  21           THE COURT:  Yeah.  I used to sit in Del Rio.  I
09:48:03  22 sat in Del Rio for the first few years I was here.  I was
09:48:06  23 on the wheel down there, so I was down there every week.
09:48:09  24           MR. SULLIVAN:  Appreciate your service for that
09:48:10  25 sir.  So with clarification about discovery along those
```

09:48:13  1  lines, we can take things off of your, you know, 90-day

09:48:15  2  sheet or whatever it's called here and not do twice what

09:48:19  3  we can do once, if things are overtaken by events.

09:48:24  4          MR. LYNK:  From our point of view, I guess I'm

09:48:27  5  not sure if there really is a further issue to resolve.

09:48:32  6  I think your prior comments suggested that there are some

09:48:35  7  things you want to deal with and some things that should

09:48:37  8  wait.  And, generally, those seemed to make sense.

09:48:40  9          We can certainly respond, for example, to the

09:48:43  10 motion seeking to strike forms of injunctive relief by

09:48:47  11 Monday, as you've directed.  And that doesn't seem to

09:48:51  12 be --

09:48:52  13         THE COURT:  Are you concerned about that one?

09:48:55  14         MR. SULLIVAN:  No concern there.  It's well

09:48:57  15 said by my friend, Mr. Lynk.  I suppose that the whole

09:49:00  16 point is we're all obviously going to do whatever the

09:49:03  17 Court, whatever you tell us to do.  And so if your order

09:49:07  18 gives us clear marching orders, then we'll run up

09:49:10  19 whatever hills you want us to.

09:49:13  20         THE COURT:  Well, let's do this:  I think we

09:49:15  21 all agree that -- I think Mr. Lynk is right, and I

09:49:19  22 already said I would rule on that motion.  That's purely

09:49:22  23 a legal issue.  But I'll stay everything else.

09:49:29  24         MR. SULLIVAN:  Thank you, sir.

09:49:30  25         THE COURT:  And you're going to withdraw that,

| | | |
|---|---|---|
| 09:49:32 | 1 | then, without prejudice. |
| 09:49:34 | 2 | MR. WALTERS:  Thank you, Your Honor. |
| 09:49:35 | 3 | THE COURT:  Okay.  So he's going to withdraw |
| 09:49:36 | 4 | without prejudice.  You don't have to worry about it. |
| 09:49:39 | 5 | But leave the one we talked about. |
| 09:49:41 | 6 | MR. LYNK:  So the motion to exclude our witness |
| 09:49:42 | 7 | for now is withdrawn without prejudice. |
| 09:49:45 | 8 | THE COURT:  Yes.  That's right. |
| 09:49:48 | 9 | MR. SULLIVAN:  Thank you, sir. |
| 09:49:48 | 10 | THE COURT:  Without prejudice so that he can |
| 09:49:50 | 11 | refile it.  I don't want anybody to think they're being, |
| 09:49:53 | 12 | you know, hampered from refiling. |
| 09:49:56 | 13 | MR. SULLIVAN:  Thank you, sir.  Sorry for the |
| 09:49:59 | 14 | interruption. |
| 09:50:00 | 15 | THE COURT:  No.  Look.  We need all the help we |
| 09:50:03 | 16 | can get around here.  So, as usual, my very smart |
| 09:50:31 | 17 | courtroom deputy has a solution.  What I'm going to do, |
| 09:50:38 | 18 | all the motions in limine that are on the record now I'm |
| 09:50:40 | 19 | going to deny as moot subject to refiling, and you can |
| 09:50:47 | 20 | then make a decision whether you want to refile those at |
| 09:50:50 | 21 | the appropriate time.  We're going to give you deadlines |
| 09:50:53 | 22 | for those. |
| 09:50:54 | 23 | So the only thing that will be left on the |
| 09:50:56 | 24 | docket that I need to worry about is the -- is that one |
| 09:51:01 | 25 | motion we're talking about that he's going to be filing |

09:51:04   1   on Monday.

09:51:06   2         THE CLERK:  No.  The motion to exclude, he's

09:51:07   3   going to file a response.

09:51:08   4         THE COURT:  Yeah.  The motion to exclude, he's

09:51:11   5   going to file a response.

09:51:15   6         MR. STONE:  And, your Honor, there was one more

09:51:17   7   thing mentioned by our friends at the USA.  They

09:51:20   8   mentioned filing objections to Magistrate Howell's prior

09:51:25   9   ruling.  Is that also going to be stayed, or are they

09:51:26  10   going to proceed forward with that?

09:51:28  11         MR. LYNK:  This was specifically -- we had a

09:51:31  12   motion to compel production of an email and a document

09:51:36  13   that were sent to a number of the expert witnesses,

09:51:41  14   Texas's.  And Judge Howell reviewed the document and the

09:51:43  15   email in-camera, and then he ordered production of a --

09:51:47  16   of redacted versions of those.

09:51:49  17         THE COURT:  And you want --

09:51:50  18         MR. LYNK:  Our objection is to the redaction.

09:51:52  19   And so we were preparing to file a notice of objection as

09:51:56  20   that to see the whole document.

09:51:57  21         THE COURT:  Don't do that.  Just hold it.  You

09:51:59  22   can file it later.

09:52:01  23         MR. LYNK:  Okay.

09:52:01  24         THE COURT:  You'll have time to file that

09:52:04  25   later.

| | | |
|---|---|---|
| 09:52:05 | 1 | MR. LYNK:  Thank you. |
| 09:52:06 | 2 | THE COURT:  We have to be flexible here.  We've |
| 09:52:08 | 3 | got a very -- this -- look.  This is a very unusual case, |
| 09:52:15 | 4 | to say the least.  I mean, it's about a buoy floating |
| 09:52:21 | 5 | around in the Rio Grande River, after all, all by itself, |
| 09:52:27 | 6 | just bobbing around there. |
| 09:52:31 | 7 | I saw a picture the other day where two people |
| 09:52:34 | 8 | attempting to swim across the Rio Grande.  I don't know |
| 09:52:39 | 9 | what they were doing, but they were resting on the buoy. |
| 09:52:42 | 10 | They were using the buoy as a rest.  So I don't know. |
| 09:52:46 | 11 | They either go around it or you rest on it, or I don't |
| 09:52:49 | 12 | know what they're doing with the buoy.  But there it is, |
| 09:52:52 | 13 | and it's there.  And it's been there. |
| 09:52:56 | 14 | And the one thing I would disagree with my good |
| 09:53:03 | 15 | friend Judge Willett about, he made -- he always makes a |
| 09:53:07 | 16 | big deal of the fact that I didn't order the buoy removed |
| 09:53:11 | 17 | from the ocean -- ocean.  This is what happens when you |
| 09:53:15 | 18 | decide dozens and dozens of cases involving the Pacific |
| 09:53:20 | 19 | Ocean because I came from Hawaii -- the river.  We do |
| 09:53:27 | 20 | have an ocean pretty close. |
| 09:53:32 | 21 | The reason I did not order -- and I've said |
| 09:53:36 | 22 | this in writing, and I'll say it again.  The reason I did |
| 09:53:39 | 23 | not order the buoy to be removed from the river, it was |
| 09:53:45 | 24 | put up against the bank so it would not be -- if my order |
| 09:53:49 | 25 | was followed, it would have been moved against the bank. |

09:53:54  1  It would not have been a hazard to navigation because it

09:53:58  2  would have been right up against the bank, number one.

09:54:01  3       Number two, it would have saved the taxpayers

09:54:05  4  of the State of Texas tens of thousands of dollars if,

09:54:10  5  for instance, I had ordered it removed, it had been

09:54:13  6  removed, and then ordered placed back in the water, what

09:54:21  7  a waste of money.  What an absolute waste of money.

09:54:28  8       And I was proven correct because I made my

09:54:33  9  ruling, that ruling was affirmed, originally, by a

09:54:37  10  three-judge panel.  In the meantime, that thing could

09:54:39  11  have been removed.  Then the *en banc* order comes along

09:54:44  12  and orders it, it would have to go back.  What a waste of

09:54:49  13  money.

09:54:51  14       So I'm sorry, Judge Willett.  That's the

09:54:55  15  reason.  And I -- I did not want the taxpayers of the

09:55:00  16  State of Texas or the Governor's Office, because he's got

09:55:06  17  other things to spend his money on, to have to spend the

09:55:10  18  money to put it back, you know, in the water if I had

09:55:15  19  ordered it taken out.

09:55:16  20       Plus -- and this is from a kid who worked his

09:55:20  21  way up going through school doing construction -- putting

09:55:26  22  those things in and out of the water -- and I've seen it

09:55:29  23  many times; we have it in Hawaii all the time -- is a

09:55:33  24  dangerous proposition.  And especially where those

09:55:39  25  concrete things have been laid down, to pull those out,

```
09:55:43   1    they get sunken in the mud.  To pull those out, you get a
09:55:50   2    snapped chain or you get -- a machine doesn't work or
09:55:52   3    somebody falls in the water between the buoy and the
09:55:55   4    pillar under the water, they could be drowned or killed.
09:56:01   5    It's a hazard.
09:56:03   6          I didn't want that to happen more often than
09:56:07   7    necessary, period.  Not because I didn't have faith in my
09:56:14   8    ruling or some such thing.  It had nothing to do with it.
09:56:19   9    It had to do with money.  I knew this thing would go on
09:56:22  10    appeal.  I knew the State would -- I mean, this is the
09:56:26  11    Fifth Circuit.  I knew the State had a chance of
09:56:30  12    prevailing.  It's -- it was a close call to begin with.
09:56:35  13          And I just didn't want the expense, and I
09:56:39  14    didn't want the danger to those workers of having to go
09:56:43  15    back out there and move it and then remove it and then
09:56:46  16    put it back.  It just didn't make sense to me.  And that
09:56:51  17    was the reason I did what I did.
09:56:53  18          It had nothing to do -- and I -- to be honest
09:56:58  19    with you, I wouldn't think, knowing Governor Abbott, he
09:57:08  20    would have been unhappy about that.  I mean, he wouldn't
09:57:13  21    say, jeez, I wish the judge had ordered it removed from
09:57:16  22    the water.  That just would not -- you know, I think he
09:57:25  23    is a very smart man.  He was a good lawyer.  He was a
09:57:29  24    Supreme Court Justice.  I'm sure that he understood what
09:57:32  25    I was doing.  And I said it at the time.
```

| | | |
|---|---|---|
| 09:57:37 | 1 | So I don't know -- understand why my friend |
| 09:57:40 | 2 | Judge Willett, who I have the greatest regard for -- he's |
| 09:57:44 | 3 | a very fine jurist, and he's a nice man -- keeps thinking |
| 09:57:48 | 4 | that I did it because I wanted to -- I didn't have faith |
| 09:57:53 | 5 | in my order.  Why did I not just order it removed?  Well, |
| 09:57:57 | 6 | there's the reason: safety and money.  Safety first and |
| 09:58:02 | 7 | money second. |
| 09:58:05 | 8 | Okay.  Anything else? |
| 09:58:09 | 9 | MR. LYNK:  No, Your Honor. |
| 09:58:10 | 10 | MS. AL-FUHAID:  No, Your Honor.  Thank you. |
| 09:58:12 | 11 | THE COURT:  Okay.  And, by the way, has there |
| 09:58:14 | 12 | been an appeal by the United States of my ruling against |
| 09:58:18 | 13 | you on the treaty issue? |
| 09:58:22 | 14 | MR. LYNK:  No, there has not been an appeal |
| 09:58:25 | 15 | taken from that ruling. |
| 09:58:26 | 16 | THE COURT:  But that -- you have -- you don't |
| 09:58:28 | 17 | have to file it now. |
| 09:58:30 | 18 | MR. LYNK:  Right. |
| 09:58:31 | 19 | THE COURT:  You can -- |
| 09:58:32 | 20 | MR. LYNK:  No interlocutory appeal was taken, |
| 09:58:35 | 21 | correct. |
| 09:58:35 | 22 | THE COURT:  I suspect, ultimately, we will have |
| 09:58:37 | 23 | cross-appeals, so I'm in double jeopardy here.  He stands |
| 09:58:51 | 24 | by my every day right there.  No.  I'm pointing to my |
| 09:58:54 | 25 | alabaster eagle.  He's always faithful.  He doesn't move. |

09:58:57   1   He's right there.

09:58:57   2           Thank you all very much.  It's good to see you.

09:59:00   3           You can be excused.  Thank you.

09:59:00   4           MS. AL-FUHAID:  Thank you, Your Honor.

09:59:00   5       (End of transcript)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   **UNITED STATES DISTRICT COURT        )**

2   **WESTERN DISTRICT OF TEXAS           )**

3        I, Arlinda Rodriguez, Official Court Reporter, United

4   States District Court, Western District of Texas, do certify

5   that the foregoing is a correct transcript from the record of

6   proceedings in the above-entitled matter.

7        I certify that the transcript fees and format comply with

8   those prescribed by the Court and Judicial Conference of the

9   United States.

10       WITNESS MY OFFICIAL HAND this the 6th day of August 2024.

11

12                              /S/ Arlinda Rodriguez
                                Arlinda Rodriguez, Texas CSR 7753
13                              Expiration Date:  10/31/2025
                                Official Court Reporter
14                              United States District Court
                                Austin Division
15                              501 West 5th Street, Suite 4152
                                Austin, Texas 78701
16                              (512) 391-8791

17

18

19

20

21

22

23

24

25

ATTACHMENT 2:
ORDER SETTING FURTHER STATUS CONFERENCE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| United States of America., | § | |
|     Plaintiff, | § | |
| vs. | § | NO:  AU:23-CV-00853-DAE |
| | § | |
| Greg Abbott, et al. | § | |
|     Defendants. | § | |

## ORDER SETTING FURTHER STATUS CONFERENCE

It is clear to this Court that the State of Texas misunderstands the substance of the status conference held on August 6, 2024 in this matter. To avoid any misunderstanding going forward, it is hereby ORDERED that the above entitled and numbered case is set for a continued **in person** STATUS CONFERENCE before Senior U.S. District Judge David Alan Ezra in Courtroom 2, on the Fourth Floor of the United States Courthouse, 501 West Fifth Street, Austin, TX, on **Wednesday, August 07, 2024 at 10:00 AM**. It is requested that Lanora C. Pettit, Principle Deputy Solicitor General be present at the scheduled conference.

In the event that lead counsel for the United States have returned to Washington DC, it is acceptable that a local representative from the United States Attorneys Office be present.

    IT IS SO ORDERED.

    DATED: Austin,  Texas August 06, 2024.

_____

DAVID ALAN EZRA
SENIOR U.S. DISTRICT JUDGE

ATTACHMENT 3:
TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE DAVID A. EZRA
AUGUST 7, 2024

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | AU:23-CV-00853-DAE |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | AUSTIN, TEXAS |
| | ) | |
| GREG ABBOTT, ET AL., | ) | |
| | ) | |
|    Defendants. | ) | AUGUST 7, 2024 |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE DAVID A. EZRA
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FOR THE PLAINTIFF:    BRIAN H. LYNK
                      ANGELINE PURDY
                      U.S. DEPARTMENT OF JUSTICE
                      ENVIRONMENTAL DEFENSE SECTION
                      P.O. BOX 23986
                      WASHINGTON, D.C. 20026-3986

                      ANDREW D. KNUDSEN
                      BRYAN JAMES HARRISON
                      KIMERE J. KIMBALL
                      U.S. DEPARTMENT OF JUSTICE
                      ENVIRONMENT & NATURAL RESOURCES
                      P.O. BOX 7611
                      WASHINGTON, D.C. 20044

                      LANDON ALLEN WADE
                      UNITED STATES ATTORNEY'S OFFICE
                      903 SAN JACINTO BOULEVARD, SUITE 334
                      AUSTIN, TEXAS 78701

                      MARY F. KRUGER
                      UNITED STATES ATTORNEYS OFFICE
                      CHIEF, CIVIL DIVISION
                      601 NW LOOP 410, SUITE 600
                      SAN ANTONIO, TEXAS 78216

```
1   FOR THE DEFENDANTS:   MUNERA AL-FUHAID
                          JOHNATHAN STONE
2                         ZACHARY BERG
                          KYLE STEPHEN TEBO
3                         OFFICE OF THE ATTORNEY GENERAL
                          PO BOX 12548
4                         AUSTIN, TX 78711-2548

5                         RYAN DANIEL WALTERS
                          OFFICE OF THE TEXAS ATTORNEY GENERAL
6                         SPECIAL LITIGATION DIVISION
                          209 WEST 14TH STREET, 7TH FLOOR
7                         AUSTIN, TEXAS 78701

8   APPEARING AT THE COURT'S REQUEST:
                          LANORA CHRISTINE PETTIT
9                         OFFICE OF THE TEXAS ATTORNEY GENERAL
                          OFFICE OF THE SOLICITOR GENERAL
10                        P.O. BOX 12548 (MC-059)
                          AUSTIN, TEXAS 78711-2548
11
    FOR MS. PETTIT:       JOSEPH N. MAZZARA
12                        OFFICE OF THE TEXAS ATTORNEY GENERAL
                          P.O. BOX 12548 (MC-059)
13                        AUSTIN, TX 78711-2548

14  COURT REPORTER:       ARLINDA RODRIGUEZ, CSR
                          501 WEST 5TH STREET, SUITE 4152
15                        AUSTIN, TEXAS 78701
                          (512) 391-8791
16

17

18

19

20

21

22

23

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.
```

| | | |
|---|---|---|
| 09:31:53 | 1 | (Open court) |
| 09:31:53 | 2 | THE CLERK:  AU:23-CV-853, *United States of* |
| 09:31:56 | 3 | *America v. Abbott, et al.* |
| 09:31:58 | 4 | THE COURT:  May we have appearances, please. |
| 09:32:02 | 5 | MR. WADE:  Good morning, Your Honor.  This is |
| 09:32:04 | 6 | Landon Wade with the U.S. Attorney's office for the |
| 09:32:06 | 7 | Western District of Texas on behalf of the United States. |
| 09:32:08 | 8 | THE COURT:  Okay.  And we do have the other |
| 09:32:10 | 9 | lawyers who are appearing by phone.  Can we have their |
| 09:32:13 | 10 | appearances. |
| 09:32:15 | 11 | MR. LYNK:  Good morning, Your Honor.  This is |
| 09:32:17 | 12 | Brian Lynk.  And I believe on the phone with me are |
| 09:32:25 | 13 | Andrew Knudsen, Kimere Kimball, Bryan Harrison, our |
| 09:32:27 | 14 | supervisor Angeline Purdy, and Mary Kruger, also from the |
| 09:32:31 | 15 | U.S. Attorney's office. |
| 09:32:33 | 16 | THE COURT:  Okay.  Thank you. |
| 09:32:34 | 17 | And can I have for the State of Texas. |
| 09:32:37 | 18 | MR. WALTERS:  Good morning, Your Honor. |
| 09:32:39 | 19 | THE COURT:  Good morning. |
| 09:32:39 | 20 | MR. WALTERS:  Ryan Walters for the defendants. |
| 09:32:43 | 21 | With me are my colleagues Johnathan Stone, Munera |
| 09:32:47 | 22 | Al-Fuhaid, Zach Berg, and Kyle Tebo. |
| 09:32:49 | 23 | THE COURT:  Okay.  All right.  And I had |
| 09:32:53 | 24 | invited, but had not ordered, Ms. Pettit to be here.  Is |
| 09:32:57 | 25 | she here today? |

09:33:01  1          MR. MAZZARA:  Yes, Your Honor.  She's here, and

09:33:01  2  I'm representing her.  I'm her counsel, Joseph Mazzara,

09:33:04  3  for the purposes of this hearing today.

09:33:06  4          THE COURT:  Mr. Mazzara, are your licensed here

09:33:08  5  in the Western District of Texas.

09:33:09  6          MR. MAZZARA:  No.  But the courtroom deputy

09:33:12  7  requested that I come before the bar to sit here, just to

09:33:15  8  make it easy with the microphone.

09:33:17  9          THE COURT:  No.  I don't have a problem.  You

09:33:19 10  can sit right up here.  I have no concern where you're

09:33:22 11  sitting.  I just wanted to know whether you were

09:33:25 12  licensed.  Now, if you're not licensed, technically, you

09:33:28 13  cannot argue.

09:33:31 14          MR. MAZZARA:  Right.  Yes, Your Honor.  I

09:33:33 15  understand that.  But given the short notice of the

09:33:34 16  hearing, putting in a *pro hac vice* application didn't

09:33:40 17  seem to be feasible.  But, again, I'm just here on a very

09:33:44 18  limited capacity.

09:33:45 19          THE COURT:  All right.  Well, I -- let me --

09:33:46 20  let me clear any concerns that Ms. Pettit might have.  If

09:33:51 21  I were here for the purpose of sanctioning Ms. Pettit,

09:34:00 22  the order would have said so.  It would have been an

09:34:03 23  order to show cause why she should not be sanctioned.

09:34:07 24          I am not sanctioning Ms. Pettit.  I am not mad

09:34:11 25  at Ms. Pettit.  I am not going to be criticizing

| | | |
|---|---|---|
| 09:34:17 | 1 | Ms. Pettit personally.  I am concerned about the filing |
| 09:34:21 | 2 | that was made, and I'm going to be questioning her about |
| 09:34:25 | 3 | that filing.  But I am not in any way, shape, or form |
| 09:34:31 | 4 | going to be doing anything to her that she would require |
| 09:34:38 | 5 | an attorney. |
| 09:34:40 | 6 | MR. MAZZARA:  Yes, Your Honor.  Except for the |
| 09:34:42 | 7 | fact that you're going to be questioning her.  She's an |
| 09:34:44 | 8 | attorney for the State, for sure, the second senior most |
| 09:34:47 | 9 | litigator, in fact, for the State of Texas. |
| 09:34:50 | 10 | THE COURT:  Well, I'm very pleased to have her |
| 09:34:51 | 11 | here. |
| 09:34:52 | 12 | MR. MAZZARA:  But he she's not made an |
| 09:34:54 | 13 | appearance in this case. |
| 09:34:55 | 14 | THE COURT:  Well, she did, actually.  She filed |
| 09:34:58 | 15 | this in this case. |
| 09:35:00 | 16 | MR. MAZZARA:  But -- |
| 09:35:00 | 17 | THE COURT:  Yes, sir? |
| 09:35:02 | 18 | MR. MAZZARA:  In the appellate court.  Yes, |
| 09:35:03 | 19 | sir. |
| 09:35:04 | 20 | THE COURT:  Yes.  It doesn't matter.  We are |
| 09:35:06 | 21 | one federal court, sir. |
| 09:35:08 | 22 | MR. MAZZARA:  I understand that, Your Honor. |
| 09:35:10 | 23 | There are two case numbers.  But, again, she -- |
| 09:35:12 | 24 | THE COURT:  Yeah.  Well, her filing was |
| 09:35:15 | 25 | rejected by the Court of Appeals.  Did you know that? |

| | | |
|---|---|---|
| 09:35:19 | 1 | MR. MAZZARA:  Your Honor, I'm representing |
| 09:35:21 | 2 | Ms. Pettit in this matter. |
| 09:35:22 | 3 | THE COURT:  Yes.  I'm just asking you:  Were |
| 09:35:24 | 4 | you aware of that? |
| 09:35:25 | 5 | MR. MAZZARA:  No, I was not.  When was it |
| 09:35:27 | 6 | rejected, Your Honor? |
| 09:35:28 | 7 | THE COURT:  It was rejected yesterday.  The |
| 09:35:29 | 8 | case was closed.  You didn't know that it was rejected? |
| 09:35:35 | 9 | Did the State know it was rejected? |
| 09:35:39 | 10 | MR. STONE:  Your Honor, it was unfilled, but we |
| 09:35:40 | 11 | believe that it was refiled last -- |
| 09:35:41 | 12 | MR. WALTERS:  It was refiled last night. |
| 09:35:43 | 13 | THE COURT:  Oh.  Did they refile it? |
| 09:35:44 | 14 | MR. WALTERS:  Yes, Your Honor. |
| 09:35:45 | 15 | THE COURT:  Okay.  Then I'm going to direct |
| 09:35:47 | 16 | that this transcript be filed, then. |
| 09:35:51 | 17 | MR. MAZZARA:  And I believe they circulated it |
| 09:35:52 | 18 | to the entire *en banc* court as well. |
| 09:35:54 | 19 | THE COURT:  Oh, okay.  Well, that was not -- I |
| 09:35:56 | 20 | was not made aware of that.  That's fine. |
| 09:35:59 | 21 | So I'd like Ms. Pettit to come forward. |
| 09:36:04 | 22 | MR. MAZZARA:  Yes, Your Honor.  Just a real |
| 09:36:06 | 23 | quick question before she does, just for the record. |
| 09:36:08 | 24 | What -- again, she's not an attorney in the case.  Are |
| 09:36:10 | 25 | you asking her to appear as a witness? |

| | | |
|---|---|---|
| 09:36:12 | 1 | THE COURT: I'm not asking her to appear as a |
| 09:36:14 | 2 | witness. She wrote a letter which addressed my comments |
| 09:36:17 | 3 | in this court, and I'm trying to find out the basis for |
| 09:36:22 | 4 | what she said, number one. |
| 09:36:24 | 5 | MR. MAZZARA: Yes, Your Honor. |
| 09:36:25 | 6 | THE COURT: Number -- |
| 09:36:25 | 7 | MR. MAZZARA: Sorry. |
| 09:36:26 | 8 | THE COURT: Just a minute, sir. Let the court |
| 09:36:28 | 9 | finish. I will give you plenty of opportunity. |
| 09:36:30 | 10 | Number one. I want to make sure that -- as I |
| 09:36:36 | 11 | thought when I left the bench yesterday, we were on even |
| 09:36:41 | 12 | keel here and knew where we were going with this case. |
| 09:36:43 | 13 | And then this thing comes flying in which raised some |
| 09:36:47 | 14 | concern to me. So I need to address it so that I am |
| 09:36:53 | 15 | absolutely sure that going forward we are on the same |
| 09:36:57 | 16 | path. And that has, sir, nothing to do with you. That |
| 09:37:02 | 17 | has to do with the gentlemen who represent the State of |
| 09:37:04 | 18 | Texas. |
| 09:37:05 | 19 | MR. WALTERS: Your Honor, in that light, we -- |
| 09:37:08 | 20 | I'm sure the Court understands that we -- no one here |
| 09:37:11 | 21 | will be able to talk about any of the internal |
| 09:37:14 | 22 | deliberations within the Attorney General's Office or |
| 09:37:17 | 23 | with our clients about the motivation or decisions to |
| 09:37:20 | 24 | file this letter to the Fifth Circuit. |
| 09:37:26 | 25 | THE COURT: I have no concern about that. I'm |

```
09:37:27   1   not asking anybody about internal deliberations in the
09:37:30   2   Attorney General's Office.  That is not my purpose here.
09:37:39   3              MR. MAZZARA:  So, Your Honor, again, just for
09:37:42   4   Ms. Pettit, I mean, any questions regarding the letter
09:37:45   5   would be -- would fall under any number of privileges.
09:37:48   6              THE COURT:  No, it doesn't.  It's publicly
09:37:50   7   filed.
09:37:50   8              MR. MAZZARA:  Not the letter.  It's not the
09:37:52   9   words, the text of the letter itself, but any mental
09:37:56  10   impressions she had or any thought she had that went
09:37:57  11   into --
09:37:58  12              THE COURT:  I have every right and obligation
09:38:00  13   to address the matters that are in the letter, so you may
09:38:04  14   be seated, sir.
09:38:07  15              Now, Ms. Pettit, you were -- this is your
09:38:10  16   letter?  You wrote the letter?
09:38:12  17              MS. PETTIT:  Yes, sir.
09:38:12  18              THE COURT:  But you weren't here yesterday?
09:38:14  19              MS. PETTIT:  No, Your Honor.  As I noted in the
09:38:15  20   letter, I was not present.
09:38:17  21              THE COURT:  Right.  Now, you filed this under
09:38:19  22   Rule 28(j).  You had this filed.  It says:  Pursuant to
09:38:27  23   Rule 28(j), counsel notified the Court of developments
09:38:31  24   during today's status conference in which the court may
09:38:34  25   wish to be aware before it issues its forthcoming
```

| | | |
|---|---|---|
| 09:38:38 | 1 | mandate. |
| 09:38:41 | 2 | MS. PETTIT:  Yes, Your Honor. |
| 09:38:41 | 3 | THE COURT:  That case is essentially closed, |
| 09:38:43 | 4 | but all right.  Let's talk about whether this is a Rule |
| 09:38:46 | 5 | 28(j) letter, all right? |
| 09:38:48 | 6 | MS. PETTIT:  Your Honor, that is the nature of |
| 09:38:50 | 7 | the refiling.  The Court asked us to file it simply as a |
| 09:38:53 | 8 | letter and not pursuant to Rule 28(j), because the |
| 09:38:55 | 9 | opinion had been issued but not the mandate. |
| 09:38:58 | 10 | THE COURT:  Okay.  Well, it isn't a Rule -- |
| 09:39:00 | 11 | what is it, then, if -- it's just an attempt to do what. |
| 09:39:06 | 12 | MS. PETTIT:  It's an attempt to keep the Court |
| 09:39:08 | 13 | apprised of developments similar to when this Court |
| 09:39:11 | 14 | issued a number of advisements.  We filed those under |
| 09:39:14 | 15 | Rule 28(j) as well because there was no way other -- that |
| 09:39:16 | 16 | we could tell, other than that under the rule -- |
| 09:39:18 | 17 | THE COURT:  Well, when you initially filed it, |
| 09:39:20 | 18 | you filed it as Rule 28(j) letter, and it isn't -- as the |
| 09:39:26 | 19 | Court of Appeals has indicated, it isn't a Rule 28(j) |
| 09:39:30 | 20 | letter.  And the reason it isn't is because it doesn't |
| 09:39:33 | 21 | address any of the issues, whatsoever, that are before me |
| 09:39:41 | 22 | for the purposes of the hearing I had yesterday. |
| 09:39:46 | 23 | MS. PETTIT:  Your Honor, it apprised the Fifth |
| 09:39:47 | 24 | Circuit of the hearing yesterday, which has been at issue |
| 09:39:50 | 25 | in a number of prior letters that we filed.  And we were |

| 09:39:53 | 1 | simply keeping the Court apprised. |

THE COURT: It has nothing to do with what we were doing yesterday. What we were doing yesterday was going forward pursuant to the Fifth Circuit's ruling. And the only issue that is now pending before the Fifth Circuit, pending right now, is the issue of whether the case is going to be tried to a jury or it's not going to be tried to a jury. That is the only issue, and that's a mandamus petition.

MS. PETTIT: Respectfully, Your Honor, the mandate has not issued in the primary case.

THE COURT: It doesn't matter whether the mandate has issued or not.

MS. PETTIT: The Court retains jurisdiction until the mandate does.

THE COURT: It doesn't matter. There's no litigation going on. There is -- the United States didn't file anything. The State didn't file anything. What happened here is you filed something which has absolutely nothing to do with anything other than attempting, I presume -- it isn't an appropriate filing. You're not appearing in this case, are you?

MS. PETTIT: No, Your Honor. I do not appear -- I did not appear in this case.

THE COURT: So you're kind of a volunteer, and

09:41:26   1  you write this letter to say -- you might as well just be

09:41:32   2  somebody sitting --

09:41:33   3          No.  Sit down.

09:41:37   4          MR. MAZZARA:  Your Honor, I just wanted to --

09:41:38   5          THE COURT:  No, sir.  Not yet.

09:41:42   6          MR. MAZZARA:  All right.

09:41:43   7          THE COURT:  I will give you plenty of

09:41:44   8  opportunity.

09:41:47   9          MR. MAZZARA:  Fair enough, Your Honor.  I just

09:41:48   10  want to, again, lodge an objection to this line of

09:41:51   11  questioning.

09:41:52   12          THE COURT:  I don't know what line of

09:41:53   13  questioning you're talking about that there's an

09:41:55   14  objection to.  All I'm saying is she's not appeared, and

09:41:59   15  she's acknowledged that she hasn't appeared.

09:42:00   16          MR. MAZZARA:  In this case, Your Honor, before

09:42:02   17  the trial court.

09:42:02   18          THE COURT:  That's correct.

09:42:04   19          MR. MAZZARA:  Okay.

09:42:05   20          THE COURT:  She hasn't appeared here.

09:42:09   21          MR. MAZZARA:  She has appeared in the Fifth

09:42:10   22  Circuit and argued the *en banc* case.

09:42:13   23          THE COURT:  That's fine.  That is fine.

09:42:15   24          MR. MAZZARA:  But I also still stand on the

09:42:17   25  objection about this line of questioning into

09:42:20  1  the appellate --

09:42:20  2          THE COURT:  Counsel, listen.  If you don't

09:42:22  3  listen to me, I'm going to have to ask you to step

09:42:26  4  outside.  I told you I would give you plenty of

09:42:29  5  opportunity to address the court, and you will have that

09:42:34  6  opportunity and I respect your opportunity to do so.  But

09:42:39  7  I can't have you jumping up like a jack-in-the-box every

09:42:42  8  two minutes.

09:42:44  9          MR. MAZZARA:  Understood, Your Honor.

09:42:45  10          THE COURT:  You're not even a member of this

09:42:47  11  court.  You're lucky that I'm even letting you say

09:42:52  12  anything here.

09:42:53  13          MR. MAZZARA:  Thank you, Your Honor.

09:42:55  14          THE COURT:  So you wrote this letter, not

09:43:01  15  having been present, and your letter unfortunately

09:43:04  16  contains a number of inaccuracies.

09:43:09  17          MS. PETTIT:  Respectfully, sir, we have checked

09:43:12  18  it against the transcript that we got last night, and we

09:43:16  19  consider it to be accurate and stand behind everything.

09:43:18  20          THE COURT:  I'm very happy you did.  I can

09:43:20  21  assure you we did, and I know what I said.

09:43:22  22          So let's go through it, okay?

09:43:25  23          MS. PETTIT:  Certainly.

09:43:26  24          THE COURT:  First of all, you make a big deal

09:43:29  25  out of the fact that, without prompting from either

09:43:32  1  party, the District Court raised the possibility that

09:43:37  2  Judge Willett's opinion from the *en banc* court might not

09:43:41  3  be precedential based on unspecified voices and chatter

09:43:45  4  the District Court had heard or read from *ex parte*

09:43:48  5  sources who suggested that the opinion was not entirely

09:43:51  6  clear.

09:43:51  7          That is absolutely true.  That is true.  I will

09:43:57  8  agree with you.  I did raise it.  The implication here is

09:44:02  9  that the court did so for the purpose of attempting to

09:44:06  10  encourage or announce its belief that Judge Willett's

09:44:11  11  opinion was not precedential or that I did not have the

09:44:15  12  authority or the right to raise it *ex parte*.

09:44:21  13          Let me read something to you, okay?  This is

09:44:23  14  from the Fifth Circuit.  It comes from a case called

09:44:30  15  *Ioannides v. The University of Texas M.D. Anderson*

09:44:33  16  *Center*, 418 F. App'x 269.  It's a Fifth Circuit 2011

09:44:39  17  case.  I presume it's unpublished, but it's okay.

09:44:41  18          Here's what it says:  The District Court did

09:44:45  19  not error by considering substantive process issues

09:44:53  20  *sua sponte*, because the parties briefed it.  As long as

09:44:57  21  the parties are given notice and opportunity to brief an

09:45:00  22  issue, the court can consider it *sua sponte.*  Any issue.

09:45:06  23  Ultimately, what matters is the party knew the issue

09:45:09  24  could be considered by the District Court.  So here we

09:45:14  25  are asking the parties to brief what the law is

| | | |
|---|---|---|
| 09:45:17 | 1 | applicable at the bench trial, giving the parties notice |
| 09:45:21 | 2 | and ability to brief it. |
| 09:45:23 | 3 | That was precisely what I was doing.  I was |
| 09:45:29 | 4 | calling the issue to the attention of the parties, which |
| 09:45:33 | 5 | is not only my right, it is my obligation. |
| 09:45:41 | 6 | MS. PETTIT:  Yes, Your Honor. |
| 09:45:43 | 7 | THE COURT:  You got that? |
| 09:45:44 | 8 | MS. PETTIT:  Yes, Your Honor. |
| 09:45:44 | 9 | THE COURT:  Okay.  And I wanted to give the |
| 09:45:46 | 10 | parties the opportunity to brief it.  This was written in |
| 09:45:50 | 11 | the sense that I was somehow being proactive in |
| 09:45:57 | 12 | supporting the theory that Judge Willett's opinion was |
| 09:46:03 | 13 | not precedential, and I went out on my own to find an |
| 09:46:09 | 14 | issue and then to encourage the parties to brief it.  You |
| 09:46:13 | 15 | make another misstatement there also, by the way, that |
| 09:46:16 | 16 | you will find is not in the -- in the record.  I'll get |
| 09:46:21 | 17 | to that in just a minute. |
| 09:46:22 | 18 | So do you know who Judge Posner is? |
| 09:46:33 | 19 | MS. PETTIT:  Yes, Your Honor. |
| 09:46:33 | 20 | THE COURT:  Okay.  Well, here's what |
| 09:46:36 | 21 | Judge Posner says about this.  He says:  They want to do |
| 09:46:42 | 22 | justice as well as merely not umpire disputes.  And they, |
| 09:46:48 | 23 | the district courts, should not be criticized when they |
| 09:46:51 | 24 | point out to counsel a line of argument or inquiry that |
| 09:46:55 | 25 | has been overlooked. |

09:47:03  1           Courts of appeals -- and I know because I sat

09:47:06  2   on the Ninth Circuit Court of Appeals for 35 years -- and

09:47:10  3   district courts regularly ask the parties *sua sponte* to

09:47:18  4   brief issues that the parties may not have been aware of

09:47:22  5   or which the court feels should be briefed on both sides.

09:47:32  6           So long as the court gives the parties the

09:47:35  7   opportunity to do so, and then fairly and adequately

09:47:40  8   reviews those briefings and takes them under

09:47:46  9   consideration, this circuit and every single circuit has

09:47:54  10   said, including the Supreme Court -- which often does

09:47:58  11   this, by the way -- that it is appropriate and, at times,

09:48:05  12   necessary.

09:48:07  13           It is not and was not my intent, as you seem to

09:48:13  14   imply here, to give to the parties some sort of marching

09:48:24  15   orders.  You did not point out in your letter, which it

09:48:29  16   would have been fair for you to do if you were trying to

09:48:33  17   write a balanced letter, that I had mentioned at least

09:48:39  18   three to four times emphatically that I have not made up

09:48:45  19   my mind in this matter; that I indeed might find

09:48:54  20   Judge Willett's opinion precedential.

09:48:56  21           In fact, it is my fallback, and always has been

09:49:02  22   for the over 30 years I've been on the bench, that when a

09:49:07  23   majority opinion comes out, even if there are strong

09:49:10  24   dissents, to follow that majority opinion.  And my

09:49:14  25   inclination is to do so here.

```
09:49:16   1              But there is an issue, and that issue needs to
09:49:22   2   be briefed.  Here's the reason:  This case is not going
09:49:26   3   to end with the Fifth Circuit.  If by sending this letter
09:49:32   4   it was your intent to alert Judge Ho that he had not
09:49:38   5   written on this issue and to try to get him to amend his
09:49:41   6   opinion, that might work.  I don't know.  It wouldn't
09:49:47   7   look good, but it might work.  I --
09:49:55   8              You'll get a chance.
09:49:58   9              So that's number one.  What you should have
09:50:03  10   said in this letter, if you were trying to be, as you
09:50:08  11   say, just informing the Fifth Circuit, is that, oh, by
09:50:12  12   the way, Judge Ezra did say on multiple occasions that he
09:50:17  13   did not have his mind made up and that he might indeed
09:50:22  14   rule for Judge -- that Judge Willett's opinion was
09:50:26  15   precedential.  But you didn't do that.
09:50:27  16              This is a -- this isn't a letter informing
09:50:31  17   them.  It wasn't a 28(j) letter.  This was an argument.
09:50:35  18   This is an argument trying to get the Fifth Circuit,
09:50:38  19   either Judge Willett to rewrite his opinion or to get
09:50:46  20   Judge Ho to change his opinion or to get judge -- Chief
09:50:49  21   Judge Richman to somehow change her opinion.  That's
09:50:54  22   what -- I mean, it's pretty obvious.
09:50:56  23              So let's go on.
09:50:57  24              You say:  Although undersigned was not present,
09:51:07  25   the District Court reportedly opined that we have a
```

```
09:51:10   1    nine-nine split.

09:51:11   2             What I said is it appears that there's a

09:51:14   3    nine-nine split.  It could be a nine-nine split.  I don't

09:51:18   4    know.  And even if there were, what's the effect of it?

09:51:25   5    I don't know that either.

09:51:26   6             What I do know is that Judge Ho did not opine

09:51:34   7    at all on the issue.  He took a totally different tack.

09:51:40   8    He felt that the case should be dismissed out of hand for

09:51:47   9    jurisdictional reasons.  So he partially dissented,

09:51:50  10    actually.  And we do know that Chief Judge Richman did

09:51:57  11    not agree with the majority, in part.  She joined in

09:52:00  12    judgment, but she did not agree with the majority's

09:52:03  13    reasoning that the way you -- on the way that you judge

09:52:11  14    navigation, which was a hallmark of Judge Willett's

09:52:16  15    opinion.  We know she didn't agree with that.

09:52:18  16             So that leaves -- that leaves us with some

09:52:23  17    uncertainty.  I mean, you're a lawyer, right?

09:52:27  18             MS. PETTIT:  Yes, Your Honor.

09:52:28  19             THE COURT:  And you're a good one --

09:52:30  20             MS. PETTIT:  Thank you, Your Honor.

09:52:31  21             THE COURT:  -- or you wouldn't be in your

09:52:32  22    position.  So you have to understand that.

09:52:37  23             Now, you say, we have -- and then you say, and

09:52:42  24    in quotes, as if this was all I said:  Because

09:52:47  25    Judge Richman did not agree with the majority --
```

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 09:52:50 | 1  | I didn't say that.  I didn't say she didn't                  |
| 09:52:52 | 2  | agree with the majority.  I said she didn't agree with       |
| 09:52:54 | 3  | the majority on the navigation issue only, which she         |
| 09:52:59 | 4  | didn't.                                                       |
| 09:53:01 | 5  | -- and the separate opinion by Judge Ho.  And                |
| 09:53:06 | 6  | here you put this in quotes, "did not say anything at        |
| 09:53:09 | 7  | all," as if I was criticizing Judge Ho.                      |
| 09:53:13 | 8  | So let me make it very clear.  I said                        |
| 09:53:16 | 9  | specifically that I was not criticizing Judge Ho.  I said    |
| 09:53:22 | 10 | that specifically.  And I didn't say he didn't say           |
| 09:53:26 | 11 | anything at all.  I said he didn't say anything at all on     |
| 09:53:30 | 12 | this issue, which he didn't.  Not that he didn't say         |
| 09:53:36 | 13 | anything at all, as if he wrote a bunch of nonsense.  I      |
| 09:53:39 | 14 | didn't say that.  So why you left that out, I don't know.     |
| 09:53:47 | 15 | Now, you say:  Accordingly, the District Court               |
| 09:53:51 | 16 | ordered the parties to file additional briefs no later       |
| 09:53:54 | 17 | than September 20th -- that's true -- addressing the         |
| 09:53:58 | 18 | impact of the Court's *en banc* decision.  That's also       |
| 09:54:02 | 19 | true.  In the process the District Court provided            |
| 09:54:06 | 20 | citations to decisions that neither party had previously     |
| 09:54:11 | 21 | raised.                                                       |
| 09:54:13 | 22 | That's true: Supreme Court cases.  I have every              |
| 09:54:19 | 23 | responsibility to draw the parties' attention to             |
| 09:54:23 | 24 | precedent.  I believe that the Fifth Circuit is bound by      |
| 09:54:28 | 25 | the Supreme Court.  I certainly am.                           |

| | |
|---|---|
| 09:54:32 | 1 |
| 09:54:33 | 2 |
| 09:54:35 | 3 |
| 09:54:40 | 4 |
| 09:54:43 | 5 |
| 09:54:44 | 6 |
| 09:54:49 | 7 |
| 09:54:55 | 8 |
| 09:55:05 | 9 |
| 09:55:13 | 10 |
| 09:55:16 | 11 |
| 09:55:22 | 12 |
| 09:55:28 | 13 |
| 09:55:40 | 14 |
| 09:55:42 | 15 |
| 09:55:47 | 16 |
| 09:55:51 | 17 |
| 09:56:03 | 18 |
| 09:56:05 | 19 |
| 09:56:08 | 20 |
| 09:56:14 | 21 |
| 09:56:17 | 22 |
| 09:56:19 | 23 |
| 09:56:20 | 24 |
| 09:56:22 | 25 |

MS. PETTIT:  Certainly, Your Honor.

THE COURT:  Either party -- and then you say:
Either party might consider citing in support of an
argument the District Court need not follow
Judge Willett's opinion.

That is absolutely false.  I did -- I dare you
to find, or any of your lawyers, anywhere in the
transcript where I said that, or even implied, these are
the cases that support an argument and I wanted them -- I
wanted the parties to follow that argument.

I said the opposite, the exact opposite.  I
said these are cases that are out there.  They do show
situations where there has been a split.  I even gave as
support a case in which I handled as a member of the
Ninth Circuit Panel where there was a four-four split
because Justice Kagan could not participate because she
had been Solicitor General.  And, on top of that, I said
that that was just an example.

But guess what?  Where there is a four-four
split in the Supreme Court, it gets remanded to the
Circuit Court, the decision is upheld, but it isn't
precedential.  You know that, right?  You're a good
lawyer.

MS. PETTIT:  It is precedential only to the
extent of what the issue was decided, but it is not

| | | |
|---|---|---|
| 09:56:24 | 1 | precedent for any arguments that were presented. |
| 09:56:27 | 2 | THE COURT: You're right, and you are correct. |
| 09:56:30 | 3 | It is only precedential in the Ninth Circuit. It isn't |
| 09:56:33 | 4 | nationwide precedent. |
| 09:56:34 | 5 | MS. PETTIT: Yes, Your Honor. |
| 09:56:35 | 6 | THE COURT: Because the Supreme Court did not |
| 09:56:36 | 7 | make a decision. |
| 09:56:38 | 8 | MS. PETTIT: Correct, Your Honor. |
| 09:56:39 | 9 | THE COURT: So I did not under any |
| 09:56:44 | 10 | circumstances tell the parties to look at these cases for |
| 09:56:47 | 11 | the purpose of finding Judge Willett's opinion to be |
| 09:56:52 | 12 | nonprecedential, as you say in this letter. I didn't do |
| 09:56:55 | 13 | that. You won't find it in the record. I looked again |
| 09:56:59 | 14 | to make sure. My law clerks looked again to be sure. |
| 09:57:06 | 15 | It's not there, because I didn't do it. It is |
| 09:57:12 | 16 | misleading. |
| 09:57:20 | 17 | Now, the District Court also ordered the party |
| 09:57:22 | 18 | to refile any pretrial filings and motions in limine on |
| 09:57:27 | 19 | October 28th, with objections to follow on October 30th. |
| 09:57:31 | 20 | That was at the request of your own lawyers. |
| 09:57:39 | 21 | Meanwhile, the District Court opined a lot of |
| 09:57:41 | 22 | people are shaking their heads at why the -- why Texas |
| 09:57:45 | 23 | demand for a jury trial. |
| 09:57:46 | 24 | It's true. I can't -- I personally, as I sit |
| 09:57:55 | 25 | here, don't know why Texas would want a jury trial in |

Case: 23-50632    Document: 266    Page: 64    Date Filed: 08/07/2024

21

| | | |
|---|---|---|
| 09:57:58 | 1 | this case.  You see, I presumed you would want a jury |
| 09:58:02 | 2 | trial if you thought that you had a sympathetic plaintiff |
| 09:58:11 | 3 | or you had an issue which was somehow primed for a jury. |
| 09:58:23 | 4 | This is on equitable case. |
| 09:58:27 | 5 | Would you like some water. |
| 09:58:29 | 6 | MS. PETTIT:  No, thank you, Your Honor. |
| 09:58:30 | 7 | THE COURT:  Okay.  An equitable case.  That was |
| 09:58:32 | 8 | just an offhand comment.  It wasn't anything more than an |
| 09:58:36 | 9 | offhand comment.  It had no precedential value.  Who |
| 09:58:45 | 10 | cares?  You've asked for a jury.  The Fifth Circuit is |
| 09:58:49 | 11 | looking at it, and they will rule.  And whatever they |
| 09:58:51 | 12 | rule, I will abide by.  It doesn't matter to me. |
| 09:58:56 | 13 | But let's not forget something.  It appears the |
| 09:59:00 | 14 | State of Texas has some idea in its head -- from where, I |
| 09:59:04 | 15 | don't know -- that I am not the right judge for this case |
| 09:59:09 | 16 | because I've already made up my mind.  I haven't.  Or |
| 09:59:14 | 17 | that I am prejudiced against the State of Texas.  I am |
| 09:59:17 | 18 | not. |
| 09:59:18 | 19 | Let's look at a little history.  Not that long |
| 09:59:25 | 20 | ago there was a law passed by the Texas State |
| 09:59:31 | 21 | Legislature, a very popular law by some and unpopular by |
| 09:59:37 | 22 | others, called the fetal burial law.  Are you familiar |
| 09:59:41 | 23 | with that? |
| 09:59:41 | 24 | MS. PETTIT:  Yes, Your Honor. |
| 09:59:42 | 25 | THE COURT:  Okay.  Guess who handled that case? |

| | | |
|---|---|---|
| 09:59:44 | 1 | MS. PETTIT: I believe you did, Your Honor. |
| 09:59:46 | 2 | THE COURT: I did. Now, the only decision that |
| 09:59:49 | 3 | had been rendered on that exact law was rendered by the |
| 09:59:55 | 4 | Tenth Circuit. They had ruled that that statute -- not |
| 10:00:03 | 5 | the Texas one, but the one that they were dealing with, |
| 10:00:06 | 6 | which is exactly the same -- was flat-out |
| 10:00:11 | 7 | unconstitutional, and they struck it down. |
| 10:00:15 | 8 | And then there was an appeal by the State to |
| 10:00:17 | 9 | the United States Supreme Court which was pending at the |
| 10:00:21 | 10 | time I made my ruling. So the only decision out there on |
| 10:00:26 | 11 | the fetal burial law was that it was unconstitutional, |
| 10:00:30 | 12 | and that was by a circuit court of appeals, not a |
| 10:00:33 | 13 | district court. |
| 10:00:33 | 14 | I looked at it very carefully, and my view was |
| 10:00:41 | 15 | that the Tenth Circuit was wrong, that Texas was right, |
| 10:00:43 | 16 | and I ruled for the State of Texas that the law was in |
| 10:00:46 | 17 | fact constitutional. Subsequently, the Supreme Court |
| 10:00:55 | 18 | reversed the Tenth Circuit and found the law |
| 10:00:59 | 19 | constitutional. |
| 10:01:02 | 20 | Now, we didn't get a full ruling on that case |
| 10:01:04 | 21 | because that case basically mooted the issue. It went |
| 10:01:12 | 22 | away. So Judge Costa and the rest of that panel end up |
| 10:01:18 | 23 | dismissing the case. That was a big ruling, it was a |
| 10:01:23 | 24 | tough ruling, and I ruled for the State, as I have in |
| 10:01:26 | 25 | many other cases, including this one. |

| | | |
|---|---|---|
| 10:01:30 | 1 | In this case the United States had two causes |
| 10:01:33 | 2 | of action.  After very thorough briefing, and it was a |
| 10:01:40 | 3 | very tough issue, I ruled for the State of Texas in this |
| 10:01:43 | 4 | case and dismissed that cause of action. |
| 10:01:47 | 5 | Are you aware of that? |
| 10:01:49 | 6 | MS. PETTIT:  Yes, Your Honor. |
| 10:01:50 | 7 | THE COURT:  All right.  Now, finally, let's get |
| 10:01:57 | 8 | to the last part of it, because this is what really kind |
| 10:02:01 | 9 | of made me -- really got me puzzled. |
| 10:02:09 | 10 | You say:  Texas' demand for a jury trial, and |
| 10:02:18 | 11 | indicated that I may reopen discovery, but only if the |
| 10:02:24 | 12 | Fifth Circuit holds Texas is entitled to a jury.  Okay. |
| 10:02:32 | 13 | Because the circumstances would have changed, in my view. |
| 10:02:39 | 14 | This was put in here, for whatever reason, I |
| 10:02:43 | 15 | presume to indicate that somehow I was favoring the |
| 10:02:47 | 16 | federal government by reopening discovery.  Let me read |
| 10:02:51 | 17 | you, if I may, from the transcript of what Mr. Walters -- |
| 10:02:59 | 18 | Help me find this, will you, Rose? |
| 10:03:01 | 19 | -- what Mr. Walters said, because I thought |
| 10:03:03 | 20 | Mr. Walters made an excellent point.  Okay?  Can you help |
| 10:03:09 | 21 | me find -- right here on my papers somewhere.  Where is |
| 10:03:14 | 22 | it?  Because I don't want to keep them here unnecessarily |
| 10:03:19 | 23 | for a long time while I'm searching for this.  You had |
| 10:03:25 | 24 | highlighted what Mr. Walters had said somewhere. |
| 10:03:35 | 25 | Come up here.  Help me find it. |

| | | |
|---|---|---|
| 10:04:01 | 1 | I want to quote you correctly, Mr. Walters. |
| 10:04:03 | 2 | MR. WALTERS:  I appreciate it, Your Honor. |
| 10:04:12 | 3 | THE COURT:  Okay.  Here's the discussion that |
| 10:04:15 | 4 | you were so concerned about, all right?  It started with |
| 10:04:17 | 5 | Mr. Lynk.  This is where I said I may reopen discovery. |
| 10:04:23 | 6 | "MR. LYNK:  Understood.  On August the 2nd, on |
| 10:04:27 | 7 | Friday, obviously, there were a number of things that |
| 10:04:30 | 8 | originally were due, and we understood that those were |
| 10:04:34 | 9 | suspended as of last week under the -- in the |
| 10:04:37 | 10 | circumstances. |
| 10:04:39 | 11 | "THE COURT:  What were those? |
| 10:04:41 | 12 | "Generally, the response to July 26th pretrial |
| 10:04:44 | 13 | filing: objections to witnesses, objections to things |
| 10:04:47 | 14 | like, that."  That's Mr. Lynk. |
| 10:04:50 | 15 | "THE COURT:  Those I think probably should |
| 10:04:53 | 16 | wait.  And the reason for this is that we're still |
| 10:04:59 | 17 | waiting to figure out whether we have a jury or we don't |
| 10:05:02 | 18 | have a jury.  And you may decide to go with certain |
| 10:05:07 | 19 | witnesses if you have a jury.  I may even allow, because |
| 10:05:13 | 20 | if -- if it stays the way it is, if the Fifth Circuit |
| 10:05:16 | 21 | rules there is no jury in this case, because it's |
| 10:05:19 | 22 | equitable, then I won't reopen. |
| 10:05:21 | 23 | "But if we -- if we have a change in the |
| 10:05:24 | 24 | landscape and say, well, you're going to have a jury now |
| 10:05:30 | 25 | out of the blue, then I may allow the parties to add |

| 10:05:33 | 1 | additional witnesses. And that may impact our trial |
| 10:05:36 | 2 | date." |
| 10:05:36 | 3 | In fairness to both parties, by the way. |
| 10:05:42 | 4 | "MR. WALTERS: We would suggest that if the |
| 10:05:47 | 5 | Court is considering reopening discovery -- so we don't |
| 10:05:51 | 6 | know that yet, whether the Department of Justice wants |
| 10:05:53 | 7 | that -- when the Fifth Circuit rules on our right to a |
| 10:05:56 | 8 | jury trial -- |
| 10:05:58 | 9 | "THE COURT," here's what I say: "I can assure |
| 10:06:00 | 10 | you that will not happen if they deny the request for a |
| 10:06:05 | 11 | jury trial, only because then that -- that means that the |
| 10:06:08 | 12 | tenor of the case has been the same since its inception." |
| 10:06:11 | 13 | It was only recently that Texas really asked |
| 10:06:15 | 14 | for a jury. |
| 10:06:17 | 15 | All right. |
| 10:06:17 | 16 | "MR. WALTERS: Right. What we're saying --" |
| 10:06:22 | 17 | And this is the Court, but -- this is me, now. |
| 10:06:25 | 18 | "But if they -- if they say the State gets a |
| 10:06:29 | 19 | jury or gets a partial jury trial on some issues but not |
| 10:06:34 | 20 | others, then I would consider it. I'm not saying I would |
| 10:06:37 | 21 | grant it, but I would certainly consider it." |
| 10:06:40 | 22 | Now, here's the critical part. This is |
| 10:06:45 | 23 | Mr. Walters, your lawyer. |
| 10:06:47 | 24 | "But, Your Honor, I guess our position is that, |
| 10:06:51 | 25 | if the Fifth Circuit were to find we are entitled to a |

10:06:55  1  jury trial, the Court would have to resolve these motions

10:06:58  2  again because the standard would be different.  So we

10:07:07  3  would suggest not wasting the Court's time in resolving

10:07:10  4  these motions before we get a ruling from the

10:07:12  5  Fifth Circuit on --"

10:07:15  6         Then I say:  "I don't know that the legal

10:07:16  7  standard would be different."

10:07:19  8         And here's Mr. Walters:

10:07:22  9         "Well, the standard for considering, like,

10:07:25  10  experts" -- which is what I was concerned about --

10:07:28  11  "whether they're going to be excluded or not, would be

10:07:30  12  different."

10:07:31  13         And here's what I say to Mr. Walters:

10:07:34  14         "Oh, I see what you're saying, in a practical

10:07:37  15  sense.  Yeah.  I would agree with you.  I told you I will

10:07:42  16  take a look at it.  I haven't made up my mind on that,

10:07:46  17  yet.  I'll take a good look at it, okay?

10:07:49  18         "MR. WALTERS:  Thank you."

10:07:52  19         That's what that was all about.  Your side

10:08:00  20  appropriately, because they're trial lawyers and they're

10:08:05  21  good ones, is concerned that if the tenor of the case

10:08:08  22  changes from a nonjury trial to a jury trial, they may

10:08:12  23  need or may ask me to add an additional witness or two

10:08:16  24  because they've got to prove the case to the jury.

10:08:18  25         I have been involved in this case for a very

| | | |
|---|---|---|
| 10:08:22 | 1 | long time, and I understand the landscape.  I know what's |
| 10:08:29 | 2 | there.  I've heard lots and lots of testimony in this |
| 10:08:32 | 3 | case.  So they would not have to educate me on the facts |
| 10:08:39 | 4 | or on the expert opinions, because I've heard it, or at |
| 10:08:46 | 5 | least part of it. |
| 10:08:49 | 6 | But a jury is different.  They come in with a |
| 10:08:54 | 7 | clean slate.  They have not heard it.  They have not seen |
| 10:08:57 | 8 | it.  They don't know what it's all about.  So they need |
| 10:09:02 | 9 | to be carefully educated.  That was my concern. |
| 10:09:11 | 10 | You can be seated.  Thank you very much. |
| 10:09:13 | 11 | MS. PETTIT:  Thank you. |
| 10:09:17 | 12 | MR. WALTERS:  Your Honor, if I could just ask a |
| 10:09:19 | 13 | brief question.  In our -- in the letter that was filed |
| 10:09:21 | 14 | in the Fifth Circuit, the last line references this: |
| 10:09:24 | 15 | When transcripts became available, we would submit them |
| 10:09:29 | 16 | to the Fifth Circuit.  I understand Your Honor has |
| 10:09:32 | 17 | expressed a lot of concern about the Fifth Circuit not |
| 10:09:35 | 18 | getting the full context of what occurred in yesterday's |
| 10:09:38 | 19 | hearing.  So we would ask for your direction as to |
| 10:09:41 | 20 | whether you would like the rough transcripts of both |
| 10:09:44 | 21 | yesterday -- |
| 10:09:44 | 22 | THE COURT:  The final transcript is done, is it |
| 10:09:47 | 23 | not?  The final transcript is done.  I'm not trying to |
| 10:09:53 | 24 | hide anything from the Fifth Circuit.  Believe me.  First |
| 10:09:57 | 25 | of all, I've spent 35-plus years of my life having |

10:10:01  1  everything I said put down in writing.  I'm not running

10:10:09  2  away from yesterday.

10:10:11  3        What worries me and gave me concern is that

10:10:15  4  this letter -- I'm not saying that Ms. Pettit did this

10:10:22  5  intentionally.  I -- to be honest with you, I've heard

10:10:26  6  nothing but good things about Ms. Pettit, to be honest

10:10:30  7  with you.  I've heard that she's a good lawyer, and I

10:10:34  8  heard that she does her job well.  And I have no personal

10:10:40  9  animus whatsoever against Ms. Pettit.

10:10:45  10        But my concern is this.  My concern is this:

10:10:51  11  Somebody -- and I don't think it's really Ms. Pettit.

10:10:54  12  But somebody seems to think that by sending a letter like

10:10:59  13  this in to the Fifth Circuit, they are in a position to

10:11:07  14  influence the Fifth Circuit to do something they might

10:11:10  15  not otherwise do.  Why else would the letter be sent?

10:11:17  16        And I don't even know whether she actually

10:11:20  17  drafted the letter.  My -- maybe, but maybe not.  The

10:11:25  18  point is that it contains some flat-out inaccuracies, but

10:11:32  19  more important than that, half-truths.  Things are taken

10:11:36  20  out of context.  And that -- that's a shame.  The Fifth

10:11:42  21  Circuit deserves better than that.  You can be seated,

10:11:45  22  Counsel.

10:11:45  23        MR. WALTERS:  Thank You, Your Honor.

10:11:50  24        MR. STONE:  I just wanted to add one thing.

10:11:50  25  I'm sorry you feel that way.  I want to add something

| | | |
|---|---|---|
| 10:11:52 | 1 | that -- just a point of correction for the last point |
| 10:11:53 | 2 | that you were making with Ms. Pettit, specifically about |
| 10:11:56 | 3 | reopening discovery. |
| 10:11:57 | 4 | At no point did Texas indicate that we were |
| 10:12:00 | 5 | open to reopening discovery or that that was even on the |
| 10:12:03 | 6 | table.  That discussion that you quoted from Mr. Walters |
| 10:12:06 | 7 | was specifically in reference to deciding motions like |
| 10:12:08 | 8 | motions in limine. |
| 10:12:09 | 9 | THE COURT:  Well, first of all, Mr. Walters can |
| 10:12:11 | 10 | speak for himself.  But, in any event, go ahead. |
| 10:12:14 | 11 | MR. STONE:  It was specifically in reference |
| 10:12:16 | 12 | things like motions in limine. |
| 10:12:17 | 13 | THE COURT:  Yeah.  I don't see anything here |
| 10:12:19 | 14 | that says anything about motions in limine. |
| 10:12:22 | 15 | MR. STONE:  As well as experts, Your Honor.  We |
| 10:12:23 | 16 | filed motions to exclude. |
| 10:12:24 | 17 | THE COURT:  It doesn't -- but, Counsel, it |
| 10:12:25 | 18 | doesn't matter.  It doesn't matter.  I said clearly that |
| 10:12:31 | 19 | I had not made up my mind as to whether I would reopen |
| 10:12:36 | 20 | discovery.  I would hear argument on that.  It just means |
| 10:12:41 | 21 | that I had not made a decision, and the tenor of the |
| 10:12:46 | 22 | letter that was sent indicated that I had.  And I hadn't. |
| 10:12:50 | 23 | And I made that very clear to Mr. Walters. |
| 10:12:53 | 24 | I said I would agree with you there.  I agree |
| 10:12:58 | 25 | with Mr. Walters.  I frequently agree with Mr. Walters. |

| | | |
|---|---|---|
| 10:13:02 | 1 | I agree with you there.  I told you I will take a look at |
| 10:13:05 | 2 | it.  I haven't made up my mind on that yet.  I will take |
| 10:13:10 | 3 | a very good look at it. |
| 10:13:13 | 4 | That's what I said.  So you can be seated. |
| 10:13:17 | 5 | MR. STONE:  Your Honor, although I will add |
| 10:13:18 | 6 | just for the record that I don't think that that final |
| 10:13:19 | 7 | sentence in the letter doesn't -- I think it says exactly |
| 10:13:22 | 8 | that, that you were open to the possibility of reopening |
| 10:13:25 | 9 | discovery depending on whether or not -- depending on the |
| 10:13:27 | 10 | outcome of that jury issue.  That's what the letter said, |
| 10:13:32 | 11 | Your Honor, just so the record reflects that.  Thank you. |
| 10:13:32 | 12 | THE COURT:  Let me look at it.  I don't have it |
| 10:13:32 | 13 | right in front of me.  What did I do with it? |
| 10:13:48 | 14 | MR. STONE:  I can read the sentence. |
| 10:13:50 | 15 | THE COURT:  No.  It's okay.  I'm looking for |
| 10:13:51 | 16 | it.  I'll find it.  It's here somewhere.  Here it is.  We |
| 10:14:15 | 17 | found it.  It got buried. |
| 10:14:38 | 18 | Okay I don't know why this sentence was put in |
| 10:14:40 | 19 | the letter.  I mean, it just doesn't make sense to me.  I |
| 10:14:44 | 20 | mean, why is it here? |
| 10:14:45 | 21 | MR. STONE:  Because Texas will be materially |
| 10:14:48 | 22 | prejudiced if you reopen discovery, in our opinion. |
| 10:14:50 | 23 | THE COURT:  That's something we will decide. |
| 10:14:52 | 24 | MR. STONE:  Agreed, Your Honor. |
| 10:14:53 | 25 | THE COURT:  And I said that. |

| | | |
|---|---|---|
| 10:14:55 | 1 | MR. STONE:  Yeah. |
| 10:14:55 | 2 | THE COURT:  But why is it here?  Why is it in |
| 10:14:59 | 3 | this letter?  What does it have to do with anything?  It |
| 10:15:02 | 4 | doesn't have to do with anything. |
| 10:15:05 | 5 | The real key to this letter is Texas was trying |
| 10:15:09 | 6 | to leave the impression with the *en banc* court that I had |
| 10:15:15 | 7 | made a decision or that I had somehow indicated, God |
| 10:15:26 | 8 | forbid, that there was an issue with respect to which was |
| 10:15:33 | 9 | the controlling opinion, if any.  And that is a terrible |
| 10:15:39 | 10 | thing to do. |
| 10:15:41 | 11 | You know, I'll tell you what the worst part of |
| 10:15:44 | 12 | this is.  And I don't think it's true.  I really don't |
| 10:15:49 | 13 | think it's true.  It could leave somebody with the |
| 10:15:54 | 14 | impression that the State of Texas thinks they've got the |
| 10:15:57 | 15 | Fifth Circuit in their back pocket. |
| 10:15:59 | 16 | Now, I don't think you believe that.  I really |
| 10:16:04 | 17 | don't think the Attorney General's Office believes that |
| 10:16:08 | 18 | they have the State of Texas in their back pocket and |
| 10:16:12 | 19 | they can just file anything they want, prejudice the |
| 10:16:17 | 20 | Court against this Court, and get a successful ruling.  I |
| 10:16:21 | 21 | do not believe the Attorney General's Office believes |
| 10:16:24 | 22 | that.  If I did, you would know it. |
| 10:16:31 | 23 | MS. PETTIT:  Your Honor, for the record, we |
| 10:16:33 | 24 | definitely do not. |
| 10:16:34 | 25 | THE COURT:  You don't have to tell me that.  I |

| | | |
|---|---|---|
| 10:16:36 | 1 | already said I don't believe that you do.  But somebody |
| 10:16:40 | 2 | who just read this and would say why did they send this |
| 10:16:43 | 3 | in?  What was purpose of it?  What is the big, important |
| 10:16:49 | 4 | issue here?  I don't know.  I don't know why it was sent |
| 10:17:00 | 5 | in.  It was ill-advised. |
| 10:17:03 | 6 | It really shouldn't have been sent, because |
| 10:17:06 | 7 | it's neither a Rule 28(j) letter -- and if it's not a |
| 10:17:10 | 8 | 28(j) letter, what is it?  It's just a notice to the |
| 10:17:15 | 9 | Fifth Circuit that, gosh, you know that Judge David Ezra |
| 10:17:19 | 10 | actually said that, with this big split court, there |
| 10:17:27 | 11 | might be an issue as to whether Judge Willett's opinion |
| 10:17:32 | 12 | is precedential.  Heaven forbid. |
| 10:17:41 | 13 | Do you think Judge Willett, who I know well and |
| 10:17:44 | 14 | who is a fine United States Circuit Judge of the highest |
| 10:17:49 | 15 | integrity, is going to read this and not sleep at night |
| 10:17:54 | 16 | and just say, oh, my God?  He's going to read the |
| 10:17:58 | 17 | transcript, and he's going to see that David Ezra said in |
| 10:18:02 | 18 | multiple places that I have no opinion on that at all. |
| 10:18:10 | 19 | And I will say it again.  My fallback position |
| 10:18:15 | 20 | is that Judge Willett's opinion is precedential, and I'm |
| 10:18:21 | 21 | inclined to find that it is.  And I'll say that. |
| 10:18:26 | 22 | But there is an issue.  We have a deeply |
| 10:18:32 | 23 | divided opinion.  And it is in Judge -- and it's a fact |
| 10:18:40 | 24 | that Judge Ho did not weigh in on this issue.  Maybe he |
| 10:18:44 | 25 | will now.  Maybe he'll file some sort of an amended |

| | |
|---|---|
| 10:18:48 | 1 |
| 10:18:51 | 2 |
| 10:18:55 | 3 |
| 10:19:00 | 4 |
| 10:19:07 | 5 |
| 10:19:12 | 6 |
| 10:19:21 | 7 |
| 10:19:29 | 8 |
| 10:19:31 | 9 |
| 10:19:39 | 10 |
| 10:19:48 | 11 |
| 10:19:54 | 12 |
| 10:19:57 | 13 |
| 10:20:00 | 14 |
| 10:20:03 | 15 |
| 10:20:09 | 16 |
| 10:20:16 | 17 |
| 10:20:22 | 18 |
| 10:20:28 | 19 |
| 10:20:33 | 20 |
| 10:20:36 | 21 |
| 10:20:39 | 22 |
| 10:20:43 | 23 |
| 10:20:46 | 24 |
| 10:20:50 | 25 |

opinion now that he's gotten your letter.  I don't know.
But he could do that at any time.  Maybe that was the
purpose of it.  I don't know.  I hope not.  Or maybe
Judge Willett will file -- I have no idea.

But I surely don't understand, and have never
in my entire career -- and I've handled big cases all
across the country, big ones, much bigger than this.  And
I've handled big cases sitting on the Court of Appeals.
I have never seen a letter like this filed, ever.

And maybe I'm just naive.  No judge that I've
raised this with and talked to about this, just asked
them if this is a policy or if they've ever seen it,
nobody had ever seen it.  And we're talking about
conservative judges now that I talked to.  Nobody had
ever seen it or heard of it.

And at the time we thought it was a rule, as
you put it originally, a Rule 28(j) letter.  They said,
Well, that's obviously not a 28(j) letter.

And if it's not a 28(j) letter, then what is
it?  It's just telling them that I had a status
conference with the parties, I raised an issue which I
had heard -- I actually hadn't thought about it myself
initially.  I just read Judge Willett's opinion, I read
all the other opinions and I just let it go at that and
set the status conference.

| | | |
|---|---|---|
| 10:20:51 | 1 | But then I heard some chatter.  And then I |
| 10:20:59 | 2 | looked at it more carefully, and I thought this is |
| 10:21:02 | 3 | probably an issue that should be briefed, that we should |
| 10:21:07 | 4 | look at carefully, because this case may well not end |
| 10:21:14 | 5 | with the Fifth Circuit, regardless of what they do.  It |
| 10:21:18 | 6 | could go to the Supreme Court. |
| 10:21:21 | 7 | And if I just take one position or another |
| 10:21:27 | 8 | without getting the full briefing of both sides and |
| 10:21:30 | 9 | carefully considering it, and it goes up to the Supreme |
| 10:21:35 | 10 | Court and they say, Wow, Ezra was wrong, that wasn't a |
| 10:21:39 | 11 | precedential opinion, he shouldn't have treated it as |
| 10:21:42 | 12 | such, or it was a precedential opinion and he didn't |
| 10:21:46 | 13 | treat it as such, the other way, it comes all the way |
| 10:21:51 | 14 | back down and we start all over again. |
| 10:21:54 | 15 | That doesn't make any sense.  I have great |
| 10:21:58 | 16 | faith in the quality of the lawyers in this case.  I've |
| 10:22:04 | 17 | read your briefing.  Your briefing is good.  And I am |
| 10:22:10 | 18 | looking to you to help me make the right decision here. |
| 10:22:16 | 19 | That's what this is all about.  Just like I did, in my |
| 10:22:22 | 20 | view -- the United States doesn't agree -- when I |
| 10:22:25 | 21 | dismissed their cause of action in involving Mexico |
| 10:22:35 | 22 | international law.  I got very good briefing on that, and |
| 10:22:38 | 23 | I ruled for the State because I think, looking at it |
| 10:22:42 | 24 | carefully, Texas is right.  It's not a cause of action |
| 10:22:48 | 25 | here.  Political question. |

| | | |
|---|---|---|
| 10:22:55 | 1 | So, again, Ms. Pettit, I want to emphasize to |
| 10:23:01 | 2 | you that, first of all, I want to thank you for showing |
| 10:23:05 | 3 | up.  I didn't order you here, you didn't have to come |
| 10:23:09 | 4 | here, and you didn't have to subject yourself to being |
| 10:23:14 | 5 | questioned by me on this letter.  And your willingness to |
| 10:23:22 | 6 | do so says a lot, not only about you personally but about |
| 10:23:29 | 7 | your belief in your office.  And that I think is |
| 10:23:34 | 8 | important.  So I thank you very much for coming.  You |
| 10:23:39 | 9 | didn't have to do it.  I didn't order -- I could have |
| 10:23:43 | 10 | ordered you here, but I didn't.  I simply requested that |
| 10:23:46 | 11 | you come.  And you could have said, ah, I'm not coming. |
| 10:23:50 | 12 | We've got lawyers. |
| 10:23:52 | 13 | I want to thank counsel for her.  You did the |
| 10:23:55 | 14 | best job you could.  You didn't -- I didn't attack her in |
| 10:23:58 | 15 | any way, shape, or form.  I'm not attacking her.  I don't |
| 10:24:03 | 16 | know whether she even actually wrote the letter.  She's |
| 10:24:06 | 17 | at a level where frequently other people write letters. |
| 10:24:11 | 18 | And so the errors in the letter may not even be hers. |
| 10:24:18 | 19 | But it doesn't matter.  I'm not mad.  I don't |
| 10:24:25 | 20 | hold grudges.  In my entire career as a federal judge, |
| 10:24:33 | 21 | all the cases I've handled, all the circuits that have |
| 10:24:37 | 22 | heard my appeals, I have never to my knowledge been |
| 10:24:44 | 23 | removed -- or my recollection -- from a case for bias or |
| 10:24:50 | 24 | for any other reason. |
| 10:24:51 | 25 | Now I've recused myself because I had a |

10:24:53  1  conflict.  But I don't have a bias against the State of

10:24:59  2  Texas, and my record here proves it.  By the way, I

10:25:04  3  handle a lot of State of Texas cases.  They have nothing

10:25:08  4  to do with big issues like we have here, and I rule for

10:25:12  5  the State of Texas frequently.  Nothing against the State

10:25:17  6  of Texas.

10:25:20  7        I love the State of Texas, actually.  I didn't

10:25:23  8  have to become a member of the Texas Bar, but I did.

10:25:29  9  Why?  Because I'm proud to be a member of the Texas Bar.

10:25:38  10  That's why.  And my good friend, the Chief Justice, swore

10:25:42  11  me in his office.  And I'm very proud of that, too.

10:25:47  12        And let me say again:  I have no animus or any

10:25:52  13  concern about the Fifth Circuit Court of Appeals.  They

10:25:56  14  will do whatever they need to do.  Now, am I always happy

10:25:59  15  about every ruling they -- they hand down?  No.

10:26:04  16  Absolutely not.

10:26:06  17        Look.  I am very good friends with many of the

10:26:12  18  those judges.  I don't know all of them well, but I know

10:26:15  19  most of them.  And I have a wonderful relationship

10:26:19  20  with -- even like Judge Willett and I have a good

10:26:24  21  relationship.  He's a great judge.  Judge Elrod and I are

10:26:29  22  very good friends, very good friends.  Judge -- Chief

10:26:36  23  Judge Richman and I are very good friends.  Judge Oldham

10:26:41  24  and I are friends.

10:26:43  25        Now, Judge Elrod was in the majority that

| | | |
|---|---|---|
| 10:26:47 | 1 | reversed me in this.  You think that makes any difference |
| 10:26:49 | 2 | to me?  Absolutely not.  She was doing her job the way |
| 10:26:54 | 3 | she thought she needed to do it.  Judge Willett wrote the |
| 10:26:58 | 4 | opinion.  Do I agree with him?  No.  But I don't think |
| 10:27:03 | 5 | that makes me a nut.  There's a lot of Fifth Circuit |
| 10:27:09 | 6 | judges that didn't agree with them.  So I don't think I'm |
| 10:27:13 | 7 | some sort of wild outlier here. |
| 10:27:17 | 8 | And President Ronald Reagan wasn't known for |
| 10:27:26 | 9 | appointing left-wing radical jurists, and I don't think |
| 10:27:35 | 10 | I've ever proven to be one.  So I am going to ask that |
| 10:27:44 | 11 | when you send the transcript up to the Fifth Circuit, you |
| 10:27:48 | 12 | send this transcript with it, today's transcript. |
| 10:27:55 | 13 | MS. PETTIT:  Certainly, Your Honor. |
| 10:27:56 | 14 | THE COURT:  Okay? |
| 10:27:58 | 15 | MR. WALTERS:  Absolutely, Your Honor. |
| 10:27:59 | 16 | THE COURT:  Okay.  Let them have both |
| 10:28:01 | 17 | transcripts.  If they're going to read a transcript, let |
| 10:28:03 | 18 | them read it all. |
| 10:28:05 | 19 | MS. PETTIT:  Absolutely. |
| 10:28:06 | 20 | THE COURT:  They may be mad at me for calling |
| 10:28:09 | 21 | this hearing.  I don't know.  But I don't think so.  I |
| 10:28:11 | 22 | mean, I don't think when I -- when we left yesterday, I |
| 10:28:16 | 23 | thought we were on solid ground as to what we were doing. |
| 10:28:22 | 24 | I thought we understood what we were doing, and we were |
| 10:28:25 | 25 | going forward. |

```
10:28:26   1              I don't think -- I really don't think either
10:28:30   2    party, when they left -- tell me, please, if you will.
10:28:34   3    Did any party feel that the process that I set forth was
10:28:38   4    prejudicial or in some way did not follow what you would
10:28:45   5    like to have been done?  I don't think so.  I certainly
10:28:50   6    would have heard -- we don't have any shrinking flowers
10:28:53   7    here.
10:28:55   8              In fact, I agreed with the State of Texas more
10:28:59   9    than I agreed with the government -- the federal
10:29:01  10    government.  You're the government, too.  You're a
10:29:06  11    sovereign government, to use Governor Abbott's words,
10:29:14  12    which I agree with, by the way.  Texas is a sovereign
10:29:17  13    state.  It's a government, and it needs to be treated as
10:29:21  14    such.
10:29:21  15              So that's where we are.  I intend to follow
10:29:35  16    through with the plan we worked out, and I hope when we
10:29:41  17    hear from the Fifth Circuit -- which it's a legal
10:29:47  18    question.  You know, if the Fifth Circuit says, look,
10:29:50  19    they're entitled to a jury trial, that will be an issue
10:29:53  20    the Supreme Court will have to decide, ultimately.  But
10:29:56  21    you're going to get a jury trial.
10:29:57  22              I mean, I think it's an equitable cause of
10:30:01  23    action.  They're not seeking money damages.  They're
10:30:04  24    seeking to have you remove the buoy.  And with respect to
10:30:08  25    the potential of a fine, the government has not ever
```

| | | |
|---|---|---|
| 10:30:13 | 1 | indicated they're looking to recover a fine in this case. |
| 10:30:19 | 2 | They're not pursuing that remedy.  They just want |
| 10:30:23 | 3 | equitable remedy.  And, even if they were pursuing it, we |
| 10:30:26 | 4 | could handle that at a later time, and it would be a jury |
| 10:30:28 | 5 | trial. |
| 10:30:28 | 6 | But that's not -- I mean, are we even going to |
| 10:30:34 | 7 | get that far?  I don't know.  As I said the other day, |
| 10:30:39 | 8 | the United States may look at this and say, look, there's |
| 10:30:42 | 9 | no really -- there's no way, given the Fifth Circuit's |
| 10:30:46 | 10 | ruling, that we can adequately proceed.  And that we may |
| 10:30:52 | 11 | have a trial on the record and have me enter judgment, |
| 10:31:01 | 12 | and then they can take their appeal, as for a *writ of* |
| 10:31:08 | 13 | *certiorari*. |
| 10:31:08 | 14 | I guess they would have to appeal to the Fifth |
| 10:31:11 | 15 | Circuit first, because that would be a trial on the |
| 10:31:14 | 16 | merits, the other -- we keep forgetting that that *en banc* |
| 10:31:18 | 17 | ruling was not on the merits of the case, it was on the |
| 10:31:22 | 18 | preliminary injunction.  This thing is so complicated, |
| 10:31:27 | 19 | even I lose track of it half the time. |
| 10:31:29 | 20 | All right.  Again, I want to thank all of you |
| 10:31:33 | 21 | for being here.  And, by the way, if you don't think -- |
| 10:31:37 | 22 | this is the really odd part of it.  There's a reporter |
| 10:31:44 | 23 | for *The Statesman* who I've never personally met, who |
| 10:31:50 | 24 | happens to be an excellent reporter.  What is his name |
| 10:31:54 | 25 | again?  He's already got an article out on this. |

| | | |
|---|---|---|
| 10:32:03 | 1 | Is it Jeremy? |
| 10:32:06 | 2 | THE CLERK:  I don't think so.  I don't have |
| 10:32:07 | 3 | Internet. |
| 10:32:08 | 4 | THE COURT:  What is his name?  Are you out |
| 10:32:10 | 5 | here?  What is your name, sir. |
| 10:32:12 | 6 | MR. MORITZ:  Your Honor, I'm John Moritz with |
| 10:32:13 | 7 | the *Austin American-Statesman.* |
| 10:32:14 | 8 | THE COURT:  There you go.  Mr. Moritz. |
| 10:32:16 | 9 | Mr. Moritz is an excellent reporter.  I read |
| 10:32:20 | 10 | his articles many times.  He generally gets it absolutely |
| 10:32:24 | 11 | right, which is not something that happens often.  And |
| 10:32:30 | 12 | he's already written an article on this, and he has |
| 10:32:33 | 13 | brought out the facts in that article. |
| 10:32:36 | 14 | Do you think that these Fifth Circuit judges |
| 10:32:39 | 15 | live in some sort of a bubble and they don't read the |
| 10:32:42 | 16 | newspaper?  They do.  We don't all live in a bubble. |
| 10:32:52 | 17 | They read the newspapers.  They go to Baylor games like |
| 10:32:53 | 18 | me.  Judge Willett's a big Baylor fan, as is Judge Elrod |
| 10:33:00 | 19 | and I.  That's our connection.  And Judge Richman, by the |
| 10:33:05 | 20 | way, Chief Judge Richman. |
| 10:33:10 | 21 | Okay.  And he'll write another article today |
| 10:33:12 | 22 | maybe.  I don't know.  But he is a good reporter. |
| 10:33:17 | 23 | All right.  Anything else you would like to put |
| 10:33:20 | 24 | on the record? |
| 10:33:23 | 25 | MR. WALTERS:  We're always happy to meet with |

10:33:25  1  you, Your Honor.

10:33:27  2          THE COURT:  Not always.  You're about as always

10:33:32  3  happy to meet with me as I am to always read Fifth

10:33:36  4  Circuit opinions.  Most of the time I get affirmed.  You

10:33:39  5  know, I have a really good record in front of the Fifth

10:33:41  6  Circuit, I'm proud to say.  Unfortunately, sometimes,

10:33:46  7  when I don't get affirmed, it's the ones that you read

10:33:48  8  about.  What can you say?

10:33:54  9          Okay.  Thank you.  Anything else, Counsel?

10:33:57  10         MR. WADE:  No, Your Honor.  Thank you.

10:33:58  11         THE COURT:  Anything from the people on the

10:34:02  12  phone?  Hello?  Are you there?  Did we lose them?

10:34:11  13         MR. LYNK:  Sorry.  I was muted.  But nothing

10:34:14  14  from the United States, Your Honor.

10:34:14  15         THE COURT:  You may -- and I'm not telling you

10:34:16  16  to do so.  But you may want to respond to Texas's letter,

10:34:23  17  if you wish, because it's now kind of *ex parte*.  But you

10:34:29  18  also may want to wait and see if they request it.

10:34:34  19         Generally -- but that's up to you.  I'm not

10:34:41  20  telling you to do it or not to do it.

10:34:45  21         MR. LYNK:  Understood, Your Honor.

10:34:45  22         THE COURT:  Okay.  You do whatever you want to

10:34:47  23  do.  But I want this transcript to go up.  And if Texas

10:34:53  24  for some reason is unable to do it or didn't do it or

10:34:56  25  doesn't do it, I want the United States to send this

| | | |
|---|---|---|
| 10:34:59 | 1 | transcript up.  Somebody send the transcript up to the |
| 10:35:04 | 2 | Fifth Circuit. |
| 10:35:04 | 3 | MR. WALTERS:  We'd be happy to do it, |
| 10:35:06 | 4 | Your Honor. |
| 10:35:07 | 5 | THE COURT:  If you say you will, you will.  I |
| 10:35:09 | 6 | don't have any concerns about that. |
| 10:35:12 | 7 | MR. WALTERS:  And, Your Honor, would you like |
| 10:35:16 | 8 | us to file the -- once we get a rough transcript, or |
| 10:35:19 | 9 | would you like to wait until you get a final transcript. |
| 10:35:22 | 10 | THE COURT:  She'll get a finalized transcript |
| 10:35:25 | 11 | to you today. |
| 10:35:26 | 12 | MR. WALTERS:  For today's hearing? |
| 10:35:27 | 13 | THE COURT:  She's really good.  She's an |
| 10:35:29 | 14 | excellent reporter. |
| 10:35:30 | 15 | MR. WALTERS:  That is what I've heard.  Thank |
| 10:35:32 | 16 | you very much.  That's been our experience. |
| 10:35:38 | 17 | THE COURT:  Anything else?  You're chatting |
| 10:35:39 | 18 | among yourselves. |
| 10:35:40 | 19 | MR. WALTERS:  No, Your Honor.  We're good. |
| 10:35:42 | 20 | THE COURT:  This is the kind of chatter we get, |
| 10:35:44 | 21 | you know.  For all we know, somebody in the Fifth |
| 10:35:47 | 22 | Circuit -- in the Attorney General's Office, some |
| 10:35:50 | 23 | appellate lawyer, might have looked at this and said, |
| 10:35:53 | 24 | Whoops.  We have an issue here.  I think we've got a |
| 10:35:56 | 25 | winner, but we need to address it when it comes down to |

10:36:01   1   the opinions.  Some appellate lawyer might have said

10:36:05   2   that.  And, if they did, they're smart.

10:36:07   3          Okay.  Thank you very much.  Court stands in

10:36:09   4   recess.

10:36:10   5       (End of transcript)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  **UNITED STATES DISTRICT COURT       )**

2  **WESTERN DISTRICT OF TEXAS           )**

3       I, Arlinda Rodriguez, Official Court Reporter, United

4  States District Court, Western District of Texas, do certify

5  that the foregoing is a correct transcript from the record of

6  proceedings in the above-entitled matter.

7       I certify that the transcript fees and format comply with

8  those prescribed by the Court and Judicial Conference of the

9  United States.

10      WITNESS MY OFFICIAL HAND this the 7th day of August 2024.

11

12                          /S/ Arlinda Rodriguez
                            Arlinda Rodriguez, Texas CSR 7753
13                          Expiration Date:  10/31/2025
                            Official Court Reporter
14                          United States District Court
                            Austin Division
15                          501 West 5th Street, Suite 4152
                            Austin, Texas 78701
16                          (512) 391-8791

17

18

19

20

21

22

23

24

25